**SIDLEY AUSTIN LLP**
Anthony Grossi
Ameneh Bordi
Juliana Hoffman* (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599
Email:       agrossi@sidley.com
             abordi@sidley.com
             jhoffman@sidley.com

*Counsel to the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| China Evergrande Group, *et al.*,[1] | Case No. 23-11332 (MEW) |
| Debtors in Foreign Proceedings. | Joint Administration Requested |

**MOTION FOR (I) RECOGNITION OF FOREIGN MAIN**
**PROCEEDINGS, (II) RECOGNITION OF FOREIGN REPRESENTATIVES,**
**AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

---

[1] The Debtors in these Chapter 15 Cases are (i) China Evergrande Group, incorporated in the Cayman Islands as an exempted company with limited liability with the registration number 170388, with its principal place of business located at 15th Floor, YF Life Centre, 38 Gloucester Road, Wanchai, Hong Kong; (ii) Tianji Holding Limited, incorporated in Hong Kong as a limited liability company with the registration number 1339269, with its principal place of business located at 17th Floor, One Island East, Taikoo Place, 18 Westlands Road, Quarry Bay, Hong Kong; and (iii) Scenery Journey Limited, incorporated in the British Virgin Islands ("BVI") as a limited liability company with the company number 1970476, with its principal place of business located at 2nd Floor Water's Edge Building, Wickham's Cay II, Road Town, Tortola, BVI.

## TABLE OF CONTENTS

RELIEF REQUESTED............................................................................................... 2

JURISDICTION AND VENUE ................................................................................ 4

BACKGROUND ........................................................................................................ 5

   I.   Debtors' Business Operations and Preexisting Capital Structure...................... 5

      A.   The Group's Operation Segments and Business Operations......................... 6

      B.   The Debtors' Existing Capital Structure and Existing Debts....................... 6

   II.   Events Preceding the Commencement of the Foreign Proceedings ................. 13

      A.   Stresses on Evergrande............................................................................... 13

      B.   Operational Measures Taken to Address Financial Situation ..................... 13

      C.   Group Events of Default.............................................................................. 14

      D.   Engagement with Financial Stakeholders to Address Capital Structure..... 15

      E.   The Restructuring Support Agreements ...................................................... 16

   III.   Description of the Schemes and Issuance of New Instruments ....................... 18

      A.   Evergrande Scheme Consideration ............................................................. 19

      B.   Scenery Journey Scheme Consideration ..................................................... 21

      C.   Tianji Scheme Consideration ...................................................................... 22

   IV.   Commencement of the Foreign Proceedings .................................................. 24

BASIS FOR RELIEF REQUESTED........................................................................ 30

   I.   The Debtors Are Eligible for Chapter 15 Relief............................................. 31

      A.   Each Debtor Meets the General Eligibility Requirements of Section 109(a) of the Bankruptcy Code ................................................................................. 31

      B.   Each Debtor Meets Specific Eligibility Requirements of Section 1517(a) of the Bankruptcy Code ................................................................................. 33

         i.   The Foreign Proceedings are "Foreign Proceedings" Within the Meaning of Section 1502 of the Bankruptcy Code ............................................... 34

            (a)   The Foreign Proceedings are Proceedings............................................ 35

            (b)   The Foreign Proceedings Are Judicial in Character ............................. 36

            (c)   The Foreign Proceedings Are Collective in Nature.............................. 38

            (d)   The Foreign Proceedings Are Located in  Foreign Countries .............. 38

            (e)   The Foreign Proceedings Are Authorized or Conducted Under Law Related to Insolvency or the Adjustment of Debts ........................................ 39

            (f)   Under the Foreign Proceedings, the Debtors' Assets and Affairs Are Subject to the Control or Supervision of Foreign Courts ............................ 40

(g)    The Foreign Proceedings Are for the Purpose of Reorganization or Liquidation of the Debtors ..................................................................................................... 41

ii.    The Foreign Proceedings Are "Foreign Main Proceedings" ................................... 41

(a)    The Evergrande Hong Kong Proceeding is a "Foreign Main Proceeding" .......... 42

(b)    The Tianji Hong Kong Proceeding is a "Foreign Main Proceeding" .................. 47

(c)    The Scenery Journey BVI Proceeding is a "Foreign Main Proceeding ............... 49

iii.    In the Alternative, the Court Should Find that the Hong Kong Proceedings Are "Foreign Nonmain Proceedings" ..................................................................................... 52

(a)    The Court Can Find that the CEG Proceeding is a "Foreign Non-Main Proceeding" ........................................................................................................... 54

(b)    The Court Can Find that the TJ Proceeding is a "Foreign Non-Main Proceeding" ........................................................................................................... 54

iv.    The Chapter 15 Cases Have Been Commenced by Duly Authorized Foreign Representatives ................................................................................................................. 55

C.    The Petitions for Recognition Meet the Requirements of Section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4) ............................................................ 57

II.    Enforcement of the Sanction Orders and Schemes and Related Discretionary Relief Pursuant to Section 1521 Is Proper ............................................................................................ 59

A.    Just Treatment of All Holders of Claims Against or Interests in the Debtors' Property ................................................................................................................................... 61

B.    Protection of Claim Holders in the United States Against Prejudice and Inconvenience in the Processing of Claims in the Foreign Proceedings ............................. 62

C.    Distribution of Proceeds Substantially in Accordance with the Bankruptcy Code...... 63

D.    The General Balancing Test Weighs in Favor of Granting Relief .............................. 63

III.    Enforcement of the Scheme Is Also Proper Under Section 1507 .................................... 65

IV.    Enforcement of the Schemes and Sanction Orders Is Consistent with Principles of Comity ............................................................................................................................................ 67

V.    The Standard for Injunctive Relief Is Satisfied with Respect to Enforcement of the Schemes and Releases ................................................................................................................... 70

VI.    The Relief Requested Is Consistent with United States Public Policy and Policy Behind the Bankruptcy Code ..................................................................................................................... 74

NOTICE ........................................................................................................................................ 77

NO PRIOR REQUEST ................................................................................................................. 77

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re ABC Learning Centres Ltd.*,
  445 B.R. 318 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013)...............................38

*In re Agrokor D.D.*,
  591 B.R. 163 (Bankr. S.D.N.Y. 2018)....................................................................................73

*In re AJW Offshore, Ltd.*
  488 B.R. 551 (Bankr. E.D.N.Y. 2013)....................................................................................60

*In re Artimm, S.r.L.*,
  335 B.R. 149 (Bankr. C.D. Cal. 2005)....................................................................................61

*In re Atlas Financial Holdings, Inc.*,
  No. 22-10260 (LGB) (ECF No. 18)........................................................................................34

*In re Atlas Shipping A/S*,
  404 B.R. 726 (Bankr. S.D.N.Y. 2009) ............................................................................ *passim*

*In re Avanti Commc'ns*,
  582 B.R. 603 (Bankr. S.D.N.Y. 2018) ............................................................................ *passim*

*In re B. Endeavour Shipping Co. Ltd.*,
  No. 15-10246 (REG) (Bankr. S.D.N.Y. 2015) (ECF No. 10) .................................................34

*In re Bd. Of Dirs. Of Hopewell Int'l Ins. Ltd.*,
  238 B.R. 25 (Bankr. S.D.N.Y. 1999).................................................................................36, 37

*In re Bd. Of Dirs. Of Multicanal S.A.*,
  307 B.R. 384 (Bankr. S.D.N.Y. 2004)....................................................................................69

*In re Bd. Of Dirs. Of Telecom Arg., S.A.*,
  528 F.3d 162 (2d Cir. 2008).........................................................................................62, 69, 73

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
  389 B.R. 325 (S.D.N.Y. 2008)......................................................................................41, 65, 66

*In re Berau Cap. Res. Pte Ltd.*,
  540 B.R. 80 (Bankr. S.D.N.Y. 2015) .................................................................................31, 33

*In re Betcorp Ltd.*,
  400 B.R. 266 (Bankr. D. Nev. 2009) .................................................................................35, 36

*Beveridge v. Vidunas (In re O'Reilly)*,
  598 B.R. 784, 803 (Bankr. W.D. Pa. 2019) ...............................................53

*Canada S. Ry. Co. v. Gebhard*,
  109 U.S. 527 (1883)..............................................................................67, 68, 77

*In re Cell C Proprietary Ltd.*,
  571 B.R 542 (Bankr. S.D.N.Y. 2017) ...............................................56, 67

*Clarkson v. Coughlin*,
  898 F. Supp. 1019 (S.D.N.Y. 1995)....................................................71

*Cornfeld v. Investors Overseas Servs., Ltd.*,
  471 F. Supp. 1255, 1259 (S.D.N.Y. 1979)........................................76

*In re Creative Fin., Ltd.*,
  543 B.R. 498 (Bankr. S.D.N.Y. 2016) ...............................................54

*CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*,
  482 B.R. 96 (Bankr. S.D.N.Y. 2012) .................................................61

*In re Culligan Ltd.*,
  2021 Bankr. LEXIS 1783 ..................................................................32

*In re Culmer*,
  25 B.R. 621 (Bankr. S.D.N.Y. 1992) .................................................62

*Cunard S.S. Co. v. Salen Reefer Servs. AB*,
  773 F.2d 452 (2d Cir. 1985)...............................................................67

*Re Dorman, Long & Company, Limited*
  151 L.T.R 347 (Ch. Div. 1934)..........................................................37

*Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*,
  737 F.3d 238 (2d Cir. 2013)...............................................................31

*In re E-House (China) Enterprise Holdings Limited*,
  No. 22-11326 (JPM) (Bankr. S.D.N.Y. 2022) ..................................72

*Endeavour Shipping*,
  No. 15-10246 (Bankr. S.D.N.Y. 2015) ..............................................39

*In re ENNIA Caribe Holding N.V.*,
  594 B.R. 631 (Bankr. S.D.N.Y. 2018).........................................38, 40

*In re ENNIA Caribe Holding N.V.*,
  596 B.R. 316 (Bankr. S.D.N.Y. 2019) ...............................................61

iv

*In re EnQuest PLC*,
   No. 16-12983 (MEW) (Bankr. S.D.N.Y. 2016) (ECF No. 14)............................34, 39, 47, 68

*In re Fairfield Sentry Ltd.*,
   714 F.3d 127 (2d Cir. 2013).........................................................................41, 42, 44

*In re Garcia Avila*,
   296 B.R. 95 (Bankr. S.D.N.Y. 2003) .........................................................................71

*In re Grant Forest Prods., Inc.*,
   440 B.R. 616 (Bankr. D. Del. 2010) ..........................................................................65

*In re Hidili Industry International Development Ltd.*,
   No. 22-10736 (DSJ) (Bankr. S.D.N.Y. 2022) (ECF No. 16)......................................... *passim*

*Hilton* v. *Guyot*,
   159 U.S. 113 (1895)......................................................................................69

*In re Huachen Energy, Ltd.*,
   No. 22-10005 (LGB) (ECF No. 20)...........................................................................74

*In re Ionica PLC*,
   241 B.R. 829 (Bankr. S.D.N.Y. 1999).......................................................................63

*In re Ionosphere Clubs, Inc.*,
   922 F.2d 984 (2d Cir. 1990)............................................................................75, 76

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
   412 F.3d 418 (2d Cir. 2005).............................................................................76

*In re Kaisa Group Holdings Ltd.*,
   No. 16-11303 (SHL) (Bankr. S.D.N.Y. 2016) (ECF No. 22)................................34, 39, 47, 67

*In Re La Seda de Barcelona*
   SA [2010] EWHC 1364 (Ch)..............................................................................73

*Lecta Paper UK Limited*,
   No. 19-13990 (Bankr. S.D.N.Y. 2020) ..................................................................34, 39

*Re Lehman Brothers International (Europe) (In administration)*
   (No 2) [2009] EWCA Civ 1161............................................................................73

*In re Lines*,
   81 B.R. 267 (Bankr. S.D.N.Y. 1988)........................................................................71

*In re Metcalfe & Mansfield Alt. Inv.*,
   421 B.R. 685 (Bankr. S.D.N.Y. 2010).............................................................66, 69, 73, 75

*In re Millennium Glob. Emerging Credit Master Fund Ltd.*,
  458 B.R. 63, 70 (Bankr. S.D.N.Y. 2011), *aff'd* 474 B.R. 88 (S.D.N.Y. 2012)............53, 54, 55

*In re MMG LLC*,
  256 B.R. 544 (Bankr. S.D.N.Y. 2000) ....................................................................................71

*In re Modern Land (China) Co.*,
  641 B.R. 768 (Bankr. S.D.N.Y. 2022) .......................................................................... *passim*

*In re OAS S.A.*,
  533 B.R. 83 (Bankr. S.D.N.Y. 2015) .....................................................................................56

*In re Ocean Rig UDW Inc.*,
  570 B.R. 687 (Bankr. S.D.N.Y. 2017) .................................................................32, 41, 56, 57

*In re Octaviar Admin. Pty Ltd.*,
  511 B.R. 361 (Bankr. S.D.N.Y. 2014) ...................................................................................32

*OIC Run-Off Ltd.*,
  No. 15-13054 (Bankr. S.D.N.Y. 2015) ..................................................................................39

*In re Olinda Star Ltd.*,
  614 B.R. 28 (Bankr. S.D.N.Y. 2020) ...............................................................................32, 57

*In re Petition of Hourani*,
  180 B.R. 58 (Bankr. S.D.N.Y. 1995) .....................................................................................63

*In re Qimonda AG Bankr. Litig.*,
  433 B.R. 547 (E.D. Va. 2010).................................................................................................61

*In re Rede Energia S.A.*,
  515 B.R. 69 (Bankr. S.D.N.Y. 2014) ...............................................................................67, 73

*In re RongXingDa Development (BVI) Limited*,
  No. 22-10175 (DSJ) (Bank. S.D.N.Y. 2022) (ECF No. 12) .......................................34, 36, 39

*In re Rubin*,
  160 B.R. 269 (Bankr. S.D.N.Y. 1993) ...................................................................................71

*In re Serviços de Petróleo Constellation S.A.*,
  600 B.R. 237 (Bankr. S.D.N.Y. 2019).......................................................................43, 53, 54

*In re Shanghai Huaxin Group (Hongkong) Limited*,
  No. 19-11482 (JLG) (Bankr. S.D.N.Y. 2019) (ECF No. 17)...................................................34

*Shierson v. Vlieland-Boddy*,
  [2005] EWCA Civ 974 ...........................................................................................................53

*In re Sino-Forest Corp.*,
    501 B.R. 655 (Bankr. S.D.N.Y. 2013) .........................................................................70, 73, 75

*SNP Boat Serv. S.A. v. Hotel Le St. James*,
    483 B.R. 776 (S.D. Fla. 2012) ..................................................................................................61

*In re SphinX, Ltd.*,
    351 B.R. 103 (Bankr. S.D.N.Y. 2006) ............................................................................ *passim*

*In re Standing Order of Reference Re: Title 11*,
    12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.) ................................................4, 3, 4, 4

*In re Suntech Power Holdings Co.*,
    520 B.R. 399 (Bankr. S.D.N.Y. 2014) ................................................................................32, 41

*In re T & N Ltd and others*
    (No 4) [2006] EWHC 1447 (Ch) (David Richards , J.) .............................................................73

*In re Three Arrows Capital, Ltd*,
    No. 22-10920 (MG) (Bankr. S.D.N.Y. 2022) (ECF No. 47) ....................................................34

*In re Treco*,
    240 F.3d 148 (2d Cir. 2001) ...............................................................................................62, 63

*In re U.S. Steel Canada Inc.*,
    571 B.R. 600 (Bankr. S.D.N.Y. 2017) ................................................................................32, 67

*Victrix S.S. Co., SA. V. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d Cir. 1987) ...............................................................................67, 68, 71, 76

*In re Virgin Atlantic Airways Limited*,
    1:20-BK-11804 (Bankr. S.D.N.Y, 2020) .................................................................................34

*In re Vitro S.A.B. de C.V.*,
    701 F.3d 1031 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 1862 (2013) ...............................56, 75

*In re Winsway*,
    No. 16-10833 (MG) (Bankr. S.D.N.Y. 2016) (ECF No. 13) ...............................................56, 57

*YH Ltd.*,
    No. 16-12262 .............................................................................................................................39

**Statutes**

11 U.S.C. § 101(23) ...........................................................................................................................35

11 U.S.C. § 103(a) .............................................................................................................................31

11 U.S.C. § 109(a) .............................................................................................................................31

11 U.S.C. § 1501, 1501(a) ..................................................................................30, 65, 75, 77

11 U.S.C. § 1502(2) ................................................................................................................53

11 U.S.C. § 1504 .....................................................................................................................59

11 U.S.C. § 1507, 1507(b) .............................................................................................65, 66

11 U.S.C. § 1509(a) ................................................................................................................59

11 U.S.C. § 1515, 1515(b) .............................................................................................59, 58

11 U.S.C. § 1516(a), 1516(c) ........................................................................................56, 41

11 U.S.C. § 1517(a), 1517(b)(2) ..................................................................................33, 53

11 U.S.C. § 1521(a), 1521(a)(7), 1521(e) ................................................................60, 71

11 U.S.C. § 1522(a) ................................................................................................................61

Cayman Companies Law § 174 ............................................................................................43

**Rules**

*Amended Standing Order of Reference dated January 31, 2012, Reference M-431,
In re Standing Order of Reference Re: Title 11, 12 Misc. 00032 (S.D.N.Y. Feb.
2, 2012) (Preska, C.J.)* ...............................................................................................4

*Fed. R. of Bankr. P. Rule 1007* ...........................................................................................59

**Additional Authority**

David L. Lawton and Shannon B. Wolf, *The Thing About Schemes in the Scheme
of Things: Recognition of Schemes of Arrangement under Chapter 15 of the
U.S. Bankruptcy Code*, at 1 (INSOL International Technical Series Issue No.
38, March  2018).........................................................................................................35

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

By and through their undersigned counsel, (i) Mr. Jimmy Fong, in his capacity as
(a) the authorized foreign representative (the "Evergrande Foreign Representative") for China
Evergrande Group ("Evergrande"), which is subject to a restructuring proceeding entitled *In the
Matter of China Evergrande Group* (the "Evergrande Hong Kong Proceeding"), concerning a
scheme of arrangement between Evergrande and certain Scheme Creditors (as defined herein),
pursuant to the relevant provisions of the Hong Kong Companies Ordinance (Chapter 622 of the
Laws of Hong Kong) (the "Hong Kong Companies Ordinance") and currently pending before the
High Court of Hong Kong (the "Hong Kong Court") (Case Number HCMP 1091/2023) and (b) the
authorized foreign representative (the "Tianji Foreign Representative", and together with the
Evergrande Foreign Representative, the "Hong Kong Foreign Representative") for Tianji Holding
Limited ("Tianji", and together with Evergrande, the "Hong Kong Debtors"), which is subject to
a restructuring proceeding entitled *In the Matter of Tianji Holding Limited* (the "Tianji Hong Kong
Proceeding", and together with the Evergrande Hong Kong Proceeding, the "Hong Kong
Proceedings"), concerning a scheme of arrangement between Tianji and certain Scheme Creditors,
pursuant to the relevant provisions of the Hong Kong Companies Ordinance and currently pending
before the Hong Kong Court (Case Number HCMP 1090/2023); and (ii) Ms. Anna Silver, in her
capacity as the authorized foreign representative (the "Scenery Journey Foreign Representative",
and together with the Hong Kong Foreign Representative, the "Foreign Representatives") for
Scenery Journey Limited ("Scenery Journey", and together with the Hong Kong Debtors, the
"Debtors"), which is subject to a restructuring proceeding entitled *In the Matter of Scenery Journey
Limited* (the "Scenery Journey BVI Proceeding", and together with the Hong Kong Proceedings,
the "Foreign Proceedings"), concerning a scheme of arrangement between Scenery Journey and

certain Scheme Creditors, pursuant to section 179A of the BVI Business Companies Act, 2004 (as

amended, the "BVI Companies Act", and together with the Hong Kong Companies Ordinance, the

"Foreign Company Acts") and currently pending before the High Court of the Eastern Caribbean

Supreme Court (the "BVI Court", and together with the Hong Kong Court, the "Foreign Courts")

(Case Number BVIHCOM 2023/0076), respectfully submit this motion (this "Motion") and

represent as follows:

## **RELIEF REQUESTED**

1.      Pursuant to this Motion, the Foreign Representatives respectfully request, pursuant

to sections 105(a), 1504, 1507, 1510, 1515, 1517, 1520, 1521 and 1522 of title 11 of the

United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), entry of the orders

substantially in the forms annexed hereto as **Exhibits A**, **B**, and **C** (the "Proposed Recognition

Orders"):

i.      granting recognition of the Foreign Proceedings pursuant to section 1517 of
the Bankruptcy Code, each as a "foreign main proceeding" (as defined in
section 1502(4) of the Bankruptcy Code) of each of the applicable Debtors,
and all relief included therewith as provided in section 1520 of the
Bankruptcy Code, or, in the alternative, with respect to the Hong Kong
Proceedings, granting recognition of the Hong Kong Proceedings pursuant
to section 1517 of the Bankruptcy Code each as a "foreign nonmain
proceeding" (as defined in section 1502(5) of the Bankruptcy Code), and all
relief included therewith;

ii.     recognizing the respective Foreign Representatives as a "foreign
representative" (as defined in section 101(24) of the Bankruptcy Code) of
the applicable Foreign Proceeding;

iii.    granting full force and effect and comity to the Schemes and the Foreign
Court Orders (each as defined herein) and the additional relief set forth
herein pursuant to sections 1521(a) and/or 1507(a) of the Bankruptcy Code;

iv.     enjoining  parties from taking any action inconsistent with the Schemes in
the United States;

2

v.      authorizing the respective Existing Notes Trustees (as defined herein) and any successor trustees  to take any and all actions necessary to give effect to the terms of the proposed restructuring of the applicable Debtor; and

vi.     granting such other and further relief as the United States Bankruptcy Court for the Southern District of New York (the "Court") deems just and proper. The relief requested in this Motion is without prejudice to any additional relief the Foreign Representatives may request.

2.      In support of this Motion, the Foreign Representatives submit the (a) *Declaration of Jimmy Fong in Support of the Motion for (i) Recognition of Foreign Main Proceedings, (ii) Recognition of Foreign Representatives, and (iii) Related Relief Under Chapter 15 of the Bankruptcy Code With Respect to Debtor China Evergrande Group* (the "Evergrande Representative Declaration"); (b) *Declaration of Jimmy Fong in Support of the Motion for (i) Recognition of Foreign Main Proceedings, (ii) Recognition of Foreign Representatives, and (iii) Related Relief Under Chapter 15 of the Bankruptcy Code With Respect to Debtor Tianji Holding Limited* (the "Tianji Representative Declaration"); (c) *Declaration of Anna Silver in Support of the Motion for (i) Recognition of Foreign Main Proceedings, (ii) Recognition of Foreign Representatives, and (iii) Related Relief Under Chapter 15 of the Bankruptcy Code With Respect to Debtor Scenery Journey Limited* (the "Scenery Journey Representative Declaration", and collectively with the Evergrande Representative Declaration and the Tianji Representative Declaration, the "Representative Declarations"); (d) *Declaration of Sidley Austin as Hong Kong Counsel to the Debtors in Support of the Motion for (i) Recognition of Foreign Main Proceedings, (ii) Recognition of Foreign Representatives, and (iii) Related Relief Under Chapter 15 of the Bankruptcy Code With Respect to Debtors Evergrande and Tianji* (the "Hong Kong Counsel Declaration"); (e) *Declaration of Maples BVI as BVI Counsel to the Debtors in Support of the Motion for (i) Recognition of Foreign Main Proceeding, (ii) Recognition of Foreign Representative, and (iii) Related Relief Under Chapter 15 of the Bankruptcy Code With Respect*

3

to Debtor Scenery Journey Limited (the "BVI Counsel Declaration", and together with the Hong Kong Counsel Declaration, the "Counsel Declarations", and the Counsel Declarations, together with the Representative Declarations, the "Declarations"); and (f) (x) *Statements of Evergrande Foreign Representative Required by Section 1515(c) of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure*; (y) *Statements of Tianji Foreign Representative Required by Section 1515(c) of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure*; and (z) *Statements of Scenery Journey Foreign Representative Required by Section 1515(c) of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure* (the foregoing clauses (x) through (z), the "Corporate Statements" and together with the Declarations, the "Supporting Documents"), which have been filed contemporaneously herewith and are incorporated herein by reference.[2]

## JURISDICTION AND VENUE

3.          This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.).  Recognition of a foreign proceeding and other matters under Chapter 15 of the Bankruptcy Code have been designated core matters under 28 U.S.C. § 157(b)(2)(P).

4.          The Foreign Representatives have properly commenced the above-captioned Chapter 15 cases (the "Chapter 15 Cases") pursuant to sections 1504 and 1509 of the Bankruptcy Code by filing petitions for recognition of the Foreign Proceedings under section 1515 of the Bankruptcy Code (each, a "Chapter 15 Petition", and collectively, the "Chapter 15 Petitions").

---

[2] Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Supporting Documents or the Explanatory Statements (as defined herein), as applicable.

5.       Venue is proper under 28 U.S.C. § 1410 as the Debtors have assets within the United States located in New York, as described further herein.

## BACKGROUND

### I.       Debtors' Business Operations and Preexisting Capital Structure

6.       Evergrande (formerly known as Evergrande Real Estate Group Limited) is the ultimate holding company of a group of companies comprising Evergrande and its direct and indirect subsidiaries, including, Tianji, Scenery Journey, and certain subsidiaries who guarantee certain of the Existing Debts (defined herein) (collectively, the "Subsidiary Guarantors") with respect to the Debtors (collectively, the "Group").[3]   The Group carries on business through operating subsidiaries and engages principally in property development, property investment, property management, new energy vehicle development and production, and cultural tourism business in China.

7.       Evergrande's shares have been listed on the Main Board of The Stock Exchange of Hong Kong Limited (the "HKEX") since November 5, 2009 with stock code 3333.  As of June 30, 2023, the authorized share capital of Evergrande was US $1,000,000,000 divided into 100,000,000,000 ordinary shares of a nominal or par value of $0.01 each, of which approximately 13 billion of the ordinary shares were issued and fully paid.

---

[3] Evergrande was incorporated in the Cayman Islands under the Cayman Companies Act as an exempted company with limited liability on June 26, 2006.  Tianji, an indirect non-wholly owned subsidiary of Evergrande, was incorporated in Hong Kong under Part XI of the predecessor Hong Kong Companies Ordinance (Cap. 32 of the Laws of Hong Kong) as a limited liability company on May 19, 2009.  Scenery Journey, a direct wholly owned subsidiary of Tianji, was incorporated in the BVI under the BVI Companies Act as a limited liability company on February 12, 2018.

A. **The Group's Operation Segments and Business Operations**

8.    The Group's operations are comprised of three key business segments:[4]

(i)   **Property development business:**  The property development business is the main business line of the Group.  During January to May 2023, the Group had contracted sales of approximately RMB 33.8 billion (or approximately RMB 20.1 billion after deducting properties transferred to construction companies or suppliers for payment in kind) and contracted sales area of approximately 4.9 million square meters of gross floor area.  Most of the Group's projects are held under Hengda Real Estate Group Company Limited ("Hengda"),[5] while Tianji also holds equity interests in over 30 projects located in China.

(ii)  **Property management business:**  The property management business of the Group is operated through a subsidiary, Evergrande Property Services Group Limited ("EVPS").[6]  EVPS provides property management services primarily to real estate projects developed by the Group's property development business.  As of May 31, 2023, approximately 71.5% of properties under management by EVPS are properties developed by the Group.

(iii) **New energy vehicle business:**  Evergrande's subsidiary China Evergrande New Energy Vehicle Group Limited ("NEV")[7] conducts industrial park development and health management businesses, as well as the new energy vehicle and battery businesses.

B. **The Debtors' Existing Capital Structure and Existing Debts**

i.   Evergrande Existing Debts

9.    As of December 31, 2022, Evergrande had a total indebtedness of approximately

RMB 198.3 billion, including: (i) current borrowings of approximately RMB 2.3 billion;

---

[4] "RMB" refers to Renminbi, or the Chinese Yuan ("CNY") and "HK$" refers to Hong Kong Dollars. All conversions from RMB to US$ are made at the rate of RMB 7.23 to US$ 1.00, and all conversions from RMB to HK$ are made at a rate of RMB 0.92 to HK$ 1.00, being the rates published by the Monetary Policy Department of the People's Bank of China on 30 June 2023. For convenience, the rate of HK$ 7.84 to US$ 1.00 is used for conversions from HK$ to US$.

[5] Hengda is the 100% controlling shareholder of Tianji.  As of July 17, 2023, Evergrande indirectly holds approximately a 60% equity in Hengda.

[6] As of July 17, 2023, Evergrande holds a 51.7% equity interest in EVPS.

[7] As of July 17, 2023, Evergrande holds a 58.5% equity interest in NEV.

6

(ii) non-current borrowings of RMB 99.6 billion; (iii) amounts due to subsidiaries of RMB 94.8 billion; and (iv) dividends payable of RMB 1.7 billion.

10.     Evergrande is (i) the issuer of (and borrower under) the Evergrande Existing Notes (as defined herein), which involve ten series of U.S. dollar denominated senior secured notes and a single series of Honk Kong dollar denominated convertible bonds due February 14, 2023, as well as separately a 15% private loan due January 2022 between certain private lenders and Evergrande and Treasure Glory Global Limited as borrowers (collectively, the "Evergrande Class A Debt" and such creditors under the Class A Debt, the "Evergrande Class A Creditors") and (ii) an obligor in respect of the Evergrande Class C Debt (as defined herein), under which Evergrande has several types of obligations, including (1) where Evergrande is a guarantor and (2) where Evergrande has provided a put option or repurchase obligation to a creditor.

11.     The Evergrande Existing Notes (except for the February 2023 Bonds (as defined herein)), are the only Evergrande Existing Debts (as defined herein) that are governed by United States (*i.e.*, New York) law.

12.     The Evergrande Existing Notes, which have an aggregate face value of approximately $14.2 billion and an approximate accreted balance, as of July 31, 2023, of approximately $16.8 billion, are comprised of:

      i.     An aggregate principal amount of approximately $300 million in 9.5% senior notes with a maturity date of January 30, 2022 (the "January 2022 Notes") issued pursuant to an indenture dated April 30, 2019, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;[8]

     ii.     An aggregate principal amount of approximately $2.022 billion in 8.25% senior notes with a maturity date of March 23, 2022 (the "March 2022 Notes")

---

[8] "Evergrande Existing Notes Trustee" means Citicorp International Limited in its capacity as the notes trustee governing the Evergrande Existing Notes.

issued pursuant to an indenture dated March 23, 2017, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;

iii.     An aggregate principal amount of approximately $1.450 billion in 9.5% senior notes with a maturity date of April 11, 2022 (the "April 2022 Notes") issued pursuant to an indenture dated April 11, 2019, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;

iv.     An aggregate principal amount of approximately $999 million in 11.5% senior notes with a maturity date of January 22, 2023 (the "January 2023 Notes") issued pursuant to an indenture dated January 22, 2020, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;

v.      An aggregate principal amount of approximately $10 million in 4.25% convertible bonds with a maturity date of February 14, 2023 (the "February 2023 Bonds") issued pursuant to a trust deed dated February 14, 2018, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;

vi.     An aggregate principal amount of approximately $834 million in 10.0% senior notes with a maturity date of April 11, 2023 (the "April 2023 Notes") issued pursuant to an indenture dated April 11, 2019, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;

vii.    An aggregate principal amount of approximately $1.332 billion in 7.5% senior notes with a maturity date of June 28, 2023 (the "June 2023 Notes") issued pursuant to an indenture dated June 28, 2017, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;

viii.   An aggregate principal amount of approximately $995 million in 12.0% senior notes with a maturity date of January 22, 2024 (the "January 2024 Notes") issued pursuant to an indenture dated January 22, 2020, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;

8

ix. An aggregate principal amount of approximately $951 million in 9.5% senior notes with a maturity date of March 29, 2024 (the "March 2024 Notes") issued pursuant to an indenture dated March 29, 2017, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;

x. An aggregate principal amount of approximately $691 million in 10.5% senior notes with a maturity date of April 11, 2024 (the "April 2024 Notes") issued pursuant to an indenture dated April 11, 2019, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee; and

xi. An aggregate principal amount of approximately $4.649 billion in 8.75% senior notes with a maturity date of June 28, 2025 (the "June 2025 Notes" and collectively with the January 2022 Notes, March 2022 Notes, April 2022 Notes, January 2023 Notes, February 2023 Bonds, April 2023 Notes, June 2023 Notes, January 2024 Notes, March 2024 Notes, and April 2024 Notes, the "Evergrande Existing Notes") issued pursuant to an indenture dated June 28, 2017, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee.

13. The total principal amount outstanding under the Evergrande Class C Debt is approximately $13.4 billion, and is comprised of the following debt instruments (collectively, the "Evergrande Class C Debt" and such creditors under the Evergrande Class C Debt, the "Evergrande Class C Creditors", and the Evergrande Class C Debt together with the Evergrande Class A Debt, the "Evergrande Existing Debts"):

i. An On-Lent Loan funded by Treasure Glory Global Limited to Evergrande pursuant to the loan agreement relating to the provision of the Class A Private Loan;

ii. A guarantee in relation to $260 million 8.5% senior notes due October 3, 2021 issued by Jumbo Fortune Enterprises Limited (the "Lake Notes");

iii. A guarantee in relation to $424 million 9.0% senior notes due January 22, 2023 issued by Great Courage Global Limited;

    iv.    A $116 million put option in relation to certain senior notes issued by Great Courage Global Limited;

    v.    A $110 million put option in relation to shares of Graceful Court Limited;

    vi.    A guarantee in relation to a HK$160 million margin loan borrowed by New Chic Global Limited;

    vii.    A guarantee in relation to a HK$575 million put option in relation to shares of Clear Star Investments Limited;

    viii.    A HK$1.2 billion loan borrowed by Evergrande due January 2, 2022;

    ix.    A HK$600 million loan borrowed by Evergrande due January 7, 2022;

    x.    A guarantee in relation to a $20 million structured loan borrowed by Rainbow Ever Limited;

    xi.    A guarantee in relation to a $355 million structured sale and purchase agreement of shares in Rainbow Ever Limited;

    xii.    A guarantee in relation to a HK$7.6 billion loan borrowed by Tianji due November 24, 2023, pursuant to facilities agreement dated November 21, 2020;

    xiii.    $712 million repurchase obligations in respect of Fangchebao Group Co. Ltd.;

    xiv.    A repurchase obligation in relation to a RMB 8.2 billion onshore bond issued by Henga Real Estate due July 8, 2022;

    xv.    A guarantee of Guangzhou Kailong Real Estate Company Limited's RMB 5 billion repurchase obligation of shares in Hengda Real Estate, together with interest and costs, which was awarded in an Arbitration Award rendered by Shenzhen Court of International Arbitration where CEG, Guangzhou Kailong Real Estate Company Limited, and the Chairman of the Group were responsible for the repayment accordingly; and

    xvi.    Guarantees in relation to certain Chinese onshore debts.

    ii.    <u>Scenery Journey Existing Notes</u>

14.    As of December 31, 2022, Scenery Journey had a total indebtedness of approximately $5.2 billion, all incurred from issuing the following four series of Scenery Journey Existing Notes (as defined herein):

    i.    An aggregate principal amount of approximately $1.999 billion in 11.5% senior notes with a maturity date of October 24, 2022 (the "October 2022 Notes") issued pursuant to an indenture dated January 24, 2020, as amended, supplemented, or otherwise modified from time to time, between, among others, Scenery Journey and Citicorp International Limited, as the Scenery Journey Existing Notes Trustee;[9]

    ii.    An aggregate principal amount of approximately $644 million in 13.0% senior notes with a maturity date of November 6, 2022 (the "November 2022 Notes") issued pursuant to an indenture dated November 6, 2018, as amended, supplemented, or otherwise modified from time to time, between, among others, Scenery Journey and Citicorp International Limited, as the Scenery Journey Existing Notes Trustee;

    iii.    An aggregate principal amount of approximately $1.994 billion in 12.0% senior notes with a maturity date of October 24, 2023 (the "October 2023 Notes") issued pursuant to an indenture dated January 24, 2020, as amended, supplemented, or otherwise modified from time to time, between, among others, Scenery Journey and Citicorp International Limited, as the Scenery Journey Existing Notes Trustee; and

    iv.    An aggregate principal amount of approximately $589 million in 13.75% senior notes with a maturity date of November 6, 2023 (the "November 2023 Notes" and collectively with the October 2022 Notes, November 2022 Notes, and October 2023 Notes, the "Scenery Journey Existing Notes"), and together with the Evergrande Existing Notes, the "Existing Notes") issued pursuant to an indenture dated November 6, 2018, as amended, supplemented, or otherwise modified from time to time, between, among others, Scenery Journey and Citicorp International Limited, as the Scenery Journey Existing Notes Trustee.

The Scenery Journey Existing Notes are governed by United States (*i.e.*, New York) law.

    iii.    Tijani Existing Debts

15.    As of December 31, 2022, Tianji had total indebtedness of approximately $12 billion, comprising of Tianji's obligations (a) as an obligor and/or guarantor pursuant to (i) a Tianji guarantee in relation to the Lake Notes; (ii) a HK$575 million put option granted by Tianji in relation to shares of Clear Star Investments Limited; (iii) a $258 million put option granted by

---

[9] "Scenery Journey Existing Notes Trustee" means Citicorp International Limited in its capacity as the notes trustee governing the Scenery Journey Existing Notes (and Scenery Journey Existing Notes Trustee, together with the Evergrande Existing Notes Trustee, the "Existing Notes Trustees").

Tianji in relation to shares of Sky Joy Holdings Limited; (iv) a $258 million put option granted by Tianji in relation to a private loan borrowed by Sky Joy Holdings Limited; (v) a HK$7.6 billion loan, due November 24, 2023, borrowed, by Tianji pursuant to a facilities agreement dated November 21, 2020; (vi) approximately HK$1.4 billion put options in relation to a project located in Tuen Mun, Hong Kong; and (vii) an intercompany balance owed by Tianji to Evergrande in an amount equal to $5 billion (collectively, the "<u>Tianji Other Debts</u>"), and (b) as a guarantor of the New York law-governed Scenery Journey Existing Notes (together with the Tianji Other Debts, the "<u>Tianji Existing Debts</u>", and the Tianji Existing Debts, together with the Evergrande Existing Debts and Scenery Journey Existing Notes, the "<u>Existing Debts</u>").  The Tianji guarantees of the Scenery Journey Existing Notes are the only Tianji Existing Debts governed by United States (*i.e.*, New York) law.

* * *

16.    Based on the Group's financial data, the current assets of the Group on a consolidated basis as of December 31, 2022 amounted to approximately RMB 98.8 billion.  Key items of the Group's current assets consisted of the following as of such date:

     i.      inventory of approximately RMB 0.5 billion;

     ii.     properties under development for sale of approximately RMB 1.1361 trillion;

     iii.    properties held for sale of approximately RMB 102.9 billion;

     iv.    trade and other receivables of approximately RMB 228.9 billion;

     v.     restricted cash of approximately RMB 10.0 billion; and

     vi.    cash and cash equivalents of approximately RMB 4.3  billion.

17.    The majority of the Group's current assets cannot be collected or converted into cash immediately.  As of December 31, 2022, certain of the assets were pledged to secure certain

banking and other facilities granted to the Group and mortgage loans granted to buyers of sold properties.

## II.    Events Preceding the Commencement of the Foreign Proceedings

### A.    Stresses on Evergrande

18.    The Group historically adopted a high-debt, high-leverage, high-turnover model to expand operations, which created substantial debt risks that inflated the debt burden of the Group and resulted in deterioration of capital with respect to its main sector of real estate business.  Since the second half of 2021, Evergrande's real estate transaction volumes and the area sold and amount of sales have declined leading to reduced cash generation, while the Group has experienced liquidity pressures due to limited access to external capital.

### B.    Operational Measures Taken to Address Financial Situation

19.    Since 2021, the Group has been actively engaging with its customers, suppliers, creditors, and shareholders to stabilize its credit lines and day-to-day operations.  It implemented further measures by reducing capital expenditures and other expenses such as management remuneration.

20.    Additionally, as of December 2021, the Group has introduced several initiatives to reduce operational costs and increase efficiency.  These initiatives included streamlining the organization and consolidating job posts.

21.    The Group has since prioritized the resumption of construction and production, in order to ensure the delivery of property units.  To facilitate these efforts, the Group has maintained close communication with upstream and downstream business partners as well as relevant creditors, and has received significant support.

13

C.    **Group Events of Default**

22.    On December 2, 2021, Evergrande received a demand to perform its obligations under the Evergrande Class A Debts regarding a guarantee in the amount of approximately $260 million in relation to the Lake Notes, with which Evergrande failed to comply.  Evergrande's failure to perform its obligations under this guarantee constituted events of default under the indentures governing the Evergrande Existing Notes (the "Evergrande Existing Notes Events of Default").  Evergrande has since ceased to make payments for the principal and interest amounts due under the Evergrande Existing Notes.

23.    On the same day, Tianji also received a demand to perform its obligations under its guarantee of the Lake Notes, with which Tianji failed to comply. Tianji's failure to perform its obligations under this guarantee constituted events of default under the indentures governing the Lake Notes (the "Lake Notes Events of Default").  Tianji has since ceased to make payments for the principal and interest amounts due under the Lake Notes.  Moreover, Tianji's failure to perform its obligations under such guarantee in turn constituted events of default under the indentures governing the Scenery Journey Existing Notes.

24.    With respect to the Scenery Journey Existing Notes, in addition to the events of default described above, the maturity dates for the October 2022 Notes and November 2022 Notes have passed, and, therefore, Scenery Journey is currently obligated to repay the principal amount and accrued but unpaid interest thereunder (collectively, the "Scenery Journey Notes Events of Default").  These amounts remain unpaid as of the date hereof.

25.    There have also been payment defaults, cross defaults and/or other events of default in relation to certain of the Existing Debts (together with the Evergrande Existing Notes Events of Default, the Lake Notes Events of Default, and the Scenery Journey Notes Events of Default, the

"Group Events of Default").  Further, certain creditors of the Existing Debts have sought to enforce

the relevant security, including by appointing receivers and/or enforcing share charges, as provided

for under the relevant transaction documents.

### D.    Engagement with Financial Stakeholders to Address Capital Structure

26.    Against this backdrop, the Group has been working closely with its stakeholders,

including onshore as well as offshore creditors, to formulate a holistic restructuring.

27.    On September 14, 2021, Evergrande announced the appointment of Sidley Austin

as its legal advisor to review its potential options and assist in debt restructuring negotiations with

the holders of the Existing Notes.  On that same day, Evergrande also announced the appointment

of Houlihan Lokey (China) Limited as its financial advisor.  On January 21, 2022, the Group

announced the further appointment of China International Capital Corporation Limited and BOCI

Asia Limited as financial advisers and Zhong Lun Law Firm LLP as legal adviser to assist

Evergrande in (i) mitigating and eliminating the risks relating to its debts; (ii) following up with

demands from its creditors dealing; and (iii) dealing with the debts issue on a fair and equitable

basis.[10]

28.    The Group also promptly commenced discussions with certain ad hoc groups of

holders of certain of the Group's Existing Debts, as constituted from time to time (each, an "Ad

Hoc Group", and collectively, the "Ad Hoc Groups") to explore a consensual resolution for the

Group Events of Default.

---

[10] In addition, the Debtors have subsequently retained Deloitte Advisory (Hong Kong) Limited to assist with the preparation of certain Reports set out at Schedule 2 and Schedule 3 of the respective Explanatory Statements. Furthermore, the Group has appointed Maples and Calder (Hong Kong) LLP, Maples and Calder (BVI) LLP, and Maples and Calder (Cayman) as advisors to the Group as to matters of BVI and Cayman law.

### E. The Restructuring Support Agreements

29.     Following extensive and thorough consideration, consultation, and negotiation, the Debtors determined that a restructuring is in the best interests of the Debtors and those with an economic interest in the Debtors, in particular, the Scheme Creditors.  Accordingly, (i) Evergrande entered into that certain restructuring support agreement, dated as of April 3, 2023, with certain holders of the Evergrande Class A Debts (the "Class A RSA") and that certain restructuring support agreement, dated as of April 3, 2023 with certain holders of the Evergrande Class C Debts (the "Class C RSA" and together with the Class A RSA, the "Evergrande RSAs"); (ii) Scenery Journey entered into that certain restructuring support agreement, dated as of April 3, 2023, with certain holders of the Scenery Journey Existing Notes (the "Scenery Journey RSA"); and (iii) Tianji entered into that certain restructuring support agreement, dated as of April 3, 2023, with certain holders of the Tianji Existing Debts (the "Tianji RSA", and together with the Evergrande RSAs and the Scenery Journey RSA, the "RSAs").[11]

30.     The RSAs set out the terms on which the parties thereto would assist in and facilitate the implementation of a restructuring of certain of the Group's Existing Debts (the "Restructuring") via a scheme of arrangement with respect to Evergrande in Hong Kong (the "Evergrande Hong Kong Scheme"), a scheme of arrangement with respect to Tianji in Hong Kong (the "Tianji Hong Kong Scheme", and together with the Evergrande Hong Kong Scheme, the "Hong Kong Schemes"), and a scheme of arrangement with respect to Scenery Journey in the

---

[11] The summary of the RSAs provided herein is qualified in its entirety by reference to the RSAs themselves.  In the case of any conflict between the summary provided herein and the RSAs, the RSAs will govern in all respects.

BVI (the "Scenery Journey BVI Scheme", and together with the Hong Kong Schemes, the "Schemes") and these Chapter 15 Cases.[12]

31.     Under the terms of the RSAs, the Scheme Creditors will receive, among other things, certain rights and interests in the New Instruments (as defined herein) as elected by the relevant Scheme Creditor to be distributed to Scheme Creditors (and/or their designated recipients, as applicable) under and pursuant to the terms of the respective Schemes.

32.     With respect to the Evergrande RSAs, as of July 31, 2023, certain Class A Creditors holding an aggregate principal amount of approximately $12.3 billion of the Evergrande Class A Debt (representing approximately 86.5% of the aggregate outstanding principal amount of all Evergrande Class A Debt) and certain Class C Creditors holding an aggregate principal amount of approximately $5.0 billion of the Evergrande Class C Debt (representing approximately 39.6% of the aggregate outstanding principal amount of all Evergrande Class C Debt) had acceded to the Evergrande RSAs.

33.     With respect to the Scenery Journey RSA, as of July 31, 2023, certain Scheme Creditors holding an aggregate principal amount of approximately $5.1 billion of the Scenery

---

[12] In addition to the Evergrande Hong Kong Proceeding, Evergrande is also involved in a proceeding (the "Cayman Proceeding") before the Grand Court of the Cayman Islands (the "Cayman Court"), pursuant to section 86 of Cayman Islands Companies Act with respect to a parallel linked and inter-conditional Cayman Islands scheme of arrangement for Evergrande (the "Evergrande Cayman Scheme"). The Evergrande Hong Kong Scheme and the Evergrande Cayman Scheme are parallel linked and inter-conditional, such that they both reflect the same economic restructuring of the same outstanding obligations of Evergrande, and are proposed under substantially the same terms albeit in different jurisdictions and to be approved under a different Act/Ordinance. Both the sanctioning of the Evergrande Hong Kong Scheme and the Evergrande Cayman Scheme are required conditions to Evergrande's successful reorganization and are proceeding in parallel. If either the Evergrande Cayman Scheme or the Evergrande Hong Kong Scheme is not sanctioned by the relevant court, the restructuring of Evergrande's liabilities will fail to become effective under the terms of the current Restructuring proposal. Evergrande is pursuing the separate Evergrande Cayman Scheme in addition to the Evergrande Hong Kong Scheme to ensure that the Restructuring with respect to Evergrande is recognized in the jurisdiction where Evergrande is incorporated. At this time, the Evergrande Foreign Representative is seeking recognition only of the Evergrande Hong Kong Proceeding and not the Evergrande Cayman Proceeding, but the Evergrande Foreign Representative or any other foreign representative on behalf of Evergrande reserves its right to seek recognition of the Evergrande Cayman Proceeding at a later date.

Journey Existing Notes (representing approximately 97.43% of the aggregate outstanding principal amount of all such notes) had acceded to the Scenery Journey RSA.

34.    With respect to the Tianji RSA, as of July 31, 2023, certain Scheme Creditors holding an aggregate principal amount of approximately $5.2 billion of the Tianji Existing Debts (representing approximately 71.66% of the aggregate outstanding principal amount of all such debts) had acceded to the Tianji RSA.

**III.    Description of the Schemes and Issuance of New Instruments**[13]

35.    As described in further detail in the Counsel Declarations, a scheme of arrangement under applicable Hong Kong and BVI law (both of which follow closely English law) is a compromise or arrangement entered into between a company and its creditors or between a company and its members.  A scheme of arrangement enables a company to enter into an arrangement in respect of its debts or obligations with its creditors, or one or more classes of its creditors.  Under both Hong Kong and BVI applicable law, a scheme of arrangement is approved by the requisite majorities of creditors if more than fifty percent (50% +1) in number and at least seventy-five percent (75%) in value of the relevant creditors of the debtor present and voting at the scheme meeting vote in favor of such scheme.

36.    Under the Schemes, the Debtors seek to restructure their liabilities under certain of the Existing Debts.  The effect of the Schemes will be, subject to the terms of the Schemes, to release the claims of creditors of the Debtors who have claims under the Existing Debts (the Evergrande Scheme Creditors, Scenery Journey Scheme Creditors, and Tijani Scheme Creditors (each as defined herein), collectively, the "<u>Scheme Creditors</u>") against the Debtors and

---

[13] The summaries of the Schemes and the New Instruments provided herein are qualified in their entirety by reference to the Schemes and the applicable indentures with respect thereto (the "<u>New Instrument Indentures</u>").  In the case of any conflict between the summaries provided herein and the Schemes or the New Instrument Indentures, the Schemes or the New Instrument Indentures, as applicable, will govern in all respects.

certain affiliates or related parties, in respect of the liability of the Debtors and such parties, among other things, arising directly or indirectly pursuant to, under, or in connection with the Existing Debts, as more fully described below with respect to each Scheme.

37.    In return, each Scheme Creditor will be entitled to receive certain consideration in accordance with the terms of the Schemes with respect to each of the Debtors, as applicable (collectively, the "Scheme Consideration").

### A.    Evergrande Scheme Consideration

38.    With respect to Evergrande, each applicable Scheme Creditor may elect one of the following options for consideration in accordance with the terms of the Evergrande Hong Kong Scheme (the "Evergrande Scheme Consideration" and such Scheme Creditors the "Evergrande Scheme Creditors"):

    i.    Option 1:  Evergrande Scheme Creditors can exchange their claims for new notes (the "A1/C1 Notes"), which will comprise three tranches, with a tenor of 10 to 12 years; and

    ii.    Option 2:  Evergrande Scheme Creditors can elect to exchange their claims for either of the following:

        a.  New notes to be issued by Evergrande with a tenor of five to nine years (the "A2/C2 Notes" and, together with the A1/C1 Notes, the "Evergrande New Notes");

        b.  A package of five equity-linked instruments, which are either secured over, linked to, mandatorily exchangeable into, or mandatorily convertible into (as applicable) listed shares of Evergrande, EVPS, or NEV (the "A2/C2 Package" and together with the Evergrande New Notes, the "Evergrande New Instruments"); or

        c.  A combination of the A2/C2 Notes and the A2/C2 Package.

39.    Evergrande Scheme Creditors will receive the form of Evergrande Scheme Consideration which they elect to receive in an amount equal to the value of their relevant claims

or entitlement, subject to the adjustment and reallocation process set out within the terms of the Evergrande Hong Kong Scheme.

40.    In exchange for the compromises set forth in the Evergrande Hong Kong Scheme and the Evergrande Scheme Consideration:

    i.    The Class A Debts will be fully and finally discharged and released together with any obligations related thereto of the Group, the Evergrande Subsidiary Guarantors[14] and the Evergrande Subsidiary Pledgors[15] in connection therewith;

    ii.    Evergrande's obligations under the Class C Debts will have been fully and finally discharged and released, however, any other obligors, guarantors, security or collateral pledgors, or other credit support providers of or in respect of a Class C Debt, will not be released of their obligations thereunder;

    iii.    The Ancillary Claims[16] with respect to the Evergrande Hong Kong Scheme will have been fully and finally released; and

---

[14] The "Evergrande Subsidiary Guarantors" are certain subsidiaries of Evergrande which have guaranteed the Evergrande Existing Notes. There are approximately 13 Evergrande Subsidiary Guarantors, each of whom is identified in Schedule 4 of the Evergrande Hong Kong Scheme.

[15] The "Evergrande Subsidiary Pledgors" are certain subsidiaries of Evergrande which have pledged, as the case may be, all the capital stock of such entity held by the Group or the relevant Evergrande Subsidiary Pledgor, in order to secure the obligations under the Evergrande Existing Notes. The Evergrande Subsidiary Pledgors are: (a) ANJI (BVI) Limited (安基(BVI)有限公司); (b) Fengyu (BVI) Limited (丰域(BVI)有限公司); (c) Pyramid Wealth Holdings Limited; (d) Value Depot Holdings Limited; and (e) Yitong (BVI) Limited (亿通(BVI)有限公司).

[16] "Ancillary Claims" with respect to the Evergrande Hong Kong Scheme means (capitalized terms as defined in the Evergrande Hong Kong Scheme) any Claim by a Scheme Creditor against a Released Person under or in respect of the Existing Finance Documents arising as a result of effecting, adhering to or complying with the releases in Clauses 28.2(a)(i) and 28.2(a)(ii) of the Schemes (excluding for the avoidance of doubt any Claim in respect of any Liability (i) of any Released Person which arises as a result of a failure to comply with any of the terms of the Schemes or any Restructuring Document (including but not limited to the New Instruments Document) and (ii) arising from or in connection with any Excluded Liability or Excluded Collateral). The "Released Persons" with respect to the Evergrande Hong Kong Scheme are (capitalized terms as defined in the Evergrande Hong Kong Scheme): (i) the Company, the Existing Notes Subsidiary Pledgors, the Existing Notes Subsidiary Guarantors and the Group, (ii) the Existing Notes Trustee, the Existing Notes Collateral Agent, the Existing Notes Depositary, the Existing Notes Paying and Transfer Agent and Registrar, (iii) the New Instruments Depositary, the New Instruments Paying and Transfer Agent and Registrar, and the New Instruments Trustee, and the New Instruments Collateral Agent, (iv) the Holding Period Trustee, (v) the Exchange and Conversion Agent, (vi) the Escrow Agent, (vii) the Account Bank, (viii) the Information Agent, (ix) the Scheme Administrators; (x) the Scheme Adjudicators, (xi) the CEG AHG (including each CEG AHG member's respective managers and investment managers' and investment advisors' Affiliates and funds and in each case, including any of its respective directors, managers or officers), (xii) the Advisors and (xiii) the AHG Advisors; and, regarding each of the above, includes each of their respective predecessors, successors and assigns (where applicable) and their respective Personnel in their capacities as such, and "Released Person" shall be construed accordingly.

    iv.       The Restructuring Claims[17] with respect to the Evergrande Hong Kong Scheme will have been fully and finally released.

41.      Additional information about the Evergrande Hong Kong Scheme, including details on the Evergrande Scheme Consideration, is set forth in the explanatory statement for the Evergrande Hong Kong Scheme (as supplemented from time to time, the "Evergrande Explanatory Statement")[18] and is described more fully in the Evergrande Representative Declaration.

**B.**    **Scenery Journey Scheme Consideration**

42.      With respect to Scenery Journey, the Scheme Consideration includes each such applicable Scheme Creditor's pro rata share in five tranches of new notes with an aggregate principal sum of $6.5 billion (the "Scenery Journey Scheme Consideration" and such notes the "Scenery Journey New Notes" and such Scheme Creditors the "Scenery Journey Scheme Creditors"), as described more fully in the Scenery Journey Representative Declaration.

43.      In exchange for the compromises set forth in the Scenery Journey BVI Scheme and the Scenery Journey Scheme Consideration:

    i.       The obligations of Scenery Journey, the Scenery Journey Subsidiary Guarantors,[19] and Hengda[20] under the Scenery Journey Existing Notes will be fully and finally discharged and released;

---

[17] "Restructuring Claims" means, broadly, any claim against a Released Person in relation to the negotiation or implementation of the Restructuring, except for fraud, willful default, or willful misconduct.

[18] A copy of the Evergrande Explanatory Statement, as made available to Evergrande Scheme Creditors on July 31, 2023 (following the applicable Convening Hearing (as defined herein)) and as supplemented on August 16, 2023, is attached as Exhibit D to the Hong Kong Counsel Declaration.

[19] The "Scenery Journey Subsidiary Guarantors" are certain subsidiaries of Scenery Journey which have guaranteed the Scenery Journey Existing Notes. There are approximately 100 Scenery Journey Subsidiary Guarantors, each of which is set forth on Schedule 4 of the Scenery Journey BVI Scheme. Tianji is a Scenery Journey Subsidiary Guarantor. Its liability as a Scenery Journey Subsidiary Guarantor, however, shall not be released or compromised through the Scenery Journey BVI Scheme but rather shall be released and compromised through the Tianji Hong Kong Scheme.

[20] Hengda entered into certain "Keepwell Agreements" with, among others, Tianji and Scenery Journey, in which Hengda provided certain guarantees in connection with the Scenery Journey Existing Notes.

ii.     The Ancillary Claims[21] with respect to the Scenery Journey BVI Scheme
         will have been fully and finally released; and

iii.    The Restructuring Claims with respect to the Scenery Journey BVI Scheme
         will have been fully and finally released.

44.     Additional information about the Scenery Journey BVI Scheme, including details

on the Scenery Journey Scheme Consideration, is set forth in the explanatory statement for the

Scenery Journey BVI Scheme (as supplemented from time to time, the "Scenery Journey

Explanatory Statement"),[22] and is described more fully in the Scenery Journey Representative

Declaration.

### C.     Tianji Scheme Consideration

45.     With respect to Tianji, the Scheme Consideration includes each such applicable

Scheme Creditor's pro rata share in four tranches of new notes (the "Tianji New Notes," and

together with the Scenery Journey New Notes and the Evergrande New Instruments, the "New

---

[21] "Ancillary Claims" with respect to the Scenery Journey BVI Scheme means (capitalized terms as defined in the Scenery Journey BVI Scheme) any Claim by a Scheme Creditor against a Released Person under or in respect of the Scenery Journey Existing Notes arising as a result of effecting, adhering to or complying with the releases in Clause 21.2(a)(i) of the Scenery Journey BVI Scheme, as further described in and limited by the Scenery Journey Explanatory Statement. This excludes any Claim in respect of any Liability of any Released Person which arises as a result of a failure to comply with any of the terms of the Scenery Journey BVI Scheme or any Restructuring Documents and arising from or in connection with any Excluded Liability. The "Released Persons" with respect to the Scenery Journey BVI Scheme (capitalized terms as defined in the Scenery Journey BVI Scheme) are: (i) the Company, the Existing Notes Subsidiary Guarantors and the Group, (ii) the Existing Notes Trustee, the Existing Notes Depositary, the Existing Notes Paying and Transfer Agent and Registrar, (iii) the New Instruments Depositary, the New Instruments Paying and Transfer Agent and Registrar, the Collateral Agent and the New Instruments Trustee, (iv) the Keepwell Provider, (v) the Holding Period Trustee, (v) the Information Agent, (vi) the Scheme Administrators, (vii) the Scheme Supervisor, (viii) the Advisors, (ix) the SJ AHG (including each SJ AHG member's respective managers and investment managers' and investment advisors' respective, Affiliates and funds and in each case, including any of its respective directors, managers or officers), (x) the AHG Advisors; and (xi) the Advisors and, regarding each of the above, includes each of their respective predecessors, successors and assigns (where applicable), their respective Personnel, and their respective advisors and in their capacities as such, and "Released Person" shall be construed accordingly.

[22] A copy of the Scenery Journey Explanatory Statement, as made available to Scenery Journey Scheme Creditors on July 31, 2023 (following the applicable Convening Hearing), and as supplemented on August 16, 2023 is attached as Exhibit E to the BVI Counsel Declaration.

Instruments") with an aggregate principal sum of $800 million (the "<u>Tianji Scheme Consideration</u>"

and such Scheme Creditors the "<u>Tianji Scheme Creditors</u>").

46.    In exchange for the compromises set forth in the Tianji Hong Kong Scheme and

the Tianji Scheme Consideration:

    i.    The obligations of Tianji under the Scenery Journey Existing Notes and the Tianji Other Debts will be fully and finally discharged and released (but to the extent other obligors remain in respect of the Tianji Other Debts and the Scenery Journey Existing Notes, such obligors will not be released pursuant to the Tianji Hong Kong Scheme);

    ii.    The Ancillary Claims[23] with respect to the Tianji Hong Kong Scheme will have been fully and finally released; and

    iii.    The Restructuring Claims with respect to the Tianji Honkg Kong Scheme will have been fully and finally released.

47.    Additional information about the Tianji Hong Kong Scheme, including details on

the Tianji Scheme Consideration, is set forth in the explanatory statement for the Tianji Hong

Kong Scheme (as supplemented from time to time, the "<u>Tianji Explanatory Statement</u>" and

collectively with the Evergrande Explanatory Statement and the Scenery Journey Explanatory

---

[23] "<u>Ancillary Claims</u>" with respect to the Tianji Hong Kong Scheme means (capitalized terms as defined in the Tianji Hong Kong Scheme) any Claim by a Scheme Creditor against a Released Person under or in respect of the Existing Debt Instruments arising as a result of effecting, adhering to or complying with the releases in Clause 24.2(a)(i) (Releases) of the Scheme (excluding for the avoidance of doubt any Claim in respect of any Liability (i) of any Released Person which arises as a result of a failure to comply with any of the terms of this Scheme or any Restructuring Document (including but not limited to the New Instruments Documents) and (ii) arising from or in connection with any Excluded Liability or Excluded Collateral. The "<u>Released Persons</u>" with respect to the Tianji Hong Kong Scheme (capitalized terms as defined in the Tianji Hong Kong Scheme) are: (i) the Company, (ii) the SJ Notes Trustee, the SJ Notes Depositary, and the SJ Notes Paying and Transfer Agent and Registrar, (iii) the Lake Notes Trustee and Agent and Existing Agents; (iv) the New Instruments Depositary, the New Instruments Paying and Transfer Agent and Registrar, and the New Instruments Trustee and the New Instruments Collateral Agent, (v) the Holding Period Trustee, (vi) the Information Agent, (vii) the Scheme 140 Administrators, (viii) the Scheme Adjudicator, (ix) the Advisors, (x) each member of the AHG and any of its respective managers and investment managers' and investment advisors' respective Affiliates and funds) (in each case, including any of its respective directors, managers or officers), (xi) the AHG Advisors; and, regarding each of the above, includes each of their respective predecessors, successors and assigns (where applicable) and their respective Personnel, and their respective advisors and in their capacities as such, and "Released Person" shall be construed accordingly.

Statement, the "Explanatory Statements"),[24] and is described more fully in the Tianji Representative Declaration.

* * *

48.    If the Schemes are approved by the requisite majorities of creditors and sanctioned by the Foreign Courts and copies of the Sanction Orders (as defined herein) are filed with the Hong Kong Companies Registry (the "Hong Kong Registrar") and the British Virgin Islands Registry of Corporate Affairs (the "BVI Registrar"), as applicable, the respective Scheme will bind all applicable Scheme Creditors, including those creditors who voted in favor of the Schemes, those creditors who voted against the Schemes, and those creditors who did not vote at all.

49.    In connection with the releases provided for by the Schemes (collectively, the "Releases"), the Debtors will, for and on behalf of the Scheme Creditors, execute applicable deeds of releases and the respective rights and the pre-scheme obligations of persons affected by the Schemes will terminate (subject to the exclusion of certain liabilities and collateral as noted herein and in the Explanatory Statements).

## IV.    Commencement of the Foreign Proceedings

50.    The Debtors filed commencing documents with the Foreign Courts on July 12, 2023, with respect to Evergrande and Tianji, and April 26, 2023, with respect to Scenery Journey, true and correct copies of which are attached to the applicable Counsel Declarations as Exhibit A (collectively, the "Scheme Petitions"), commencing the Foreign Proceedings, and seeking, among other things, orders directing the Debtors to convene meetings in Hong Kong and the BVI in respect of the applicable Schemes (each a "Scheme Meeting", and collectively, the "Scheme

---

[24] A copy of the Tianji Explanatory Statement, as made available to Tianji Scheme Creditors on July 31, 2023 (following the applicable Convening Hearing), and as supplemented on August 16, 2023, is attached as Exhibit D to the Hong Kong Counsel Declaration.

<u>Meetings</u>") for the Scheme Creditors, and scheduling convening hearings with respect to the Schemes (each a "<u>Convening Hearing</u>", and collectively, the "<u>Convening Hearings</u>").

51.    On July 14, 2023, each Debtor issued a practice statement letter for each Scheme to the applicable Scheme Creditors informing such Scheme Creditors that such Debtor had filed the applicable Scheme Petition and that the Convening Hearing for the applicable Scheme had been scheduled (the "<u>Practice Statement Letters</u>").   The respective Practice Statement Letter is attached to the Hong Kong Counsel Declaration as <u>Exhibit B</u> (with respect to the Hong Kong Debtors) or <u>Exhibit C</u> (with respect to Scenery Journey).

52.    Following the Convening Hearings, which each occurred on July 24, 2023, the Foreign Courts entered the respective orders (with respect to each Scheme, such Scheme's "<u>Convening Order</u>") (i) scheduling the Scheme Meetings for (a) August 23, 2023 with respect to the Evergrande Hong Kong Scheme; (b) August 22, 2023 with respect to the Tianji Hong Kong Scheme; (c) and August 22, 2023 with respect to the Scenery Journey BVI Scheme;[25] and (ii) scheduling the hearings to sanction the respective Schemes for September 5-6, 2023 at 10:00 a.m. (prevailing Hong Kong Time) with respect to the Hong Kong Schemes and for September 4, 2023 at 10:00 a.m. (prevailing BVI Time) with respect to the Scenery Journey BVI Scheme (each, a "<u>Sanction Hearing</u>", and collectively, the "<u>Sanction Hearings</u>").   It was possible for Scheme Creditors to instruct legal representatives to attend, and make submissions during, the Convening Hearing.   The respective Convening Order is attached to the Hong Kong Counsel Declaration as <u>Exhibit C</u> (with respect to the Hong Kong Debtors) or <u>Exhibit D</u> (with respect to Scenery Journey).

---

[25] As described in the supplemented Explanatory Statements provided to the applicable Scheme Creditors on August 16, 2023, the Debtors announced that the Scheme Meetings are intended to be adjourned upon commencement thereof to August 28, 2023.

53.     In accordance with the Convening Orders and, with respect to Evergrande and

Tianji, section 671 of the Hong Kong Companies Ordinance, applicable notices of the Scheme

Meetings, the Schemes, the Explanatory Statements, and applicable solicitation materials were

provided to the applicable Scheme Creditors by Morrow Sodali Limited, in its capacity as the

Debtors' notification and information agent for the Schemes ("Morrow Sodali") and to Blocked

Scheme Creditors (as defined in the applicable Schemes) by GLAS Trustees Limited ("GLAS").

Such documents were provided or made available (a) on the following website maintained by

Morrow Sodali: https://projects.morrowsodali.com/evergrande (the "Morrow Sodali Case

Website"); (b) on Evergrande's website: https://www.evergrande.com; (c) through the Euroclear

Bank SA/NV and Clearstream Banking S.A. clearing systems, as applicable; (d) by causing

Morrow Sodali to send the notices via electronic mail to each Scheme Creditor for whom Morrow

Sodali has contact information or by causing GLAS to send the notice via electronic mail to each

Blocked Scheme Creditor; and (e) through GLAS with respect to the Blocked Scheme Creditors.

Hong Kong Counsel Declaration, ¶ 35; BVI Counsel Declaration, ¶ 44.  In addition, the Scheme

Creditors were notified of the Scheme Meetings through announcements on HKEX and the

Singapore Exchange Securities Trading Limited (the "SGX-ST").   Hong Kong Counsel

Declaration, ¶ 35; BVI Counsel Declaration, ¶ 44.

54.     In these instances, the Foreign Courts authorized and appointed Patrick Cowley

of KPMG Advisory (Hong Kong) Limited as the Scheme Chairperson for the Hong Kong

Schemes and Anna Silver of FFP (BVI) Limited as the Scheme Chairperson for the Scenery

Journey BVI Scheme.  Hong Kong Counsel Declaration, ¶ 34; BVI Counsel Declaration, ¶ 45.

55.     The provisions of the Convening Orders ensured that the applicable Scheme

Creditors were notified properly of the applicable Scheme Meetings.  As noted, pursuant to the

terms of the Convening Orders, in advance of the Scheme Meetings, the Debtors, through Morrow Sodali or GLAS, will provide access to the applicable Explanatory Statements and other documents related to the respective Scheme enumerated in the applicable Convening Order to the beneficial holders of the applicable Scheme Creditors, in addition to notice through the applicable clearing systems, through announcement on the relevant stock exchange, and via electronic mail to each Scheme Creditor for whom Morrow Sodali has contact information, through GLAS, and through announcements made on the HKEX and SGX-ST.  Hong Kong Counsel Declaration, ¶ 35; BVI Counsel Declaration, ¶ 44.

56.    At the Scheme Meetings, votes will be held to determine whether the Scheme Creditors that are present and voting in person or by proxy approve the applicable Scheme by a greater than fifty percent (50% + 1) majority in number representing at least seventy-five percent (75%) in value of the Scheme Creditors present and voting as required under Hong Kong law and BVI law, as applicable.  Hong Kong Counsel Declaration, ¶ 36; BVI Counsel Declaration, ¶ 46.

57.    If the Schemes are approved at the Scheme Meetings, the Debtors, through Morrow Sodali and GLAS, as applicable, will provide notice to the Scheme Creditors, informing them that the applicable Scheme was approved and upcoming Sanction Hearings with respect to the applicable Scheme are scheduled.  The Scheme Creditors will also be informed that they can attend and raise any issues or objections at the Sanction Hearings.  In anticipation of the Sanction Hearings, the Scheme Chairpersons will file reports on the Scheme Meetings.  Hong Kong Counsel Declaration, ¶ 37; BVI Counsel Declaration, ¶ 47.

58.    Assuming that the Foreign Courts deem it appropriate to enter orders sanctioning the applicable Scheme following the Sanction Hearings (with respect to each Scheme, such Scheme's "Sanction Order" and together with the Convening Order, such Scheme's "Foreign

Court Orders"), the Sanction Orders are expected, among other things, to (i) sanction and approve consummation of the applicable Scheme and (ii) authorize the Restructuring set forth in the Schemes. Upon delivery of the sealed Sanction Orders to the Hong Kong Registrar and the BVI Registrar, as applicable, and subject to certain additional conditions, the Schemes will become effective and thereby binding on all applicable Scheme Creditors (with respect to each Scheme, as defined in each Scheme, such Scheme's "Restructuring Effective Date").

59.     A supplemental declaration (respectively, with respect to each Debtor, such Debtor's "Supplemental Declaration") will be filed in advance of the Recognition Hearing providing this Court an update on the outcome of the Scheme Meetings and Sanction Hearings, as applicable.

60.     On August 14, 2023, with respect to the Hong Kong Debtors, and July 17, 2023, with respect to Scenery Journey, each of the Debtors' board of directors and/or sole director, as applicable (each, a "Board", and collectively, the "Boards") approved resolutions, copies of which are attached to the applicable Representative Declarations as Exhibit A (the "Board Resolutions"), appointing the respective Foreign Representatives and authorizing him/her to commence the applicable Chapter 15 Case.

61.    The historical and expected timeline for the Foreign Proceedings and these Chapter 15 Cases is summarized below:

| Entity | Key Events | Date |
|---|---|---|
| **Evergrande Hong Kong Scheme**[26] | Convening Hearing | July 24, 2023 |
| | Convening Order | July 24, 2023 |
| | Scheme Meeting | August 23, 2023 and August 28, 2023 |
| | Sanction Hearing | September 5-6, 2023 |
| **Tianji** | Convening Hearing | July 24, 2023 |
| | Convening Order | July 24, 2023 |
| | Scheme Meeting | August 22, 2023 and August 28, 2023 |
| | Sanction Hearing | September 5-6, 2023 |
| **Scenery Journey** | Convening Hearing | July 24, 2023 |
| | Convening Order | July 24, 2023 |
| | Scheme Meeting | August 22, 2023 and August 28, 2023 |
| | Sanction Hearing | September 4, 2023 |
| **Universal Key Events** | | **Date** |
| Filing of the Chapter 15 Petitions | | August 17, 2023 |
| Proposed Chapter 15 Recognition Hearing | | September 20, 2023 |
| Anticipated Restructuring Effective Date | | October 2, 2023 |

---

[26] See footnote 12 above with respect to the Evergrande Cayman Scheme.  The Evergrande Cayman Scheme Convening Hearing occurred on July 25, 2023.

## BASIS FOR RELIEF REQUESTED

62.     The Foreign Representatives and the Debtors seek to fully implement the terms of the Schemes to effectuate the Restructuring.  To that end, the Schemes and the Foreign Court Orders must be binding and enforceable in the United States, and the Scheme Creditors must be precluded from taking any actions in the United States that may frustrate the Restructuring effectuated by the Foreign Proceedings.  Chapter 15 of the Bankruptcy Code is designed to, *inter alia*, protect and maximize the value of a foreign debtor's assets and to facilitate the rehabilitation of financially distressed businesses.  *See* 11 U.S.C. § 1501.

63.     Consistent with these principles, the Foreign Representatives commenced these Chapter 15 Cases to obtain recognition of the Foreign Proceedings and to give full recognition and enforcement to the Foreign Court Orders and the Schemes.  The Foreign Representatives believe that these Chapter 15 Cases will enable the Debtors to achieve the objectives of the Schemes by (i) ensuring that the parties in interest to the Restructuring, including the Debtors and the Scheme Creditors are treated in the United States consistent with the intentions of the Schemes; (ii) ensuring that the Restructuring is binding, valid, and enforceable in the United States; and (iii) minimizing the risk of litigation over any potential residual claims that might exist under the Existing Debts or ancillary documents related to the Existing Debts.

64.     Section 1517 of the Bankruptcy Code provides clear and objective standards that must be satisfied for recognition.  Unless doing so would be manifestly contrary to United States public policy, an order recognizing a foreign proceeding must be entered if:  (a) the proceeding for which recognition is sought is a foreign proceeding; (b) the foreign proceeding is a foreign main proceeding or foreign nonmain proceeding; (c) recognition is sought by a foreign representative; and (d) the Chapter 15 petition meets the procedural requirements of section 1515 of the

30

Bankruptcy Code. For the reasons set forth below and in the Supporting Documents, the relief sought herein is appropriate under Chapter 15 of the Bankruptcy Code.

## I.    The Debtors Are Eligible for Chapter 15 Relief

65.    To be eligible for Chapter 15 relief, a debtor must meet the general eligibility requirements under section 109(a) of the Bankruptcy Code as well as the more specific eligibility requirements under section 1517(a) of the Bankruptcy Code.   In addition, the petitions for recognition must meet the requirements of section 1515 of the Bankruptcy Code and rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). As demonstrated below, each Debtor meets all such eligibility requirements.

### A.    Each Debtor Meets the General Eligibility Requirements of Section 109(a) of the Bankruptcy Code

66.    Section 103(a) of the Bankruptcy Code provides that chapter 1, which includes section 109(a), "appl[ies] in a case under Chapter 15." 11 U.S.C. § 103(a).   Thus, each Debtor must meet the eligibility requirements of section 109(a) of the Bankruptcy Code to obtain relief under Chapter 15. Section 109(a) of the Bankruptcy Code provides that "[n]otwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title." 11 U.S.C. § 109(a).   Thus, under section 109(a), a foreign debtor must reside or have a domicile, a place of business or property in the United States to be eligible to file a Chapter 15 petition.   *See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238 (2d Cir. 2013).

67.    Section 109(a) of the Bankruptcy Code does not require a specific quantum of property in the United States, nor does it indicate when or for how long such property must have a U.S. situs.   *See, e.g.*, *In re Berau Cap. Res. Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015).

Courts in the Second Circuit have accordingly held that bank accounts or attorney retainers deposited in New York satisfy the "property in the United States" eligibility requirement of section 109(a) of the Bankruptcy Code. *See, e.g., In re Culligan Ltd.*, 2021 Bankr. LEXIS 1783, *23 (finding that "[u]ndrawn attorney retainers satisfy the 'property in the United States' eligibility requirement of section 109(a) of the Bankruptcy Code"); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 700 (Bankr. S.D.N.Y. 2017) (citing a retainer held by New York counsel in a New York account as satisfying section 109(a) of the Bankruptcy Code and establishing venue); *In re U.S. Steel Canada Inc.*, 571 B.R. 600, 610 (Bankr. S.D.N.Y. 2017) ("[C]ourts, including this one, have held that an undrawn retainer in a United States bank account qualifies as property in satisfaction of section 109(a)"); *In re Suntech Power Holdings Co.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) (holding that establishing a deposit account in New York "had the effect of establishing a basis for venue in [the Southern District of New York] under 28 U.S.C. § 1410(1)"); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 373–74 (Bankr. S.D.N.Y. 2014) (finding that the debtor "had property in the United States in the form of a retainer, [which] is sufficient to satisfy the requirements of section 109(a) of the Bankruptcy Code," and that "the Foreign Representatives acted in good faith in transferring the funds to the Client Trust Account" to serve as a retainer).

68.    Additionally, this Court has previously held that a debtor's contract rights, including rights pursuant to debt that contains a New York governing law and forum selection clause, constitute intangible property of the debtor in New York for purposes of section 109(a) of the Bankruptcy Code. *See, e.g., In re Modern Land (China) Co.*, 641 B.R. 768, 793 (holding that a foreign debtor was a "debtor" under section 109(a) of the Bankruptcy Code because of intangible property rights located in New York State); *In re Olinda Star Ltd.*, 614 B.R. 28, 40 (Bankr. S.D.N.Y. 2020) (holding that a foreign debtor was a "debtor" under section 109(a) of the

32

Bankruptcy Code because of intangible contract rights under a New York law governed indenture); *In re Avanti Commc'ns*, 582 B.R. 603, 610–11 (Bankr. S.D.N.Y. 2018) (same); *Berau*, 540 B.R. at 83–84 (same).

69.    Here, each Debtor satisfies the eligibility requirement of section 109(a) because the Debtors have property in the United States, including in this jurisdiction. Specifically, each Debtor has property in the United States in the form of a retainer with the Debtors' U.S. counsel, Sidley Austin LLP, which funds are held in a client trust account in New York, New York. Evergrande Representative Declaration, ¶ 53; Tianji Representative Declaration, ¶ 41; Scenery Journey Representative Declaration, ¶ 42. Additionally, the Debtors hold certain property rights pursuant to the Existing Notes, nearly all of which are governed by New York law. *See* Evergrande Representative Declaration, ¶ 53; Tianji Representative Declaration, ¶ 41; Scenery Journey Representative Declaration, ¶ 42. Accordingly, each Debtor meets the general eligibility requirements of section 109(a) of the Bankruptcy Code.

## B.    Each Debtor Meets Specific Eligibility Requirements of Section 1517(a) of the Bankruptcy Code

70.    Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, "an order recognizing a foreign proceeding shall be entered if […] (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a). Each of these requirements is satisfied for the reasons set forth below.

33

          i.        The Foreign Proceedings are "Foreign Proceedings" Within the Meaning of
                  Section 1502 of the Bankruptcy Code

71.      Courts in this district have previously recognized schemes of arrangement

proceedings and similar proceedings as "foreign proceedings" in Hong Kong, the BVI and in

offshore jurisdictions that have analogous English-law based frameworks similar to Hong Kong

and the BVI. *See, e.g., In re Hidili Industry International Development Ltd.*, No. 22-10736 (DSJ)

(Bankr. S.D.N.Y. 2022) (ECF No. 16) (recognizing Hong Kong scheme of arrangement); *In re

Kaisa Group Holdings Ltd.*, No. 16-11303 (SHL) (Bankr. S.D.N.Y. 2016) (ECF No. 22)

(recognizing Hong Kong scheme of arrangement); *In re Shanghai Huaxin Group (Hongkong)

Limited*, No. 19-11482 (JLG) (Bankr. S.D.N.Y. 2019) (ECF No. 17) (recognizing Hong Kong

provisional liquidation); *In re Three Arrows Capital, Ltd*, No. 22-10920 (MG) (Bankr. S.D.N.Y.

2022) (ECF No. 47) (recognizing BVI liquidation proceeding); *In re RongXingDa Development

(BVI) Limited*, No. 22-10175 (DSJ) (Bank. S.D.N.Y. 2022) (ECF No. 12) (recognizing BVI

scheme of arrangement); *In re Atlas Financial Holdings, Inc.*, No. 22-10260 (LGB) (ECF No. 18)

(recognizing Cayman Islands scheme of arrangement).

72.      Furthermore, the legal structure governing Hong Kong and BVI schemes of

arrangement is similar to that governing schemes of arrangement under the laws of the UK.

*See* Hong Kong Counsel Declaration, ¶ 10; BVI Counsel Declaration, ¶ 20.  Courts have

consistently recognized schemes of arrangement in the United Kingdom as foreign proceedings.

*See, e.g., In re Virgin Atlantic Airways Limited,* 1:20-BK-11804 (Bankr. S.D.N.Y, 2020); *Lecta

Paper UK Limited*, No. 19-13990 (MEW) (Bankr. S.D.N.Y. 2020) (ECF No. 12); *In re EnQuest

PLC*, No. 16-12983 (MEW) (Bankr. S.D.N.Y. 2016) (ECF No. 14); *In re YH Ltd.*, No. 16-12262

(SCC) (Bankr. S.D.N.Y. 2016) (ECF No. 14); *In re OIC Run-Off Ltd. & London & Overseas Ins.

Co. Ltd.*, No. 15-13054 (SCC) (Bankr. S.D.N.Y. 2016) (ECF No. 18); *In re Towergate Fin. Plc*,

No. 15-10509 (SMB) (Bankr. S.D.N.Y. 2015) (ECF No. 16); *In re B. Endeavour Shipping Co. Ltd.*, No. 15-10246 (REG) (Bankr. S.D.N.Y. 2015) (ECF No. 10). More generally, the scheme of arrangement structure is provided for in the legal regimes of a number of different countries, and "U.S. bankruptcy courts have routinely recognized them as 'foreign proceedings.'" David L. Lawton and Shannon B. Wolf, *The Thing About Schemes in the Scheme of Things: Recognition of Schemes of Arrangement under Chapter 15 of the U.S. Bankruptcy Code*, at 1 (INSOL International Technical Series Issue No. 38, March 2018).

73.     Furthermore, the Foreign Proceedings on their face each meet all the elements of the definition of a "foreign proceeding" under the Bankruptcy Code. Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or the adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23). The Foreign Proceedings satisfy each element of this definition because (i) they are proceedings that are (ii) judicial in character, (iii) collective in nature, (iv) in foreign countries, (v) authorized or conducted under laws related to insolvency or the adjustment of debts, (vi) in which the Debtors' assets and affairs are subject to the control or supervision of foreign courts, and (vii) for the purpose of reorganization or liquidation. Each of these elements is addressed separately and in detail below.

*(a)    The Foreign Proceedings are Proceedings*

74.     The hallmark of a "proceeding" is a "statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets" and includes "acts and formalities set down in law so that courts, merchants and creditors can know them in

35

advance, and apply them evenly in practice." *In re Betcorp Ltd.*, 400 B.R. 266, 277–78 (Bankr. D. Nev. 2009).  The Foreign Proceedings are governed by the statutory frameworks set forth in the applicable Foreign Company Acts.  Specifically, as described in more detail in the Counsel Declarations, the applicable Foreign Company Act specifies the acceptable procedures for implementing a Hong Kong scheme or BVI scheme, respectively, including, among other things, commencing the scheme, designating classes of creditors, holding meetings, and voting.  *See* Hong Kong Counsel Declaration, ¶¶ 12-18; BVI Counsel Declaration, ¶¶ 19-21.  The applicable Foreign Company Act, as supplemented by Hong Kong and BVI common law, respectively, and as needed, English common law, also sets forth the standards for approval of Hong Kong schemes or BVI schemes by the applicable Hong Kong Court or BVI Court.  *See* Hong Kong Counsel Declaration, ¶ 17; BVI Counsel Declaration, ¶ 24(e).  Moreover, in this case, the Convening Orders required that the Debtors provide the applicable Scheme Creditors with access to copies of the Explanatory Statements, which provided notice and disclosure regarding the procedures to take place in the applicable Scheme.  *See* Hong Kong Counsel Declaration, ¶ 35; BVI Counsel Declaration, ¶ 31.  The Foreign Proceedings are therefore "proceedings" because the Foreign Company Acts fall within the type of statutory framework described in applicable case law.  *See, e.g.*, *Hidili Industry International Development Ltd.*, No. 22-10736 (DSJ) (Bankr. S.D.N.Y. 2022) (ECF No. 16); *In re RongXingDa Development (BVI) Limited*, No. 22-10175 (DSJ) (Bank. S.D.N.Y. 2022) (ECF No. 12); *Betcorp*, 400 B.R. at 277–78.

> (b)     *The Foreign Proceedings Are Judicial in Character*

75.     The Foreign Proceedings are judicial in nature because there is significant judicial involvement in the Scheme processes.  For example, in *In re Bd. Of Dirs. Of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25, 52 (Bankr. S.D.N.Y. 1999), this Court stated, "there is significant judicial

involvement in this [Bermuda-administered] scheme process[es]." Specifically, the *Hopewell* decision looked to the following elements of the scheme of arrangement process as demonstrating that it was judicial in character:

> There are two mandatory court appearances, the first, on the ex parte summons to convene the class meetings and the second, on the sanctioning of the scheme. […] Both hearings required the court to review the materials submitted and evaluate them. […] With regard to the second hearing,[…] the court plays a significant role in that it must assure itself that the scheme is in the best interests of creditors and members. Lastly, creditors and members had a plethora of opportunities to object to the scheme before it was sanctioned […]

*Id.* at 52.

76.     Here, the Schemes are being administered in a substantially similar manner as described above in *Hopewell* with the Convening Hearings having already taken place and the Sanction Hearings scheduled for September 4 through September 6, 2023. *See* Hong Kong Counsel Declaration, ¶ 33; BVI Counsel Declaration, ¶ 43. The Foreign Courts have significant oversight over the applicable Foreign Proceeding and confirm that all necessary disclosures have been made, all notices were sent as required, the meetings were properly constituted (including that the classes were properly identified), and that other technical and procedural requirements have been satisfied. Further, before the Foreign Courts sanction the applicable Scheme, they will consider whether the terms are such that "an intelligent and honest man, a member of the class concerned and acting in respect of his interest, might reasonably approve." Hong Kong Counsel Declaration, ¶ 19; BVI Counsel Declaration, ¶ 35; *Re Dorman, Long & Company, Limited* [1934] 1 Ch 635. Absent the Foreign Courts' sanction, the Debtors cannot implement the Schemes. Hong Kong Counsel Declaration, ¶ 26; BVI Counsel Declaration, ¶ 25. For the foregoing reasons, the Foreign Proceedings are judicial in nature.

*(c)      The Foreign Proceedings Are Collective in Nature*

77.      A proceeding is "collective" if it considers the rights and obligations of all creditors. *See In re ABC Learning Centres Ltd.*, 445 B.R. 318, 328 (Bankr. D. Del. 2010), *aff'd*,728 F.3d 301 (3d Cir. 2013); *see also In re ENNIA Caribe Holding N.V.*, 594 B.R. 631, 638 (Bankr. S.D.N.Y. 2018).  Here, the Foreign Proceedings are statutory procedures under the laws of either Hong Kong or the BVI that allow the applicable Foreign Court to sanction compromises or arrangements, which have been voted on by the relevant classes of creditors or members and approved by the requisite majorities in collective proceedings.  Hong Kong Counsel Declaration, ¶ 18; BVI Counsel Declaration, ¶ 22.

78.      Furthermore, once the Schemes becomes effective, they will be binding on all applicable Scheme Creditors.  *See* Hong Kong Counsel Declaration, ¶ 18; BVI Counsel Declaration, ¶ 25.  The Scheme Creditors will have the opportunity to attend and vote at the applicable Scheme Meetings, subject to compliance with the applicable procedures specified in the Convening Orders and the Explanatory Statements.  *See* Hong Kong Counsel Declaration, ¶ 17; BVI Counsel Declaration, ¶ 31.  The Foreign Proceedings are therefore collective in nature.

*(d)      The Foreign Proceedings Are Located in  Foreign Countries*

79.      The Foreign Proceedings were commenced before either the Hong Kong Court or the BVI Court.  Following such commencement, the Foreign Courts exercised their authority by, among other things, commencing the respective Convening Hearing and issuing the respective Convening Order.    Therefore, there can be no doubt  that the Foreign Proceedings are located respectively in Hong Kong and the BVI, each of which is a foreign country or territory.

38

        *(e)*       *The Foreign Proceedings Are Authorized or Conducted Under Law
Related to Insolvency or the Adjustment of Debts*

80.    The Foreign Proceedings are authorized and being conducted under the respective

Foreign Company Acts, which are the Hong Kong and BVI laws that govern schemes of

arrangement in Hong Kong and the BVI, respectively.  *See* Hong Kong Counsel Declaration, ¶ 10;

BVI Counsel Declaration, ¶ 20.  More specifically, each Foreign Company Act provides for a wide

range of corporate restructurings by way of court approval, including schemes of arrangement.

*See* Hong Kong Counsel Declaration, ¶ 13; BVI Counsel Declaration ¶ 20.  Further, schemes of

arrangement under each Foreign Company Act, like an English scheme, are flexible mechanisms

that can be used to encompass a large variety of compromises or arrangements between a company

and its creditors.  In particular, a scheme of arrangement is useful in circumstances in which

holdout creditors seek an advantage as against similarly ranked creditors in work-out negotiations

because they enable companies and their creditors in certain instances to obtain court approval to

effect restructuring measures without having to obtain approval from one hundred percent of the

affected creditors.  *See* Hong Kong Counsel Declaration, ¶ 13; BVI Counsel Declaration ¶ 22.  As

noted above, this Court has previously found a Hong Kong scheme of arrangement and a BVI

scheme of arrangement to be authorized or conducted under a law related to insolvency or the

adjustment of debts.  *See, e.g., In re Hidili Industry International Development Ltd.*, No. 22-10736

(DSJ) (Bankr S.D.N.Y. 2022) (ECF No. 16); *In re Kaisa Group Holdings Ltd.*, No. 16-11303

(SHL) (Bankr. S.D.N.Y. 2016) (ECF No. 22); *In re RongXingDa Development (BVI) Limited*, No.

22-10175 (DSJ) (Bank. S.D.N.Y. 2022) (ECF No. 12).  Moreover, courts in this district have also

recognized many similarly structured schemes of arrangement under  the laws of the United

Kingdom.   *See, e.g.*, *Lecta Paper UK Limited*, No. 19-13990 (MEW) (Bankr. S.D.N.Y. 2020)

(ECF No. 12); *Avanti*, 582 B.R. at 619; *EnQuest*, No. 16-12983 (MEW) (ECF No. 14); *YH Ltd.*,

No. 16-12262 (SCC) (ECF No. 14); *OIC Run-Off Ltd.*, No. 15-13054 (SCC) (ECF No. 18); *Towergate Fin.*, No. 15-10509 (SMB) (ECF No. 16); *Endeavour Shipping*, No. 15-10246 (REG) (ECF No. 10).

> (f)    *Under the Foreign Proceedings, the Debtors' Assets and Affairs Are Subject to the Control or Supervision of Foreign Courts*

81.    "[T]he requirement that the debtor's assets be subject to the control and supervision of a foreign court does not require that the foreign proceedings play out entirely in a judicial context like cases under the Bankruptcy Code.  The ability of a party to ask for court assistance concerning the proceeding is sufficient to satisfy this element." 8 Collier on Bankruptcy, ¶ 1501.03 (16th ed. 2021); *see also In re ENNIA Caribe Holding N.V.*, 594 B.R. 631, 640 (Bankr. S.D.N.Y. 2018) (finding a proceeding subject to supervision of a foreign court where the court's approval was required to initiate or terminate the proceeding, modify certain debtor contracts and compensate estate professionals).   Here, the Foreign Courts play multiple supervisory roles in the applicable Foreign Proceeding.  Specifically, the Foreign Courts possess the authority to sanction (or decline to sanction) the applicable Scheme following the Sanction Hearing, and thereby determine whether or not the applicable Debtor will obtain the relief sought.  *See* Hong Kong Counsel Declaration, ¶ 26; BVI Counsel Declaration ¶ 37.  In addition, Scheme Creditors and others may have the opportunity to seek the assistance of the Foreign Courts by raising objections at the applicable Sanction Hearing.  *See* Hong Kong Counsel Declaration, ¶ 25; BVI Counsel Declaration ¶ 36.  Moreover, the Schemes provide that the applicable Foreign Court may have exclusive jurisdiction to hear and determine any dispute arising in connection with the administration of the applicable Scheme, its terms or their implementation, or out of any action taken or omitted to be taken thereunder.  *See* Hong Kong Counsel Declaration, ¶ 30; BVI

40

Counsel Declaration ¶ 39.  The Schemes are therefore subject to the control or supervision of foreign courts.

> (g)     *The Foreign Proceedings Are for the Purpose of Reorganization or Liquidation of the Debtors*

82.     As described more fully in the Representative Declarations, the purpose of the Schemes and Foreign Proceedings is the restructuring of the Existing Debts.  Evergrande Representative Declaration, ¶ 58; Tianji Representative Declaration, ¶ 46; Scenery Journey Representative Declaration, ¶ 47.  Specifically, the Scheme Creditors will release the Debtors and the applicable Subsidiary Guarantors, among others, from their respective obligations and liabilities under or in connection with the Existing Debts and will receive the applicable Scheme Consideration.  Evergrande Representative Declaration, ¶ 58; Tianji Representative Declaration, ¶ 46; Scenery Journey Representative Declaration, ¶ 47.  Additionally, the Debtors will issue the New Instruments pursuant to the Schemes.  Evergrande Representative Declaration, ¶ 31; Tianji Representative Declaration, ¶ 20; Scenery Journey Representative Declaration, ¶ 21.

> ii.     <u>The Foreign Proceedings Are "Foreign Main Proceedings"</u>

83.     Under section 1502(4) of the Bankruptcy Code, the term "foreign main proceeding" means "a foreign proceeding pending in the country where the debtor has the center of its main interests" ("<u>COMI</u>").  *See, e.g.*, *In re Modern Land (China) Co.*, 641 B.R. at 781 (recognizing foreign main proceeding); *Ocean Rig*, 570 B.R. at 702 (same); *Suntech*, 520 B.R. at 416–17 (same); *In re Fairfield Sentry Ltd.*, 714 F.3d 127 (2d Cir. 2013) (affirming recognition of foreign main proceeding).

84.     While section 1516 of the Bankruptcy Code creates a presumption that a debtor's registered office is its COMI, the presumption may be rebutted by contrary evidence.  *See* 11 U.S.C. § 1516(c); *see also In re Bear Stearns High-Grade Structured Credit Strategies*

*Master Fund, Ltd.*, 389 B.R. 325, 335 (S.D.N.Y. 2008) (finding that section 1516(c) of the Bankruptcy Code "creates no more than a rebuttable evidentiary presumption, which may be rebutted notwithstanding a lack of party opposition").

85.    Courts consider a variety of factors when assessing COMI including, "the location of the debtor's headquarters; the location of those who actually manage the debtor […] the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes." *In re Modern Land (China) Co.*, 641 B.R. at 782 (Bankr. S.D.N.Y. 2022) (quoting *In re SphinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)). The *Modern Land* court further noted that "consideration of these specific factors is neither required nor dispositive." *Id.* In *SphinX*, this Court explained that these factors should not be applied "mechanically" and "[i]nstead, they should be viewed in light of Chapter 15's emphasis on protecting the reasonable interests of parties in interest pursuant to fair procedures and the maximization of the debtor's value." *In re SphinX, Ltd.*, 351 B.R. at 117. The Second Circuit has underscored the importance of criteria that are both objective and ascertainable to third parties to determine a debtor's COMI. *See Fairfield Sentry*, 714 F.3d at 137. Whether a third party could objectively ascertain a debtor's COMI may be determined "by examining factors 'in the public domain.'" *Id.*, at 137. Critically, moreover, the *SphinX* court also provided that "because their money is ultimately at stake, one generally should defer […] to the creditors' acquiescence in or support of a proposed COMI." *Id.*

(a)    *The Evergrande Hong Kong Proceeding is a "Foreign Main Proceeding"*

86.    The Evergrande Hong Kong Proceeding is a "foreign main proceeding" with respect to Evergrande, for the reasons set forth below. Although Evergrande is incorporated in the Cayman Islands, the facts herein rebut the presumption of COMI in the Cayman Islands.

42

(1)    Location of Evergrande's Headquarters

87.    Evergrande does not conduct business in the Cayman Islands. Evergrande Representative Declaration, ¶ 60(a).  In fact, Evergrande is registered as an exempted company with limited liability in the Cayman Islands and registered on the Hong Kong registrar, as is required for all companies with an established place of business in Hong Kong. *Id.*, ¶ 60(a). Pursuant to section 174 of the Cayman Companies Law, "[a]n exempted company shall not trade in the Islands with any person, firm or corporation except in furtherance of the business of the exempted company carried on outside the Islands."  Cayman Companies Law § 174.  Evergrande has a principal place of business in Hong Kong, where it is listed, and has been listed since November 5, 2009, on the Main Board of the HKEX, and where Evergrande's last shareholder meeting occurred on June 11, 2021. *Id.* ¶ 60(b).

88.    Therefore, Evergrande can rebut the presumption with respect to this factor.

(2)    Location of Those Who Manage Evergrande

89.    When determining the "location of those who actually manage the debtor," courts apply a flexible analysis of where a debtor is managed. *See In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 273 (Bankr. S.D.N.Y. 2019) (finding that location of management analysis should be "flexible" and reflect the realities of a particular business). Evergrande has certain directors and employees based in Hong Kong, who currently focus on the restructuring of the Group's offshore debts.  Evergrande Representative Declaration, ¶ 60(b).  The Evergrande Board authorized the retention of Evergrande's advisors, including its Hong Kong legal counsel and financial advisors, and was involved in the negotiation of the various documents involved in the restructuring and the Evergrande Hong Kong Scheme. *Id.*, ¶ 60(b).

43

90.     As a holding company, Evergrande had few or no operational activities outside of Hong Kong after restructuring activities began. The advisors to Evergrande each have Hong Kong offices and were led by Hong Kong situated personnel.  Meetings were held in Hong Kong or virtually with significant participation by Hong Kong parties.  Where, as here, a debtor's activities as of the Chapter 15 petition date include restructuring activities and administrative functions, the Second Circuit has directed that those activities should be considered in the COMI analysis.  *See Fairfield Sentry*, 714 F.3d at 137.

91.     Therefore, Evergrande meets this second *Modern Land* factor.

(3)     Location of Evergrande's Primary Assets

92.     Evergrande has no material operations and derives its income exclusively from dividend payments by its subsidiaries in order to service its offshore debts (including the Evergrande Class A Debts and Evergrande Class C Debts).  *Id*., ¶ 60(b).  On a stand-alone basis, Evergrande's books and records are located in Hong Kong. *Id*., ¶ 60(b).

93.     Therefore, this factor is either neutral or in favor of a determination that Evergrande's COMI is in Hong Kong.

(4)     Location of the Majority of Evergrande's Creditors

94.     The determination that Evergrande's COMI is in Hong Kong is also consistent with the expectations of Evergrande's creditors and other interested parties.  For example, the offering memoranda of the January 2024 Notes provided a Hong Kong address for notices and demands to Evergrande, stated that (i) Evergrande will maintain its financial statements in accordance with Hong Kong accounting principles, (ii) noted that Evergrande is listed on the HKEX and such listing shows Hong Kong as the location of Evergrande's main office and refers to the HKEX for interpretation of certain terms, (iii) noted that Evergrande's legal advisors are a Hong Kong-based

44

law firm, (iv) noted that Evergrande is ultimately controlled by a Hong Kong permanent resident, (v) provided that copies of the applicable governing indentures will be available for inspection in Hong Kong, and (vi) informed creditors that Evergrande's auditor is a Hong Kong accounting firm. Evergrande Representative Declaration, ¶ 60(c).

95.     And, the Evergrande RSAs specifically disclosed the possibility of the commencement of a Hong Kong scheme of arrangement by Evergrande. Further, six of the Evergrande Ad Hoc Group's sixteen members are based in Hong Kong and the ad-hoc group's advisors Hong Kong-based or led. *Id*. ¶ 60(b). Moreover, holders of approximately eighty-seven percent (87%) and forty percent (40%) of the respective Evergrande Existing Debts expressly agreed to support a Hong Kong restructuring pursuant to the Evergrande RSAs. *Id.*, ¶ 60(c). No Scheme Creditor has to date raised issues about the propriety of Hong Kong as the COMI of Evergrande or about any actions of management in proffering a Hong Kong COMI and establishment in Hong Kong. *Id.*, ¶ 60(c).

96.     Furthermore, there are several proceedings against Evergrande in Hong Kong including (i) an outstanding winding-up petition filed against Evergrande in Hong Kong by Top Shine Global Limited; (ii) an arbitration filed in August 2022 against, *inter alia*, Evergrande claiming payment of HK$862.5 million by an investor of certain investments; and (iii) an arbitration filed in October 2022 against, *inter alia*, Evergrande claiming payment of RMB 127.7 million by another investor of certain investments, demonstrating that creditors expect Evergrande to be subject to the Hong Kong Court's jurisdiction. *Id*., ¶ 60(b).

97.     And, the Scheme Meetings for the Evergrande Hong Kong Scheme will take place in Hong Kong, and the Hong Kong Court is overseeing the Evergrande Hong Kong Scheme, including by conducting the Convening Hearing and the Sanction Hearing. *Id*., ¶ 60(b).

98.     Accordingly, Hong Kong would be reasonably ascertainable by the Scheme
Creditors as Evergrande's COMI.  Further, this Court should consider "defer[ing] […] to the
creditors' acquiescence in or support of" Evergrande's COMI being located in Hong Kong.
*SphinX*, 351 B.R. at 117.

(5)     The Jurisdiction Whose Law Would Apply to Most
        Disputes

99.     As noted above, Evergrande maintains a principal place of business in Hong Kong.
Furthermore, because Evergrande's shares are listed on the HKEX, Evergrande must submit to the
jurisdiction of the Hong Kong Securities and Futures Commission.  The Evergrande RSAs are
governed by Hong Kong law.  Moreover, as further noted above, a winding-up petition was filed
against Evergrande in Hong Kong, which Evergrande is required to address, the Scheme Meetings
for the Evergrande Hong Kong Scheme will take place in Hong Kong, and the Hong Kong Court
is overseeing the Evergrande Hong Kong Scheme by conducting the Convening Hearing and the
Sanction Hearing in Hong Kong.

100.    Therefore, many, if not most, disputes with Evergrande will have a nexus to Hong
Kong.

* * *

101.    Consequently, the presumption that Evergrande's COMI is the location of its
registered office is rebutted by contrary evidence, and Evergrande's COMI is located in Hong
Kong.  This Court and others have similarly found the COMI presumption rebutted for non-Hong
Kong incorporated companies with Hong Kong scheme proceedings.  *See, e.g., In re Kaisa Group
Holdings Ltd.*, No. 16-11303 (SHL) (Bankr. S.D.N.Y. 2016) (ECF No. 15) (granting recognition
of a Hong Kong proceeding concerning a company incorporated in the Cayman Islands as a foreign
main proceeding); *see also In re Dingway Investment Limited*, No. 22-10648-BKC-LMI (Bankr.

46

S.D. Fla. 2022) (ECF No. 14) (granting recognition of a Hong Kong proceeding concerning a company incorporated in the BVI as a foreign main proceeding).

102.    Accordingly, because Evergrande's COMI is located in Hong Kong, the Evergrande Hong Kong Proceeding is a "foreign main proceeding" and the first element of section 1517(a) of the Bankruptcy Code is satisfied with respect to the Evergrande Hong Kong Proceeding.

*(b)    The Tianji Hong Kong Proceeding is a "Foreign Main Proceeding"*

103.    The Tianji Hong Kong Proceeding is a "foreign main proceeding" with respect to Evergrande, for the reasons set forth below.

(1)    Location of Tianji's Headquarters

104.    Tianji's registered office is located in Hong Kong, creating a presumption that the Hong Kong is the COMI for Tianji. *See* Tianji Representative Declaration, ¶ 48. Additional factors relevant to the Court's assessment also support that Hong Kong is the COMI of Tianji.

(2)    Location of Those Who Manage Tianji

105.    Tianji's current sole director is located in Hong Kong and has signed written board resolutions in Hong Kong. *Id.*, ¶ 48(a). Further, Tianji is a Hong Kong tax resident with most of its administrative functions conducted in Hong Kong. *Id.*, ¶ 48(a). Additionally, from September 2021 (marking the appointment of financial and legal advisers for the restructuring), restructuring negotiations became Tianji's dominant activity. *Id.*, ¶ 48(b). As a holding company, Tianji had few or no operational activities outside of Hong Kong after restructuring activities began. *Id.*, ¶ 48(b). The legal counsel and financial advisors to Tianji each have Hong Kong offices and were led by Hong Kong-situated personnel. *Id.*, ¶ 48(b). Meetings were held in Hong Kong or virtually with significant participation by Hong Kong parties, including the Ad Hoc Group with respect to

the Tianji Existing Debts, which comprises of 22 members, seven of which are based in Hong Kong. *Id.*, ¶ 48(b).

106.   Therefore, this factor weighs in favor of the Hong Kong COMI.

### (3)   Location of Tianji's Primary Assets

107.   As a holding company, Tianji's primary assets are its subsidiaries and, in turn, their assets. Several of the subsidiaries owned by Tianji hold interests in real property in Hong Kong. *Id.*, ¶ 48(a). Tianji also has bank accounts in Hong Kong, which it uses to pay its creditors and service providers. *Id.*, ¶ 48(a).

108.   This factor is therefore in favor of COMI in Hong Kong or neutral. Further, as set forth above, no one factor is dispositive. *See In re Modern Land (China) Co*., 641 B.R. at 782.

### (4)   Location of the Majority of Tianji's Creditors

109.   Moreover, when Tianji guaranteed the Existing Debts, its advisors were based in Hong Kong. *Id.*, ¶ 48(a). Further, the Tianji RSA specifically disclosed the possibility of the commencement of a Hong Kong scheme of arrangement by Tianji. *Id.*, ¶ 48(c). Moreover, holders of approximately seventy-two percent (72%) of the Tianji Existing Debts expressly agreed to support a Hong Kong restructuring pursuant to the Tianji RSA. *Id.*, ¶ 48(c). No Scheme Creditor to date has raised issues about the propriety of Hong Kong as the COMI of Tianji or about any actions of management in proffering a Hong Kong COMI and establishment in Hong Kong. *Id.*, ¶ 48(c).

110.   Therefore, this Court should consider "defer[ing] […] to the creditors' acquiescence in or support of" Tinaji's COMI being located in Hong Kong. *SphinX*, 351 B.R. at 117.

(5)   <u>The Jurisdiction Whose Law Would Apply to Most
Disputes</u>

111.   As noted above, Tianji is incorporated in Hong Kong and maintains its registered office in Hong Kong, its sole director is located in Hong Kong and has signed board resolutions in Hong Kong, it is a Hong Kong tax resident and maintains most of its administrative functions in Hong Kong, it maintains bank accounts in Hong Kong, and conducts few or no operational activities outside of Hong Kong.  As further noted above, the Tianji RSA is governed by Hong Kong law and is being implemented through the Tianji Hong Kong Proceeding that is before the Hong Kong Court.

112.   Therefore, many, if not most, disputes with Tianji will have a nexus to Hong Kong.

\* \* \*

113.   Consequently, the presumption that Tianji's COMI is the location of its registered office in Hong Kong is further supported by the additional factors cited above.  Accordingly, because Tianji's COMI is located in Hong Kong, the Tianji Hong Kong Proceeding is a "foreign main proceeding" and the first element of section 1517(a) of the Bankruptcy Code with respect to the Tianji Hong Kong Proceeding is satisfied.

(c)   *The Scenery Journey BVI Proceeding is a "Foreign Main Proceeding*

114.   The Scenery Journey BVI Proceeding is a "foreign main proceeding" with respect to Scenery Journey, for the reasons set forth below.

(1)   <u>Location of Scenery Journey's Headquarters</u>

115.   Scenery Journey's registered office is located in the BVI, creating a presumption that the BVI is the COMI for Scenery Journey.  *See* Scenery Journey Representative Declaration,

¶ 49.  Additional factors relevant to the Court's assessment also support BVI as the COMI of Scenery Journey.

(2)    <u>Location of Those Who Manage Scenery Journey</u>

116.    As described above, Scenery Journey was incorporated solely for the purpose of issuing the Scenery Journey Existing Notes and does not conduct any business of its own, other than the Restructuring.  In June 2023, Scenery Journey engaged FFP (BVI) Limited ("<u>FFP</u>"), a BVI company, to assist in the Restructuring, which has become Scenery Journey's dominant business activity.  Scenery Journey Representative Declaration, ¶ 49(a).  Scenery Journey's primary legal advisors with respect to the Scenery Journey BVI Scheme are located in BVI. Scenery Journey licensed office space from FFP for use in connection with the Restructuring, and such office space is recorded as Scenery Journey's principal place of business.  Scenery Journey Representative Declaration, ¶ 49(a).  The Scenery Journey Foreign Representative, an employee of FFP, was specifically designated to act as Scenery Journey's Scheme Supervisor and foreign representative in connection with the Scenery Journey BVI Scheme and is based in the BVI. Scenery Journey Representative Declaration, ¶ 49(a).  FFP also acts as one of Scenery Journey's information agents, in addition to Morrow Sodali.  Scenery Journey Representative Declaration, ¶ 49(a).  Therefore, this factor supports that Scenery Journey's COMI is in the BVI.

(3)    <u>Location of Scenery Journey's Primary Assets</u>

117.    As noted above, Scenery Journey was incorporated solely for the purpose of issuing the Scenery Journey Existing Notes and does not conduct any business of its own, other than the Restructuring.  Scenery Journey engaged with FFP to facilitate the Restructuring and licensed office space in the BVI from FFP.   This factor is therefore in favor of COMI in BVI or neutral.

50

(4)    Location of the Majority of Scenery Journey's
Creditors

118.    Although a majority of Scenery Journey's creditors are not located in the BVI, and

this factor is thus not met, no one factor is dispositive.  *See In re Modern Land (China) Co*., 641

B.R. at 782.

119.    However, the determination that Scenery Journey's COMI is in the BVI is

consistent with the expectations of Scenery Journey's creditors and other interested parties.  The

documentation with respect to the Scenery Journey Existing Notes clearly identified the Scenery

Journey as a BVI company. Scenery Journey Representative Declaration, ¶ 49(b).  The Scenery

Journey RSA specifically disclosed the possibility of the commencement of a BVI scheme of

arrangement by Scenery Journey. *Id.* ¶ 49(b). Therefore, the purchasers/holders of the Scenery

Journey Existing Notes (here, the applicable Scheme Creditors) should have reasonably

anticipated that restructuring activities on behalf of Scenery Journey would take place in the BVI.

*Id.* ¶ 49(b).  Moreover, holders of approximately ninety-seven percent (97%) of the Scenery

Journey Existing Notes expressly agreed to support a BVI restructuring pursuant to the Scenery

Journey RSA.  Scenery Journey Representative Declaration, ¶ 49(c).  No Scheme Creditor has to

date raised issues about the propriety of the BVI as the COMI of Scenery Journey or about any

actions of management in proffering a BVI COMI and establishment in the BVI.  Scenery Journey

Representative Declaration, ¶ 49(c).  This Court should therefore consider "defer[ing] […] to the

creditors' acquiescence in or support of" Scenery Journey's COMI being located in the BVI.

*SphinX*, 351 B.R. at 117.

(5)     <u>The Jurisdiction Whose Law Would Apply to Most
Disputes</u>

120.    As noted above, Scenery Journey is incorporated in the BVI and maintains its

registered office in the BVI, its Scheme Supervisor and foreign representative is based in BVI, its

information agent FFP is based in BVI, and the Scenery Journey RSA is currently being

implemented through the Scenery Journey BVI Proceeding that is before the BVI Court.

121.    Therefore, many, if not most, disputes with Scenery Journey will have a nexus to

BVI.

* * *

122.    Consequently, the presumption that Scenery Journey's COMI is the location of its

registered office in the BVI is further supported by the additional factors cited above.  Accordingly,

because Scenery Journey's COMI is located in the BVI, the Scenery Journey BVI Proceeding is a

"foreign main proceeding" and the first element of section 1517(a) of the Bankruptcy Code with

respect to the Scenery Journey BVI Proceeding is satisfied.

iii.    <u>In the Alternative, the Court Should Find that the Hong Kong Proceedings
Are "Foreign Nonmain Proceedings"</u>

123.    While the Hong Kong Proceedings clearly satisfy the statutory requirement for

foreign main proceedings, out of an abundance of caution, the Hong Kong Foreign Representative

seeks, in the alternative, recognition of the Hong Kong Proceedings as foreign nonmain

proceedings.  Courts recognize a foreign proceeding as a "foreign nonmain proceeding" if "the

debtor has an establishment within the meaning of section 1502 in the foreign country where the

proceeding is pending."  11 U.S.C. § 1517(b)(2).  Section 1502(2) defines "[e]stablishment" as

"any place of operations where the debtor carries out a nontransitory economic activity."

*In re Modern Land (China) Co.*, 641 B.R. at 772; *see also In re Millennium Glob. Emerging Credit*

*Master Fund Ltd.*, 458 B.R. 63, 70 (Bankr. S.D.N.Y. 2011), *aff'd* 474 B.R. 88 (S.D.N.Y. 2012) ("Millennium Glob. I").   Additionally, courts have required proof of more than a "mail-drop presence." *Serviços de Petróleo*, 600 B.R. at 277 (citation omitted); 11 U.S.C. § 1502(2).   At least one court—noting the "paucity of U.S. authority" on the subject—has favorably cited a "persuasive" English law holding that the presence  of  an  asset  and minimal management or organization can create a debtor establishment.  *See Millennium Glob. I*, 458 B.R. at 84–85 (citing *Shierson v. Vlieland-Boddy*, [2005] EWCA Civ. 974, [2005] W.L.R. 3966 (2005)).   However, courts require "additional connections" than that of maintaining a registered office or administering annual filings and payment of annual fees in the jurisdiction of the proceeding. *In re Modern Land (China) Co*., 641 B.R. at 786.

124.    As with COMI, whether the debtor has an "establishment" in a country is determined at the time of filing the Chapter 15 petition.  *See Beveridge v. Vidunas (In re O'Reilly)*, 598 B.R. 784, 803 (Bankr. W.D. Pa. 2019) (adopting *Fairfield Sentry* findings that "the presumptive date from which [a c]ourt is to ascertain [a] debtor's center of main interests and/or establishment is the date the Chapter 15 petition was filed").   Several factors "contribute to identifying an establishment:  the economic impact of the  debtor's operations on the market, the maintenance of a 'minimum level of organization' for a period of time, and the objective appearance to creditors whether the debtor has a local presence."  *Millennium Glob. I*, 458 B.R. at 32.  Showing impact of the debtor's activities on the foreign jurisdiction involves a "showing of a local effect on the marketplace."  *In re Creative Fin., Ltd.*, 543 B.R. 498, 520 (Bankr. S.D.N.Y. 2016).  A debtor must show "more than mere incorporation and record-keeping and more than just the maintenance of property" to meet the standard of "engag[ing]the local economy". *In re Modern Land (China) Co*., 641 B.R. at 786.  This is evidenced by, among other things,

engagement of "local counsel and commitment of capital to local banks."    *Millennium Glob. I*, 458 B.R. at 86–67.

> (a)    *The Court Can Find that the CEG Proceeding is a "Foreign Non-Main Proceeding"*

125.    In this case, Hong Kong is not merely a letterbox jurisdiction for Evergrande.  As set forth above, Evergrande maintains a principal place of business in Hong Kong.  Evergrande has certain directors and employees based in Hong Kong who currently focus on the restructuring of the Group's offshore debts, and has advisors in Hong Kong who are involved in the restructuring.  Evergrande's shares are listed in Hong Kong on the Main Board of the HKEX, Evergrande files annual returns with the Hong Kong Companies Registry, and on a stand-alone basis its books and records are located in Hong Kong.

126.    These facts are sufficient to, at a minimum, support the finding of an "establishment" in Hong Kong.  S*ee, e.g.*, *Servicos de Petroleo* 600 B.R. at 278, 281–82 (finding that certain debtor subsidiaries  had substantial and non-transitory ties to Brazil, which was sufficient to create an establishment in Brazil for a Luxembourg-based parent), *see also In re Hidili Industry International Development Ltd.*, No. 22-10736 (DSJ) (Bankr. .S.D.N.Y. 2022) (ECF No. 16) (finding that a Cayman incorporated company had an establishment in Hong Kong).

> (b)    *The Court Can Find that the TJ Proceeding is a "Foreign Non-Main Proceeding"*

127.    Similar to Evergrande, Tianji's business activities are sufficient to have "establishment" in Hong Kong.  As set forth above, Tianji's main activity since 2021 has been restructuring negotiations which are centralized in Hong Kong, its sole director is in Hong Kong, its administrative functions are mostly in Hong Kong, and it has bank accounts in Hong Kong.

128.    In light of the foregoing, Tianji has, at the very least, a local place of business in Hong Kong sufficient to meet the conditions for "establishment" within the meaning of section 1502(2) of the Bankruptcy Code.

* * *

129.    Denying recognition of the Foreign Proceedings as either foreign main or nonmain proceedings, as applicable, would severely hamper the Debtors' restructuring efforts and impede implementation of the Schemes.  Such a result would be at odds with the purpose of Chapter 15 of the Bankruptcy Code—to engender cooperation among foreign courts with respect to restructuring and insolvency proceedings.  *See Millennium Glob. I*, 458 B.R. at 69, 81–82.

iv.    <u>The Chapter 15 Cases Have Been Commenced by Duly Authorized Foreign Representatives</u>

130.    The Foreign Representatives are duly authorized to serve in their capacities as foreign representatives in these Chapter 15 Cases and, as such, satisfy the second condition for entry of an order recognizing such proceeding under section 1517(a) of the Bankruptcy Code.  The term "foreign representative" is defined under section 101(24) of the Bankruptcy Code as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."

131.    The definition of foreign representative does not require that the individual be appointed by a foreign court or other judicial body.  *See, e.g., In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1047 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 1862 (2013); *In re Cell C*, 571 B.R. at 550; *In re OAS S.A.*, 533 B.R. 83, 94-95 (Bankr. S.D.N.Y. 2015).  Instead, courts have recognized that it is sufficient that the foreign representative be authorized to act "in the context" of a foreign bankruptcy proceeding, such as by resolution of the debtor's board of directors authorizing the

representative to commence foreign bankruptcy proceedings on the debtor's behalf.  *See, e.g.,
In re Vitro*, 701 F.3d at 1047, 1049 (affirming recognition of foreign representatives appointed by
boards of directors); *In re Cell C*, 571 B.R. at 553 (listing several cases recognizing that a board
of directors may authorize a person to act as the debtor's foreign representative in a Chapter 15
proceeding); *In re Winsway*, No. 16-10833 (MG) (Bankr. S.D.N.Y. 2016) (ECF No. 13)
(recognizing a foreign representative appointed by the board of directors as a duly appointed
foreign representative of a Hong Kong scheme of arrangement).

132.    Additionally, bankruptcy courts may presume that the person petitioning for
Chapter 15 recognition is a foreign representative if the decision or certificate from the foreign
court so indicates.  *See* 11 U.S.C. § 1516(a); *Ocean Rig*, 570 B.R. at 700; *In re SphinX, Ltd.*, 351
B.R. 103, 116–17 (Bankr. S.D.N.Y. 2006), *aff'd sub nom. Krys v. Official Comm. Of Unsecured
Creditors of Refco Inc. (In re SphinX Ltd.)*, 371 B.R. 10 (S.D.N.Y. 2007) (holding that
section 101(24) of Bankruptcy Code was satisfied where foreign representatives submitted a "copy
of [a Cayman court's] order appointing them to administer the [d]ebtors' winding up under
[Cayman law] and authorizing their commencement of these Chapter 15 cases").

133.    Here, the Boards passed the respective Board Resolutions on August 14, 2023, with
respect to the Hong Kong Debtors, and on July 17, 2023, with respect to Scenery Journey,
authorizing (i) with respect to Evergrande, the Evergrande Foreign Representative to act as foreign
representative of the Evergrande Hong Kong Proceeding; (ii) with respect to Tianji, the Tianji
Foreign Representative to act as foreign representative of the Tianji Hong Kong Proceeding; and
(iii) with respect to Scenery Journey, the Scenery Journey Foreign Representative to act as foreign
representative of the Scenery Journey BVI Proceeding.    Evergrande Representative
Declaration, ¶ 4; Tianji Representative Declaration, ¶ 4 and Scenery Journey Declaration ¶ 4.  This

Court has previously acknowledged that persons authorized by foreign courts to serve as foreign representatives under U.S. bankruptcy proceedings, and/or persons authorized to serve as a foreign representative through a resolution passed by the debtor's board of directors, constitute "foreign representatives" under the Bankruptcy Code. *See, e.g.*, *In re Hidili Industry International Development Ltd.*, No. 22-10736 (DSJ) (Bankr. S.D.N.Y. 2022) (ECF No. 16) (holding that a "duly authorized representative" pursuant to a written resolution in a Hong Kong proceeding was a "foreign representative" under the Bankruptcy Code); *Ocean Rig*, 570 B.R. at 701 (holding that "duly authorized representative[s] of the [Foreign Debtors]" in a Cayman proceeding were "foreign representatives" under the Bankruptcy Code); *Olinda Star Ltd.*, 614 B.R. at 40 (finding that a legal person authorized by a Cayman Court to serve as scheme administrator and foreign representative was a "foreign representative" under the Bankruptcy Code); *Avanti*, 582 B.R. at 614–15 (providing that an individual authorized as a foreign representative by the debtor's board of directors and the debtor's UK proceeding was a "foreign representative" under the Bankruptcy Code); *In re Winsway*, No. 16-10833 (MG) (Bankr. S.D.N.Y. 2016) (ECF No. 13) (recognizing a foreign representative appointed by the board of directors as a duly appointed foreign representative of a Hong Kong scheme of arrangement). Accordingly, the Foreign Representatives are proper "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code.

### C. The Petitions for Recognition Meet the Requirements of Section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4)

134. These Chapter 15 Cases were duly and properly commenced as required by section 1504 of the Bankruptcy Code by each Debtor's filing of a petition for recognition pursuant to section 1515(a) of the Bankruptcy Code. Moreover, pursuant to section 1515(b) of the Bankruptcy Code, a petition for recognition must be accompanied by one of the following:

(1)    a certified copy of the decision commencing such foreign proceeding and
       appointing the foreign representative;

(2)    a certificate from the foreign court affirming the existence of such foreign
       proceeding and of the appointment of the foreign representative; or

(3)    in the absence of evidence referred to in paragraphs (1) and (2), any other
       evidence acceptable to the court of the existence of such foreign proceeding
       and of the appointment of the foreign representative.

11 U.S.C. § 1515(b).

135.   Copies of the Board Resolutions authorizing commencement of these Chapter 15

Cases are attached to the respective Representative Declaration as Exhibit A.

136.   Each filed petition for recognition was accompanied by all fees, documents, and

information required by the Bankruptcy Code and the Bankruptcy Rules, including (i) a corporate

ownership statement containing the information required by Bankruptcy Rule 7007.1 for each

Debtor; (ii) a list containing (a) the names and addresses of all persons or bodies authorized to

administer foreign proceedings of the applicable Debtor, (b) all parties to litigation pending in the

United States in which the applicable Debtor is a party at the time of the filing of these Chapter 15

Cases, and (c) all entities against whom provisional relief is being sought under section 1519 of

the Bankruptcy Code; (iii) a statement identifying all foreign proceedings with respect to the

applicable Debtor that are known to the applicable Foreign Representative; and (iv) a certified

copy of the applicable Convening Order.  *See* Supporting Documents, filed contemporaneously

herewith.

137.   Having filed the above-referenced documents and because the Court is entitled to

presume the authenticity of such documents filed in connection with the petition for recognition

under section 1516(b) of the Bankruptcy Code, the requirements of section 1515 of the

Bankruptcy Code and Bankruptcy Rule 1007(a)(4) have been met and these Chapter 15 Cases were

properly commenced.    *See* 11 U.S.C. §§ 1504, 1509(a), 1515; Bankruptcy Rule 1007(a)(4).

138.    As demonstrated above, each Debtor also meets both the general eligibility

requirements of section 109(a) of the Bankruptcy Code and the specific eligibility requirements

of section 1517(a) of the Bankruptcy Code.    Therefore, the Debtors are eligible for Chapter 15

relief.

## II.    Enforcement of the Sanction Orders and Schemes and Related Discretionary Relief Pursuant to Section 1521 Is Proper

139.    The Foreign Representatives respectfully request that the Court provide for

enforcement in the United States of the Schemes and the Foreign Court Orders, including

provisions therein approving the Schemes and the Restructuring, pursuant to section 1521(a) of

the Bankruptcy Code.

140.    Upon recognition of a foreign proceeding as a foreign main proceeding, certain

provisions of the Bankruptcy Code are made applicable automatically to a Chapter 15 case as a

matter of right pursuant to section 1520 of the Bankruptcy Code.    In addition to these

protections, a foreign representative may request additional "appropriate relief" pursuant to

section 1521(a) of the Bankruptcy Code, including "any additional relief that may be available to

a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a) [of the

Bankruptcy Code]."    11 U.S.C. § 1521(a)(7).    Section 1521(a) of the Bankruptcy Code authorizes

the Court to grant "any appropriate relief" to a foreign representative "where necessary to

effectuate the purpose of [Chapter 15] and to protect the assets of the debtor or the interests of the

creditors," provided that the interests of creditors and other interested entities are sufficiently

protected.    11 U.S.C. §§ 1521(a), 1522(a); *see also Avanti*, 582 B.R. at 612 ("The discretion that

is granted is exceedingly broad, since a court may grant any appropriate relief that would further

59

the purposes of Chapter 15 and protect the debtor's assets and the interests of creditors.") (internal

citations omitted).    Such relief may include:

    (1)     staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a);

    (2)     staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a);

    (3)     suspending the right to transfer, encumber, or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a);

    (4)     providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities;

    (5)     entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court;

    (6)     extending relief granted under section 1519(a); and

    (7)     granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550 and 724(a).

11 U.S.C. § 1521(a).

141.    The Court's authority to grant each form of relief requested pursuant to

section 1521 of the Bankruptcy Code is subject to the same two overlapping conditions because

section 1521(a) provides that any relief granted pursuant to section 1521 must be "necessary to

effectuate the purposes of [Chapter 15] and to protect the assets of the debtor," and the Court must

be satisfied that "the interests of creditors and other interested entities, including the debtor, are

sufficiently protected."    11 U.S.C. § 1522(a).

142.    A determination of sufficient protection "requires a balancing of the respective

parties' interests." *In re AJW Offshore, Ltd.*, 488 B.R. 551, 559 (Bankr. E.D.N.Y. 2013)

(citing *SNP Boat Serv. S.A. v. Hotel Le St. James*, 483 B.R. 776, 784 (S.D. Fla. 2012); *In re Qimonda AG Bankr. Litig.*, 433 B.R. 547, 556–58 (E.D. Va. 2010); *CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012). Courts have also explained "sufficient protection" as:

> embodying three basic principles: "[(i)] the just treatment of all holders of claims against the bankruptcy estate, [(ii)] the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and [(iii)] the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law."

*In re ENNIA Caribe Holding N.V.*, 596 B.R. 316, 322-23 (Bankr. S.D.N.Y. 2019) (quoting *In re Atlas Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009) (quoting *In re Artimm, S.r.L.*, 335 B.R. 149, 160 (Bankr. C.D. Cal. 2005))).

143.    Here, both the three-factor *Atlas Shipping* test and the general balancing test favor granting the requested relief.

**A.    Just Treatment of All Holders of Claims Against or Interests in the Debtors' Property**

144.    The requirement to reasonably assure "just treatment of all holders of claims against or interests in the debtor's property" is satisfied where the applicable foreign insolvency law provides a comprehensive procedure for the orderly resolution of claims and the equitable distribution of assets among all of the estate's creditors in one proceeding. *See, e.g.*, *In re Bd. Of Dirs. Of Telecom Arg., S.A.*, 528 F.3d 162, 170 (2d Cir. 2008) ("The 'just treatment' factor is satisfied upon a showing that the applicable law 'provides for a comprehensive procedure for the orderly and equitable distribution of [the debtor]'s assets among all of its creditors'") (citing *In re Treco*, 240 F.3d 148, 158 (2d Cir. 2001)); *In re Culmer*, 25 B.R. 621, 629 (Bankr. S.D.N.Y. 1992).

145.    Here, the implementation of the Schemes will result in the Scheme Creditors receiving the Scheme Consideration, as described in greater detail above, in the Representative

Declarations, and in the Explanatory Statements.  The Schemes will result in the same treatment for each respective Scheme Creditor as other similarly situated Scheme Creditors that are subject to the same Scheme.  Moreover, the terms of each Scheme require approval of the Foreign Courts in the form of the Sanction Orders.  Hence, the Schemes and Sanction Orders, once entered, will be the result of a proceeding (*i.e.*, the Hong Kong Proceedings or the BVI Proceeding, as applicable) in which all creditors were treated fairly and justly in compliance with Hong Kong or BVI law, as applicable.

> **B.      Protection of Claim Holders in the United States Against Prejudice and Inconvenience in the Processing of Claims in the Foreign Proceedings**

146.    The Schemes address only the claims of the applicable Scheme Creditors, and there is no need for any Scheme Creditor to file a claim in the Foreign Proceedings to receive the same treatment as other similarly situated Scheme Creditors.  Accordingly, no creditor in the United States will be required to process a claim in the Foreign Proceedings and accordingly no creditor is inconvenienced thereby.  In any event, all Scheme Creditors were given adequate notice of the applicable Scheme, and the process for participating in or objecting to the Schemes is the same for United States creditors as all other creditors.  To the extent participating in or objecting to the Schemes is analogous to filing a claim, this factor is satisfied.  *C.f. Treco*, 240 F.3d at 158; *In re Petition of Hourani*, 180 B.R. 58, 68 (Bankr. S.D.N.Y. 1995) (holding that this factor is satisfied where creditors are given adequate notice of timing and procedures for filing claims, and such procedures do not create any additional burdens for a foreign creditor to file a claim).

C.    **Distribution of Proceeds Substantially in Accordance with the Bankruptcy Code**

147.    The third factor considers whether distribution of the debtor's property will substantially accord with the order of distribution available under the Bankruptcy Code. The "substantially in accordance" factor does not require that the foreign distribution be identical to United States bankruptcy law. *In re Ionica PLC*, 241 B.R. 829, 836 (Bankr. S.D.N.Y. 1999) ("Section 304(c)(4) only requires that the foreign distribution scheme be 'substantially in accordance' with United States bankruptcy law; it does not have to mirror the United States distribution rules.") (citations omitted). Here, as described in more detail above and in the Explanatory Statements, the Debtors seek to restructure their liabilities under the Existing Debts. Subject to the terms of the applicable Scheme, the Scheme Creditors will release the Debtors and the Subsidiary Guarantors, among others, from their respective obligations and liabilities under or in connection with the applicable Existing Debts, in return for which the Scheme Creditors will receive the applicable Scheme Consideration. Moreover, under the Schemes each Scheme Creditor within each applicable class is afforded equal treatment with all other Scheme Creditors in the same applicable class. Accordingly, the distribution of the Scheme Consideration is effectively the same as the manner in which such distributions would be made under the Bankruptcy Code.

D.    **The General Balancing Test Weighs in Favor of Granting Relief**

148.    With respect to the general balancing test, the Debtors and the Scheme Creditors have a strong interest in the availability of a means to determine how property will be distributed in a collective proceeding because "[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding." *In re Atlas Shipping A/S*, 404 B.R. 726, 737 (Bankr. S.D.N.Y. 2009). As discussed above, the Schemes are

63

appropriate mechanisms to achieve this important goal.   The requested relief, including enforcement of the Schemes and the Restructuring, is necessary to effectively utilize this mechanism.  Moreover, sanction of each Scheme requires that greater than a fifty percent (50% +1) majority in number of applicable Scheme Creditors, representing at least seventy-five percent (75%) in value of the relevant creditors of the applicable Debtor present and voting at the Scheme Meeting, votes in favor of the Scheme.  As of July 31, 2023, (i) with respect to Evergrande, holders of approximately 86.5% of Evergrande Class A Debt and holders of approximately 39.6% of Evergrande Class C Debt (such holders, in the aggregate, representing more than seventy-five percent (75%) of the Evergrande Existing Debts) expressly agreed to support the Evergrande Hong Kong Scheme; (ii) with respect to Tianji, holders of approximately 71.66% of the Tianji Existing Debts expressly agreed to support the Tianji Hong Kong Scheme; and (iii) with respect to Scenery Journey, holders of approximately 97.43% of the Scenery Journey Existing Notes expressly agreed to support the Scenery Journey BVI Scheme. Such creditors have a significant interest in receiving the benefits of the proposed Restructuring, of which the Schemes are an integral component.  On the other side of the ledger, any objecting creditors will still receive the same treatment as other similarly situated creditors and will benefit from the procedural protections available in the Foreign Proceedings, so these creditors' interests are protected.  Moreover, for the reasons described above, the Scheme Creditors had ample notice of the possibility, and are sufficiently protected by the procedures of, such collective proceedings.

149.    Finally, the relief requested herein clearly furthers the goals and purposes of Chapter 15 itself.  *See* 11 U.S.C. § 1501 (explaining that Chapter 15 filing's "objectives" include "cooperation between (a) courts of the United States […] and (b) the courts and other competent authorities of foreign countries").  By ensuring that the Debtors can effectuate the terms

of the Schemes, particularly with respect to distribution of the Scheme Consideration, once approved by the Foreign Courts, the relief requested "would assist in the efficient administration of this cross-border insolvency proceeding, and would not harm the interests of the [Debtors] or [their] creditors." *In re Grant Forest Prods., Inc.*, 440 B.R. 616, 621 (Bankr. D. Del. 2010).

150.    Accordingly, the Foreign Representatives respectfully submit that enforcement of the Schemes is necessary and appropriate.

## III.    Enforcement of the Scheme Is Also Proper Under Section 1507

151.    The Court may act pursuant to section 1507 of the Bankruptcy Code to provide "additional assistance" to foreign representatives, provided that such assistance is "consistent with the principles of comity" and cooperation with foreign courts.  11 U.S.C. § 1507; *see also Avanti*, 582 B.R. at 615*; In re Atlas Shipping A/S*, 404 B.R. 726, 737-38 (Bankr. S.D.N.Y. 2009); *Bear Stearns*, 374 B.R. at 130.

152.    In exercising discretion to grant relief under section 1507(a) of the Bankruptcy Code, courts are guided by the standards set forth in section 1507(b) of the Bankruptcy Code, which provide that:

> In determining whether to provide additional assistance under this title or under other laws of the United States, the court shall consider whether such additional assistance, consistent with the principles of comity, will reasonably assure—
>
> (1)    just treatment of all holders of claims against or interests in the debtor's property;
>
> (2)    protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
>
> (3)    prevention of preferential or fraudulent dispositions of property of the debtor;
>
> (4)    distribution of proceeds of the debtor property substantially in accordance with the order prescribed by this title; and

65

      (5)    if appropriate, the provision of an opportunity for a fresh start
for  the individual that such foreign proceeding concerns.

11 U.S.C. § 1507(b).

153.    Courts have held that principles of comity are key to determining whether to grant

additional assistance.  *See, e.g.*, *In re Metcalfe & Mansfield Alt. Inv.*, 421 B.R. 685, 696

(Bankr. S.D.N.Y. 2010) ("Section 1507 directs the court to consider comity in granting additional

assistance to the foreign representative"); *Atlas Shipping*, 404 B.R. at 738 (noting that post-

recognition relief is "largely discretionary and turns on subjective factors that embody principles

of comity") (quoting *Bear Stearns*, 389 B.R. at 333).

154.    As discussed above, the relief requested is consistent with the goals of international

cooperation and assistance to foreign courts embodied in Chapter 15 of the Bankruptcy Code,

and is necessary to the implementation of the Schemes.

155.    As the Second Circuit has recognized, "[t]he equitable and orderly distribution of a

debtor's property requires assembling all claims against the limited assets in a single proceeding;

if all creditors could not be bound, a plan of reorganization would fail." *Victrix S.S. Co., SA.*

*V. Salen Dry Cargo A.B.*, 825 F.2d 709, 713-14 (2d Cir. 1987); *see also Cunard S.S. Co. v. Salen*

*Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir. 1985) ("The granting of comity to a foreign

proceeding enables the assets of a debtor to be dispersed in an equitable, orderly and systematic

manner, rather than in a haphazard, erratic or piecemeal fashion.").  Over one hundred years ago,

the Supreme Court recognized the need to give effect to foreign schemes of arrangement in order

to further these goals, reasoning that:

> [u]nless all parties in interest, wherever they reside, can be bound by the
> arrangement which it is sought to have legalized, the scheme may fail.  All home
> creditors can be bound.  What is needed is to bind those who are abroad.  Under

66

these circumstances the true spirit of international comity requires that schemes of
this character, legalized at home, should be recognized in other countries.

*Canada S. Ry. Co. v. Gebhard*, 109 U.S. 527, 539 (1883).  If this Court refuses to enforce the

Schemes in the United States, Scheme Creditors may pursue claims against the Debtors thereby

jeopardizing the uniform and orderly rescheduling of the financial affairs of the Debtors

contemplated by the Schemes.

## IV.    Enforcement of the Schemes and Sanction Orders Is Consistent with Principles of Comity

156.    Courts in this district have routinely held that recognizing and enforcing a foreign

plan and confirmation order falls within the scope of the relief available under section 1521 and

section 1507 of the Bankruptcy Code.  *See, e.g.*, *U.S. Steel*, 571 B.R. at 609; *In re Cell

C Proprietary Ltd.*, 571 B.R. 542, 551 (Bankr. S.D.N.Y. 2017); *In re Rede Energia S.A.*, 515 B.R.

69 (Bankr. S.D.N.Y. 2014).  In particular, this Court and others have enforced Hong Kong and

BVI schemes of arrangement.  *See, e.g.*, *In re Kaisa Group Holdings Ltd.*, No. 16-11303 (SHL)

(Bankr. S.D.N.Y. 2016) (ECF No. 15); *see also In re Dingway Investment Limited*, No. 22-10648-

BKC-LMI (Bankr. S.D. Fla. 2022) (ECF No. 14).  In addition, this Court has also explained in

detail why a United Kingdom scheme of arrangement and associated sanction order may properly

be recognized and enforced in the United States.   *See Avanti*, 582 B.R. at 619.  As discussed

above, the structure of United Kingdom schemes is very similar to that of Hong Kong and BVI

schemes of arrangement.

157.    The need to extend comity to foreign proceedings is particularly salient with respect

to proceedings such as the Foreign Proceedings that determine how property will be distributed in

collective proceedings because "[t]he equitable and orderly distribution of a debtor's property

requires assembling all claims against the limited assets in a single proceeding" to bind all

67

creditors and comprehensively effectuate a plan of reorganization. *Atlas Shipping*, 404 B.R. at

737 (quoting *Victrix S.S. Co. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713–14 (2d Cir. 1987));

*Gebhard*, 109 U.S. at 539 ("Unless all parties […] can be bound by the arrangement […] the

scheme may fail […] Under these circumstances the true spirit of international comity requires

that schemes of this character, legalized at home, should be recognized"); *Victrix S.S. Co.*, 825

F.2d at 714 ("The equitable and orderly distribution of a debtor's property requires assembling all

claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan

of reorganization would fail").

158.    Comity is particularly important in the insolvency context notwithstanding the

fact that recognition of a foreign restructuring proceeding may implicate certain rights under U.S.

law.  For example, in *In re. Bd. Of Dirs. Of Telecom Arg., S.A.*, then-Second Circuit Judge

Sotomayor affirmed a bankruptcy court's order extending comity to Argentine insolvency

proceedings, finding that those proceedings did not violate U.S. public policy considerations

manifest in the Trust Indenture Act ("TIA").  *Telecom Arg.*, 528 F.3d 162, 165 (2d Cir. 2008).

The Second Circuit held that a bankruptcy court may grant enforcement of foreign insolvency

proceedings that result in the restructuring of TIA-qualified notes so long as recognition of those

proceedings is otherwise valid under then-section 304 of the Bankruptcy Code. Foreign

insolvency proceedings can also modify payment terms under an indenture notwithstanding

noteholders' TIA rights. *See In re Bd. Of Dirs. Of Multicanal S.A.*, 307 B.R. 384 (Bankr. S.D.N.Y.

2004).  Citing prior Supreme Court precedent, Judge Gropper rejected claims by noteholders:

> [I]f foreign law can under certain circumstances trump the U.S. Constitution and
> preclude bondholders from enforcing their contractual rights, as *Gebhard* holds,
> there is no basis for adopting the principle espoused by [the noteholders], that
> foreign law can under no circumstances override § 316(b) of the Trust Indenture
> Act (except perhaps if the foreign law is identical in all respects to U.S. law).  Nor
> can *Gebhard* be limited to the effect of a foreign proceeding on State rather than

Federal rights.  It is the seminal decision on granting comity to foreign insolvency
proceedings.

*Id.* at 390.

159.    In that regard, the Supreme Court has held that a foreign judgment should not be

challenged in the United States if the foreign forum provides:

> [A] full and fair trial abroad before a court of competent jurisdiction, conducting
> the trial upon regular proceedings, after due citation or voluntary appearance of
> the defendant, and under a system of jurisprudence likely to secure an impartial
> administration of justice between the citizens of its own country and those of
> other countries, and there is nothing to show either prejudice in the court, or in the
> system of laws under which it is sitting […]

*Hilton* v. *Guyot*, 159 U.S. 113, 202–03 (1895); *see also Avanti*, 582 B.R. at 618–619

(extending comity to a sanctioned scheme that:  complied with applicable statutory requirements;

fairly represented creditors in classification; found the majority acted in a *bona fide* manner; was

one that an intelligent and honest man, acting in respect of his interests as a creditor, might

reasonably approve; and where jurisdiction was proper); *Metcalfe*, 421 B.R. at 698 (holding that a

Canadian order approving a release and injunction was enforceable in Chapter 15 under principles

of comity because "[t]he U.S. and Canada share the same common law traditions and fundamental

principles of law.  Canadian courts afford creditors a full and fair opportunity to be heard in a

manner consistent with standards of U.S. due process.  U.S. federal courts have repeatedly granted

comity to Canadian proceedings."); *In re Sino-Forest Corp.*, 501 B.R. 655, 663–64 (Bankr.

S.D.N.Y. 2013) ("The same analysis [as *Metcalfe*], with the same  conclusions, applies here.").

160.    The Foreign Proceedings meet the standard for extending comity.  The facts and

circumstances here are very similar to those in *Metcalfe* and *Sino-Forest*.  The United States shares

the same common law traditions and fundamental principles of law with Hong Kong and the BVI.

Moreover, in the Foreign Proceedings in particular, the Scheme Creditors have a full and fair

opportunity to vote on and be heard in connection with the Schemes, in a manner consistent with U.S. standards of due process. *See* Hong Kong Counsel Declaration, ¶ 21; BVI Counsel Declaration, ¶ 36. The Schemes, similar to UK schemes, requires a greater than fifty percent (50% +1) majority in number representing not less than seventy-five percent (75%) in value of the classes of Scheme Creditors present and voting, in person or by proxy, at the Scheme Meetings to vote in favor of the Schemes to be legally binding. *See* Hong Kong Counsel Declaration, ¶ 17; BVI Counsel Declaration, ¶ 32; *see also Avanti*, 582 B.R. at 618–19 (recognizing a foreign scheme with the same voting requirements). Accordingly, enforcing the Schemes and Sanction Orders as appropriate relief or additional assistance under section 1521 or 1507 is an appropriate exercise of comity.

## V.    The Standard for Injunctive Relief Is Satisfied with Respect to Enforcement of the Schemes and Releases

161.    Pursuant to section 1521(e) of the Bankruptcy Code, the standard for injunctive relief under federal law applies in Chapter 15 cases. 11 U.S.C. § 1521(e). To obtain a permanent injunction, a movant must demonstrate that (i) an injunction is required to avoid irreparable harm and (ii) there is a likelihood of success on the merits. *See Clarkson v. Coughlin*, 898 F. Supp. 1019, 1035 (S.D.N.Y. 1995).

162.    With respect to the second factor, the Foreign Representatives seek injunctive relief enforcing the Schemes and the Foreign Court Orders in the United States only upon recognition thereof as part of the Proposed Recognition Orders. Therefore, at the time such discretionary relief is granted, the requirement that the movant succeeds on the merits will be satisfied.

163.    With respect to the first factor, irreparable harm exists where the orderly and equitable determination of claims and distribution of a debtor's assets could be disrupted absent injunctive relief. *See, e.g.*, *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713–14

(2d Cir. 1987) ("The equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail."); *In re Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003); *In re MMG LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("The guiding principle of bankruptcy law is equality of distribution. […] As a rule, therefore, irreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of the other creditors."); *In re Rubin*, 160 B.R. 269, 283 (Bankr. S.D.N.Y. 1993) (quoting *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) ("[T]he premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury.").

164.    As discussed above in the context of demonstrating that enforcement of the Schemes and the Restructuring contemplated thereby is appropriate, an injunction enforcing the terms of the Schemes and the Foreign Court Orders in the United States is necessary to prevent Scheme Creditors or other entities from seeking to obtain judgments in the United States against the Debtors or other parties who receive relief from the Schemes to obtain greater recoveries than those to which they are entitled under the Schemes.  If the Scheme Creditors can effectively evade the terms of the Schemes and the Restructuring by commencing actions in the United States, parties involved in the Restructuring would be required to defend against any such proceedings and deplete the resources of the restructured business to the detriment of the Restructuring.  For these reasons, allowing creditors to re-litigate issues resolved pursuant to the Schemes and Foreign Court Orders in the United States would threaten the success of the Restructuring and cause "irreparable harm" to the Debtors.  The granting of the requested relief, conversely, would protect the interests of the Scheme Creditors by maximizing the total value available for distribution and ensuring that

claims are determined and paid on a consistent, nondiscriminatory basis in accordance with the terms of the Schemes and Foreign Court Orders.

165.    Both prior to and since the enactment of Chapter 15, courts have readily granted permanent injunctive relief to enforce foreign restructuring plans and discharges, including releases for parties other than the petitioning debtor similar to the Releases included in the Schemes. *See, e.g.*, *In re E-House (China) Enterprise Holdings Limited*, No. 22-11326 (JPM) (Bankr. S.D.N.Y. Nov. 15, 2022) (recognizing and enforcing a Cayman Islands scheme of arrangement that included releases including of parties other than the petitioning debtor); *In re Hidili Industry International Development Limited*, No. 22-10736 (DSJ) (Bankr. S.D.N.Y. July 12, 2022) (same with respect to Hong Kong scheme of arrangement); *In re Modern Land (China) Co.*, 641 B.R. at 793 (permanently enjoining creditors involved in a Cayman Island scheme of arrangement "from asserting or seeking to enforce any debt, claim, or interest that is released, discharged, or modified by" the Cayman Island court and related scheme); *In re Rede Energia S.A.*, 515 B.R. 69, 93 (Bankr. S.D.N.Y. 2014) ("The request by the Foreign Representative that the Court […] enjoin acts in the U.S. in contravention of the [foreign confirmation decision] is relief of a type that courts have previously granted under section 304 of the Bankruptcy Code and other applicable U.S. law.") (citing *In re Bd. Of Dirs. Of Telecom Arg., S.A.*, 528 F.3d 162, 174–76 (2d Cir. 2008)); *Sino-Forest Corp.*, 501 B.R. at 665 (granting permanent injunctive relief to enforce Canadian plan); *Metcalfe*, 421 B.R. at 685 (same).

166.    Moreover, in relation to enforcing third-party releases in foreign schemes of arrangement, this Court noted that:

> third-party non-debtor releases are common in schemes sanctioned under UK law, particularly for releases of affiliate guarantees of the debt that is being adjusted by the scheme. *See In re T & N Ltd and others (No 4) [2006] EWHC 1447 (Ch)* (David Richards , J.) (holding that a scheme did not necessarily prohibit the alteration of

third-party claims against insurers); *Re Lehman Brothers International (Europe) (In administration) (No 2) [2009] EWCA Civ 1161* (following *T & N*, Patten LJ held (at paragraph 63) that it was "entirely logical to regard the court's jurisdiction as extending to approving a scheme which varies or releases creditors' claims against the company on terms which require them to bring into account and release rights of action against third-parties designed to recover the same loss. The release of such third-party claims is merely ancillary to the arrangement between the company and its own creditors."); *In Re La Seda de Barcelona SA [2010] EWHC 1364 (Ch)* (Proudman J applied *T & N* and *Lehman*, and concluded that a third-party subsidiary guarantor could be released pursuant to a deed of release executed on behalf of scheme creditors).

*In re Avanti Commc'ns*, 582 B.R. at 618. This Court went on to conclude that:

> schemes of arrangements sanctioned under UK law that provide third-party non-debtor guarantor releases should be recognized and enforced under chapter 15 of the Bankruptcy Code. [The creditors] had a full and fair opportunity to vote on, and be heard in connection with, the [s]cheme. […] The proceedings under UK law in the UK courts afford creditors a full and fair opportunity to be heard in a manner consistent with US due process standards. […]

> The failure of a US bankruptcy court to enforce the [third-party releases] could result in prejudicial treatment of creditors to the detriment of the [d]ebtor's reorganization efforts and prevent the fair and efficient administration of the [r]estructuring. Principles of comity permit a US bankruptcy court to recognize and enforce the [s]cheme.

*Id*. At 618-619 (internal citations omitted). This Court later reiterated its view in *In re Agrokor D.D.* that foreign restructuring plans that include third-party releases are entitled to comity if creditors had a full and fair opportunity to vote and be heard. *See* 591 B.R. 163, 189-190 (Bankr. S.D.N.Y. 2018). This Court further noted in a recent hearing that "[p]rinciples of enforcement of foreign judgments in comity in Chapter 15 cases strongly counsel approval of enforcement in the United States of third-party, non-debtor release and injunction provisions even if those provisions could not be entered in a plenary Chapter 11 case." *In re Huachen Energy, Ltd.*, Case No. 22-10005 (LGB) (ECF No. 20) Hr'g Tr. 19:13-17 (Bankr. S.D.N.Y. Feb 3, 2022).

167.    Additionally, the injunctive relief sought herein, including the enforcement of the Releases, would not cause undue hardship or prejudice to the rights of any creditor based in the

73

United States.  In fact, the procedures for participating in and voting on the Schemes under

Hong Kong law and BVI law, as applicable, are applied uniformly to all of the Debtors' creditors,

wherever they reside.  Moreover, the panoply of rights of the Scheme Creditors to participate in

and object to the applicable Scheme in regular proceedings before the Foreign Courts are discussed

above with respect to the recognition of the Schemes.  In short, the injunctive relief sought herein

seeks only to give effect to the orderly and equitable implementation of the Schemes and the

Foreign Court Orders in the United States.

## VI.  The Relief Requested Is Consistent with United States Public Policy and Policy Behind the Bankruptcy Code

168.    The purpose of Chapter 15 is set forth in section 1501 of the Bankruptcy Code and

includes:

> cooperation between (a) courts of the United States, the United States Trustee, trustees, examiners, debtors, and debtors in possession; and (b) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases; (2) greater legal certainty for trade and investment; (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor; (4) protection and maximization of the value of the debtor's assets; and (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501.  Recognizing the Foreign Proceedings as foreign main proceedings or, with

respect to the Hong Kong Proceedings, in the alternative, foreign nonmain proceeding, comports

with all of these objectives.

169.    While section 1506 of the Bankruptcy Code provides that nothing in Chapter 15

shall prevent the Court from refusing to take an action otherwise required therein if such action

would be manifestly contrary to the public policy of the United States, the public policy exception

is narrowly construed.  *See*, *e.g.*, *Sino-Forest*, 501 B.R. at 665; *Metcalfe*, 421 B.R. at 697;

*In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1069 (5th Cir. 2012).  Moreover, the public policy

74

exception must be viewed in light of one of the fundamental goals of the Bankruptcy Code — the

centralization of disputes involving the debtor.  *See, e.g., In re Ionosphere Clubs, Inc.*, 922 F.2d

984, 989 (2d Cir. 1990) ("The Bankruptcy Code provides for centralized jurisdiction and

administration of the debtor, its estate and its reorganization in the Bankruptcy Court […]")

(internal citations and quotation marks omitted).  Indeed, as some courts have noted:

> American courts have long recognized the need to extend comity to foreign
> bankruptcy proceedings because the equitable and orderly distribution of a debtor's
> property requires assembling all claims against the limited assets in a single
> proceeding; if all creditors could not be bound, a plan of reorganization would fail.

*Atlas Shipping*, 404 B.R. at 733 (internal quotation marks omitted) (citing *Victrix*, 825 F.2d at

713–14); *see also JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418,

424 (2d Cir. 2005) ("We have repeatedly held that U.S. courts should ordinarily decline to

adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding.").

170.    Recognition of the Foreign Proceedings will enable the Debtors to fully implement

the Restructuring as intended pursuant to the Schemes, facilitate a meaningful distribution for its

creditors, and enable the business of the Company to continue as reconstituted.

171.    Recognition of the Foreign Proceedings would also promote the fair and efficient

administration of a cross-border reorganization procedure that protects the interests of all

stakeholders and interested parties.  By recognizing the Foreign Proceedings and granting the relief

requested, the process of resolving any residual claims of the applicable Scheme Creditors against

the Debtors (if any) would be centralized in Hong Kong and the BVI, as applicable, which is a

fundamental goal of the Bankruptcy Code.  *See, e.g., Ionosphere*, 922 F.2d at 989; *Cornfeld v.

Investors Overseas Servs.*, Ltd., 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (noting that "the firm

policy of American courts is the staying of actions against a corporation which is the subject of a

bankruptcy proceeding in another jurisdiction").  Claims would be treated in accordance with the

75

Schemes that comport with Hong Kong and BVI law, as applicable, which are both similar to comparable United States laws, and any disputes would be subject to the uniform jurisdiction of one tribunal with respect to each applicable Scheme—the Hong Kong Court or the BVI Court, as applicable.  Recognition will enable the orderly administration of the Debtors' assets and foster cooperation between courts in Hong Kong, the BVI, and the United States.  Such orderly administration is demonstrably consistent with the public policy of the United States and the Bankruptcy Code.  If the Schemes sanctioned by the Foreign Courts are not enforced in the United States, the uniform and orderly administration of the Debtors in the Foreign Proceedings would be jeopardized.  *See, e.g.*, *Gebhard*, 109 U.S. at 539 (1883) ("[u]nless all parties in interest, wherever they reside, can be bound by the arrangement which is sought to have legalized, the scheme will fail.  All home creditors can be bound.  What is needed is to bind those who are abroad.  Under these circumstances the true spirit of international comity requires that schemes of this character, legalized at home, should be recognized in other countries.").

172.    If the Court does not recognize the Schemes, then the Foreign Proceedings face legal uncertainty and the Schemes, and therefore the Restructuring, may not succeed.  Additionally, failure to enjoin the Scheme Creditors or enforce the relief provided for in the Schemes in the United States may result in unnecessary enforcement costs or the piecemeal disposition of assets to the detriment of the Debtors and its various stakeholders.  The purpose of Chapter 15 is to prevent such harms.  *See* 11 U.S.C. § 1501(a) (noting that, among other objectives described herein, Chapter 15 facilitates "the rescue of financially troubled business" and provides for the "fair and efficient administration of cross border insolvencies").

173.    Avoiding such potential adverse outcomes through the formal recognition of the Foreign Proceedings and enforcement of the Schemes and the Foreign Court Orders in the United

States effectuates the principal objectives Congress articulated when it enacted Chapter 15 of the

Bankruptcy Code and otherwise comports with U.S. public policy.

## NOTICE

174.    In accordance with Bankruptcy Rule 2002(q), each Foreign Representative, as

applicable, through the Debtors' noticing agent, Kroll Restructuring Administration LLC

("Kroll"), will provide notice of this Motion to (i) the Debtors; (ii) the Office of the United States

Trustee for Region 2; and (iii) the parties entitled to notice set forth in the *Motion Pursuant to*

*Federal Rules of Bankruptcy Procedure 2002 and 9007 for Order (I) Scheduling Recognition*

*Hearing (II) Setting Objection Deadline, and (III) Approving Form and Manner of Service of*

*Notice*, filed contemporaneously herewith.  The Foreign Representatives submit that, in view of

the facts and circumstances, such notice is sufficient and no other or further notice need be

provided.

## NO PRIOR REQUEST

175.    No previous request for the relief requested herein has been made by the Debtor

to this Court or any other court.


*[Remainder of page intentionally left blank.]*

WHEREFORE each Foreign Representative respectfully requests entry of the Proposed Recognition Order, as applicable, with respect to each Debtor, granting the relief requested herein and such other and further relief as the Court  may deem just and appropriate.

Dated: August 17, 2023
      New York, New York

**SIDLEY AUSTIN LLP**

/s/ *Anthony Grossi*

Anthony Grossi
Ameneh Bordi
Juliana Hoffman* (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone:   (212) 839-5300
Facsimile:   (212) 839-5599
Email:       agrossi@sidley.com
         abordi@sidley.com
         jhoffman@sidley.com

*Counsel to the Foreign Representatives*
*\*Admitted only in Texas*

78