**SIDLEY AUSTIN LLP**
Anthony Grossi
Ameneh Bordi
Juliana Hoffman* (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599
Email:      agrossi@sidley.com
            abordi@sidley.com
            jhoffman@sidley.com

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>China Evergrande Group, *et al.*[1]<br><br><div align="center">Debtors in Foreign Proceedings.</div> | Chapter 15<br><br>Case No. 23-11332 (MEW)<br><br>Joint Administration Requested |

<div align="center">

**DECLARATION OF JIMMY FONG IN SUPPORT OF**
**THE MOTION FOR (I) RECOGNITION OF FOREIGN MAIN**
**PROCEEDINGS, (II) RECOGNITION OF FOREIGN REPRESENTATIVES,**
**AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**
**WITH RESPECT TO DEBTOR CHINA EVERGRANDE GROUP**

</div>

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

       I, Jimmy Fong, to the best of my information and belief, state as follows:

    1.    I am over the age of 18 and, if called upon, could testify to all matters set forth in

---

[1]The Debtors in these Chapter 15 Cases are (i) China Evergrande Group, incorporated in the Cayman Islands as an exempted company with limited liability with the registration number 170388, with its principal place of business located at 15th Floor, YF Life Centre, 38 Gloucester Road, Wanchai, Hong Kong; (ii) Tianji Holding Limited, incorporated in Hong Kong as a limited liability company with the registration number 1339269, with its principal place of business located at 17th Floor, One Island East, Taikoo Place, 18 Westlands Road, Quarry Bay, Hong Kong; and (iii) Scenery Journey Limited, incorporated in the British Virgin Islands ("BVI") as a limited liability company with the company number 1970476, with its principal place of business located at 2nd Floor Water's Edge Building, Wickham's Cay II, Road Town, Tortola, BVI.

this declaration (this "<u>Declaration</u>").[2]  In accordance with the Board Resolution (as defined herein) of China Evergrande Group ("<u>Evergrande</u>" or the "<u>Debtor</u>"), I was appointed as the authorized representative of Evergrande.  Moreover, I am the Company Secretary for Evergrande.  Consistent with these roles, I have gained knowledge of Evergrande's history, day-to-day operations, assets, financial condition, business affairs, and books and records.  All facts set forth in this Declaration are based upon (a) my personal knowledge; (b) my review of relevant documents and any and all documents prepared and/or filed in connection with the Evergrande Hong Kong Proceeding and the above-captioned Chapter 15 cases (the "<u>Chapter 15 Cases</u>"); (c) information supplied to me by the officers, directors, employees, or professionals retained by Evergrande; or (d) based upon my experience and knowledge of Evergrande's assets and financial condition.

2.      I am making this Declaration in accordance with section 1515 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

3.      Evergrande is the subject of a restructuring proceeding entitled *In the Matter of China Evergrande Group* (the "<u>Evergrande Hong Kong Proceeding</u>"), concerning a scheme of arrangement between Evergrande and certain Scheme Creditors (as defined herein), currently pending before the High Court of Hong Kong (the "<u>Hong Kong Court</u>") (Case Number: HCMP 1091/2023).

4.      On August 14, 2023, Evergrande's Board (as defined herein) passed the Board Resolution authorizing me to take certain actions as necessary to act as Evergrande's foreign representative in connection with the Chapter 15 Cases as they relate to Evergrande.

---

[2] Capitalized terms used but not defined have such meanings set forth elsewhere in this Declaration, the Recognition Motion (as defined herein), or the Evergrande Explanatory Statement (as defined herein), as applicable.

5.      I submit this Declaration in support of the (a) Chapter 15 *Petition for Recognition of a Foreign Proceeding* with respect to Evergrande (the "Evergrande Chapter 15 Petition"); (b) *Motion for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representatives, and (III) Related Relief under Chapter 15 of the Bankruptcy Code* (the "Recognition Motion"); and (c) *Motion Pursuant to Federal Rules of Bankruptcy Procedure 2002 and 9007 Requesting Entry of an Order (I) Scheduling the Recognition Hearing, and (II) Approving the Form and Manner of Service of Notice* (the "Scheduling Motion"), each filed contemporaneously herewith.[3]

6.      As further detailed herein, a series of events have placed certain Chinese property developers, including the Group (as defined herein), under financial stress and created impediments to addressing certain payment maturities.  The relief requested of this Court and the financial restructuring effectuated through the Chapter 15 Cases, and the corresponding Evergrande Hong Kong Proceeding, is a meaningful step to right-size the Group's balance sheet and place it in a position for long-term success to the benefit of the Group's employees, creditors, customers, vendors, and all of its stakeholders.

---

[3] Reference is made to the *Declaration of Sidley Austin as Hong Kong Counsel to Evergrande and Tianji in Support of the Motion for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code With Respect to Debtors Evergrande and Tianji* (the "Hong Kong Counsel Declaration").

## BACKGROUND

### I.    Debtors' Business Operations and Preexisting Capital Structure

7.    Evergrande was incorporated in the Cayman Islands under the Cayman Companies Act as an exempted company with limited liability on June 26, 2006.[4]

8.    Evergrande (formerly known as Evergrande Real Estate Group Limited) is the ultimate holding company of a group of companies comprising Evergrande and its direct and indirect subsidiaries, including, Tianji Holding Limited ("Tianji"), Scenery Journey Limited ("Scenery Journey", and together with Evergrande and Tianji, the "Debtors"), and certain subsidiaries who guarantee certain of the Group Existing Debts (as defined herein) (collectively, the "Subsidiary Guarantors") with respect to the Debtors (collectively, the "Group").  The Group carries on business through operating subsidiaries and engages principally in property development, property investment, property management, new energy vehicle development and production, and cultural tourism business in China.  Evergrande has no material operations and derives its income exclusively from dividend payments by its subsidiaries in order to service its offshore debts (including the Evergrande Class A Debts and Evergrande Class C Debts (each as defined herein)).

9.    Evergrande's shares have been listed on the Main Board of the Stock Exchange of Hong Kong Limited (the "HKEX") since November 5, 2009 with stock code 3333.  As of June 30, 2023, the authorized share capital of Evergrande was US $1,000,000,000 divided into

---

[4]Additionally, Tianji (as defined herein), an indirect non-wholly owned subsidiary of Evergrande, was incorporated in Hong Kong under Part XI of the predecessor Hong Kong Companies Ordinance (Cap. 32 of the Laws of Hong Kong) as a limited liability company on May 19, 2009, and Scenery Journey (as defined herein), a direct wholly owned subsidiary of Tianji, was incorporated in the British Virgin Islands under the BVI Companies Act as a limited liability company on February 12, 2018.

100,000,000,000 ordinary shares of a nominal or par value of $0.01 each, of which approximately

13 billion of the ordinary shares were issued and fully paid.

10.    The Group's operations are comprised of three key business segments:[5]

    a.    **Property development business:**  The property development business is the main business line of the Group.  During January to May 2023, the Group had contracted sales of approximately RMB 33.8 billion (or approximately RMB 20.1 billion after deducting properties transferred to construction companies or suppliers for payment in kind) and contracted sales area of approximately 4.9 million square meters of gross floor area.  Most of the Group's projects are held under Hengda Real Estate Group Company Limited ("Hengda"),[6] while Tianji also holds equity interests in over 30 projects located in China.

    b.    **Property management business:**  The property management business of the Group is operated through a subsidiary, Evergrande Property Services Group Limited ("EVPS").[7]  EVPS provides property management services primarily to real estate projects developed by the Group's property development business.  As of May 31, 2023, approximately 71.5% of properties under management by EVPS are properties developed by the Group.

    c.    **New energy vehicle business:**  Evergrande's subsidiary China Evergrande New Energy Vehicle Group Limited ("NEV")[8] conducts industrial park development and health management businesses, as well as the new energy vehicle and battery businesses.

**A.    The Debtor's Existing Capital Structure and Existing Debts**

11.    As of December 31, 2022, Evergrande had a total indebtedness of approximately

RMB 198.3 billion, including: (i) current borrowings of approximately RMB 2.3 billion;

---

[5] "RMB" refers to Renminbi, or the Chinese Yuan ("CNY") and "HK$" refers to Hong Kong Dollars. All conversions from RMB to US$ are made at the rate of RMB 7.23 to US$ 1.00, and all conversions from RMB to HK$ are made at a rate of RMB 0.92 to HK$ 1.00, being the rates published by the Monetary Policy Department of the People's Bank of China on 30 June 2023. For convenience, the rate of HK$ 7.84 to US$ 1.00 is used for conversions from HK$ to US$.

[6] Hengda is the 100% controlling shareholder of Tianji.  As of July 17, 2023, Evergrande indirectly holds approximately a 60% equity in Hengda.

[7] As of July 17, 2023, Evergrande holds a 51.7% equity interest in EVPS.

[8] As of July 17, 2023, Evergrande holds a 58.5% equity interest in NEV.

(ii) non-current borrowings of RMB 99.6 billion; (iii) amounts due to subsidiaries of RMB 94.8 billion; and (iv) dividends payable of RMB 1.7 billion.

12.     Evergrande is (i) the issuer of (and borrower under) the Evergrande Existing Notes (as defined herein), which involve ten series of U.S. dollar denominated senior secured notes and a single series of Honk Kong dollar denominated convertible bonds due February 14, 2023, as well as separately a 15% private loan due January 2022 between certain private lenders and Evergrande and Treasure Glory Global Limited as borrowers (collectively, the "Evergrande Class A Debt" and such creditors under the Class A Debt, the "Evergrande Class A Creditors") and (ii) an obligor in respect of the Evergrande Class C Debt (as defined herein), under which Evergrande has several types of obligations, including (1) where Evergrande is a guarantor and (2) where Evergrande has provided a put option or repurchase obligation to a creditor.

13.     The Evergrande Existing Notes (except for the February 2023 Bonds (as defined herein)), are the only Evergrande Existing Debts (as defined herein) that are governed by United States (*i.e.*, New York) law.

14.     The Evergrande Existing Notes, which have an aggregate face value of approximately $14.2 billion and an approximate accreted balance, as of July 31, 2023, of $16.8 billion, are comprised of:

i.      An aggregate principal amount of approximately $300 million in 9.5% senior notes with a maturity date of January 30, 2022 (the "January 2022 Notes") issued pursuant to an indenture dated April 30, 2019, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;[9]

ii.     An aggregate principal amount of approximately $2.022 billion in 8.25% senior notes with a maturity date of March 23, 2022 (the "March 2022 Notes") issued pursuant to an indenture dated March 23, 2017, as amended, supplemented, or

---

[9]"Evergrande Existing Notes Trustee" means Citicorp International Limited in its capacity as the notes trustee governing the Evergrande Existing Notes.

otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;

iii.   An aggregate principal amount of approximately $1.450 billion in 9.5% senior notes with a maturity date of April 11, 2022 (the "April 2022 Notes") issued pursuant to an indenture dated April 11, 2019, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;

iv.   An aggregate principal amount of approximately $999 million in 11.5% senior notes with a maturity date of January 22, 2023 (the "January 2023 Notes") issued pursuant to an indenture dated January 22, 2020, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;

v.   An aggregate principal amount of approximately $10 million in 4.25% convertible bonds with a maturity date of February 14, 2023 (the "February 2023 Bonds") issued pursuant to a trust deed dated February 14, 2018, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;

vi.   An aggregate principal amount of approximately $834 million in 10.0% senior notes with a maturity date of April 11, 2023 (the "April 2023 Notes") issued pursuant to an indenture dated April 11, 2019, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;

vii.   An aggregate principal amount of approximately $1.332 billion in 7.5% senior notes with a maturity date of June 28, 2023 (the "June 2023 Notes") issued pursuant to an indenture dated June 28, 2017, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;

viii.   An aggregate principal amount of approximately $995 million in 12.0% senior notes with a maturity date of January 22, 2024 (the "January 2024 Notes") issued pursuant to an indenture dated January 22, 2020, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;

ix.   An aggregate principal amount of approximately $951 million in 9.5% senior notes with a maturity date of March 29, 2024 (the "March 2024 Notes") issued pursuant to an indenture dated March 29, 2017, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee;

x.   An aggregate principal amount of approximately $691 million in 10.5% senior notes with a maturity date of April 11, 2024 (the "April 2024 Notes") issued pursuant to an indenture dated April 11, 2019, as amended, supplemented, or

7

otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee; and

xi.    An aggregate principal amount of approximately $4.649 billion in 8.75% senior notes with a maturity date of June 28, 2025 (the "June 2025 Notes" and collectively with the January 2022 Notes, March 2022 Notes, April 2022 Notes, January 2023 Notes, February 2023 Bonds, April 2023 Notes, June 2023 Notes, January 2024 Notes, March 2024 Notes, and April 2024 Notes, the "Evergrande Existing Notes") issued pursuant to an indenture dated June 28, 2017, as amended, supplemented, or otherwise modified from time to time, between, among others, Evergrande and Citicorp International Limited, as the Evergrande Existing Notes Trustee.

15.    The total principal amount outstanding under the Evergrande Class C Debt is approximately $13.4 billion, and is comprised of the following debt instruments (collectively, the "Evergrande Class C Debt" and such creditors under the Evergrande Class C Debt the "Evergrande Class C Creditors", and the Evergrande Class C Debt together with the Evergrande Class A Debt, the "Evergrande Existing Debts"):

i.      An On-Lent Loan funded by Treasure Glory Global Limited to Evergrande pursuant to the loan agreement relating to the provision of the Class A Private Loan;

ii.     A guarantee in relation to $260 million 8.5% senior notes due October 3, 2021 issued by Jumbo Fortune Enterprises Limited (the "Lake Notes");

iii.    A guarantee in relation to $424 million 9.0% senior notes due January 22, 2023 issued by Great Courage Global Limited;

iv.     A $116 million put option in relation to certain senior notes issued by Great Courage Global Limited;

v.      A $110 million put option in relation to shares of Graceful Court Limited;

vi.     A guarantee in relation to a HK$160 million margin loan borrowed by New Chic Global Limited;

vii.    A guarantee in relation to a HK$575 million put option in relation to shares of Clear Star Investments Limited;

viii.   A HK$1.2 billion loan borrowed by Evergrande due January 2, 2022;

ix.     A HK$600 million loan borrowed by Evergrande due January 7, 2022;

x.      A guarantee in relation to a $20 million structured loan borrowed by Rainbow Ever Limited;

xi.    A guarantee in relation to a $355 million structured sale and purchase agreement of shares in Rainbow Ever Limited;

xii.    A guarantee in relation to a HK$7.6 billion loan borrowed by Tianji due November 24, 2023, pursuant to facilities agreement dated November 21, 2020;

xiii.    $712 million repurchase obligations in respect of Fangchebao Group Co. Ltd.;

xiv.    A repurchase obligation in relation to a RMB 8.2 billion onshore bond issued by Henga Real Estate due July 8, 2022;

xv.    A guarantee of Guangzhou Kailong Real Estate Company Limited's RMB 5 billion repurchase obligation of shares in Hengda Real Estate, together with interest and costs, which was awarded in an Arbitration Award rendered by Shenzhen Court of International Arbitration where CEG, Guangzhou Kailong Real Estate Company Limited, and the Chairman of the Group were responsible for the repayment accordingly; and

xvi.    Guarantees in relation to certain Chinese onshore debts.

16.    Based on the Group's financial data, the current assets of the Group on a consolidated basis as of December 31, 2022 amounted to approximately RMB 98.8 billion. Key items of the Group's current assets consisted of the following as of such date:

a)  inventory of approximately RMB 0.5 billion;

b)  properties under development for sale of approximately RMB 1.1361 trillion;

c)  properties held for sale of approximately RMB 102.9 billion;

d)  trade and other receivables of approximately RMB 228.9 billion;

e)  restricted cash of approximately RMB 10.0 billion; and

f)  cash and cash equivalents of approximately RMB 4.3  billion.

17.    The majority of the Group's current assets cannot be collected or converted into cash immediately.  As of December 31, 2022, certain of the assets were pledged to secure certain banking and other facilities granted to the Group and mortgage loans granted to buyers of sold properties.

II.    **Events Preceding the Commencement of the Evergrande Hong Kong Scheme Proceeding**

A.    **Stresses on Evergrande**

18.    The Group historically adopted a high-debt, high-leverage, high-turnover model to expand operations, which created substantial debt risks that inflated the debt burden of the Group and resulted in deterioration of capital with respect to its main sector of real estate business.  Since the second half of 2021, Evergrande's real estate transaction volumes and the area sold and amount of sales have declined leading to reduced cash generation, while the Group has experienced liquidity pressures due to limited access to external capital.

B.    **Operational Measures Taken to Address Financial Situation**

19.    Since 2021, the Group has been actively engaging with its customers, suppliers, creditors, and shareholders to stabilize its credit lines and day-to-day operations.  It implemented further measures by reducing capital expenditures and other expenses such as management remuneration.

20.    Additionally, as of December 2021, the Group has introduced several initiatives to reduce operational costs and increase efficiency.  These initiatives included streamlining the organization and consolidating job posts.

21.    The Group has since prioritized the resumption of construction and production, in order to ensure the delivery of property units.  To facilitate these efforts, the Group has maintained close communication with upstream and downstream business partners as well as relevant creditors, and has received significant support.

C.    **Group Events of Default**

22.    On December 2, 2021, Evergrande received a demand to perform its obligations under the Evergrande Class A Debts regarding a guarantee in the amount of approximately

$260 million in relation to the Lake Notes, with which Evergrande failed to comply. Evergrande's failure to perform its obligations under this guarantee constituted events of default under the indentures governing the Evergrande Existing Notes (the "Evergrande Existing Notes Events of Default"). Evergrande has since ceased to make payments for the principal and interest amounts due under the Evergrande Existing Notes.

23.    I understand there have also been payment defaults, cross defaults, and/or other events of default in relation to certain of the Group's debts (the "Group Existing Debts", and such defaults, together with the Evergrande Existing Notes Events of Default, the "Group Events of Default"). Further, certain creditors of the Group Existing Debts have sought to enforce the relevant security, including by appointing receivers and/or enforcing share charges, as provided for under the relevant transaction documents.

**D.    Engagement with Financial Stakeholders to Address Capital Structure**

24.    Against this backdrop, the Group has been working closely with its stakeholders, including onshore as well as offshore creditors, to formulate a holistic restructuring.

25.    On September 14, 2021, Evergrande announced the appointment of Sidley Austin as its legal advisor to review its potential options and assist Evergrande in its debt restructuring negotiations with the holders of the Existing Notes. On that same day, Evergrande also announced the appointment of Houlihan Lokey (China) Limited as its financial advisor. On January 21, 2022, the Group announced the further appointment of China International Capital Corporation Limited and BOCI Asia Limited as financial advisers and Zhong Lun Law Firm LLP as legal adviser to assist Evergrande in (i) mitigating and eliminating the risks relating to its debts; (ii) following up

with demands from its creditors dealing; and (iii) dealing with the debts issue on a fair and equitable basis.[10]

26.     The Group also promptly commenced discussions with certain ad hoc groups of holders of certain of the Group Existing Debts, as constituted from time to time (each, an "Ad Hoc Group", and collectively, the "Ad Hoc Groups") to explore a consensual resolution for the Group Events of Default.

27.     Following extensive and thorough consideration, consultation, and negotiation, the Debtors determined that a restructuring is in the best interests of the Debtors and those with an economic interest in the Debtors, in particular, the Scheme Creditors.  Accordingly, (i) Evergrande entered into that certain restructuring support agreement, dated as of April 3, 2023, with certain holders of the Class A Debts (the "Class A RSA") and that certain restructuring support agreement, dated as of April 3, 2023 with certain holders of the Class C Debts (the "Class C RSA" and together with the Class A RSA, the "Evergrande RSAs"); (ii) Scenery Journey entered into that certain restructuring support agreement, dated as of April 3, 2023, with certain holders of the Scenery Journey Existing Notes (the "Scenery Journey RSA"); and (iii) Tianji entered into that certain restructuring support agreement, dated as of April 3, 2023, with certain holders of the Tianji Existing Debts (the "Tianji RSA", and together with the Evergrande RSAs and the Scenery Journey RSA, the "RSAs").[11]

28.     The RSAs set out the terms on which the parties thereto would assist in and facilitate the implementation of a restructuring of certain of the Group's Existing Debts

---

[10] In addition, the Debtors have subsequently retained Deloitte Advisory (Hong Kong) Limited to assist with the preparation of certain Reports set out at Schedule 2 and Schedule 3 of the respective Explanatory Statements. Furthermore, the Group has appointed Maples and Calder (Hong Kong) LLP, Maples and Calder (BVI) LLP, and Maples and Calder (Cayman) as advisors to the Group as to matters of BVI and Cayman law.

[11] The summary of the RSAs provided herein is qualified in its entirety by reference to the RSAs themselves.  In the case of any conflict between the summary provided herein and the RSAs, the RSAs will govern in all respects.

(the "Restructuring") via a scheme of arrangement with respect to Evergrande in Hong Kong (the "Evergrande Hong Kong Scheme"), a scheme of arrangement with respect to Tianji in Hong Kong (the "Tianji Hong Kong Scheme", and together with the Evergrande Hong Kong Scheme, the "Hong Kong Schemes"), and a scheme of arrangement with respect to Scenery Journey in the British Virgin Islands (the "Scenery Journey BVI Scheme", and together with the Hong Kong Schemes, the "Schemes") and these Chapter 15 Cases.[12]

29.    Under the terms of the Evergrande RSAs, the Scheme Creditors will receive, among other things, certain rights and interests in new consideration to be distributed to Scheme Creditors (and/or their designated recipients, as applicable) under and pursuant to the terms of the Evergrande Hong Kong Scheme.

30.    As of July 31, 2023, certain Class A Creditors holding an aggregate principal amount of approximately $12.3 billion of the Class A Debt (representing approximately 86.5% of the aggregate outstanding principal amount of all Class A Debt) and certain Class C Creditors holding an aggregate principal amount of approximately $5.0 billion of the Class C Debt (representing approximately 39.6% of the aggregate outstanding principal amount of all Class C

---

[12] I understand that in addition to the Evergrande Hong Kong Proceeding, Evergrande is also involved in a proceeding (the "Cayman Proceeding") before the Grand Court of the Cayman Islands (the "Cayman Court"), pursuant to section 86 of Cayman Islands Companies Act, which contemplates a parallel linked and inter-conditional Cayman Islands scheme of arrangement for Evergrande (the "Evergrande Cayman Scheme"). The Evergrande Hong Kong Scheme and the Evergrande Cayman Scheme are parallel linked and inter conditional, such that they both reflect the same economic restructuring of the same outstanding obligations of Evergrande, and are proposed under substantially the same terms albeit in different jurisdictions and to be approved under a different Act/Ordinance. Both the sanctioning of the Evergrande Hong Kong Scheme and the Evergrande Cayman Scheme are required conditions to Evergrande's successful reorganization and are proceeding in parallel. If either the Evergrande Cayman Scheme or the Evergrande Hong Kong Scheme is not sanctioned by the relevant court, I believe the restructuring of Evergrande's liabilities will fail to become effective under the terms of the current Restructuring proposal. Evergrande is pursuing the separate Evergrande Cayman Scheme in addition to the Evergrande Hong Kong Scheme to ensure that the Restructuring with respect to Evergrande is recognized in the jurisdiction where Evergrande is incorporated. At this time, the Debtors have decided to seek recognition only of the Evergrande Hong Kong Proceeding and not the Evergrande Cayman Proceeding, but reserve all rights to seek recognition of the Evergrande Cayman Proceeding at a later date.

Debt) (such holders, in the aggregate, representing more than seventy-five percent (75%) of the Evergrande Existing Debts) had acceded to the Evergrande RSAs.

### III. Description of the Evergrande Hong Kong Scheme and Issuance of the Evergrande New Instruments[13]

31.    Under the Evergrande Hong Kong Scheme, Evergrande seeks to restructure its liabilities under the Evergrande Existing Debts.  The effect of the Evergrande Hong Kong Scheme will be, subject to the terms of the Evergrande Hong Kong Scheme, to release the claims of creditors of Evergrande who have claims under the Evergrande Existing Debts (the "Scheme Creditors") against Evergrande, and the relevant Subsidiary Guarantors as the obligors under the Class A Debts in respect of the liability of the Evergrande and the Subsidiary Guarantors, among other things, arising directly or indirectly pursuant to, under, or in connection with the Evergrande Existing Debts.

32.    In return, each applicable Scheme Creditor may elect one of the following options for consideration in accordance with the terms of the Evergrande Hong Kong Scheme (the "Scheme Consideration"):

i.    Option 1:  Scheme Creditors can exchange their claims for new notes to be issued by the Debtor at a 1:1 conversion ratio (the "A1/C1 Notes").  The A1/C1 Notes will comprise three tranches, with tenors of 10 to 12 years, and will be repaid over time at interest rates of between 2.0% p.a. and 3.0% p.a. if all interests are paid in cash (and between 3.0% p.a. and 4.0% p.a. if any portion of interests is paid in kind).  The A1/C1 Notes will be issued pursuant to and governed by indentures governed by New York Law; and

ii.    Option 2:  Scheme Creditors can elect to exchange their claims for either of the following:

---

[13] The summaries of the Evergrande Hong Kong Scheme and the Evergrande New Instruments provided herein are qualified in their entirety by reference to the Evergrande Hong Kong Scheme and the applicable indentures or trust deeds with respect thereto (the "Evergrande New Note Indentures").  In the case of any conflict between the summaries provided herein and the Evergrande Hong Kong Scheme or the Evergrande New Note Indentures, the Evergrande Hong Kong Scheme or the Evergrande New Note Indentures, as applicable, will govern in all respects.

a. New notes to be issued by Evergrande with tenors of five to nine years (the "A2/C2 Notes" and together with the A1/C1 Notes, the "Evergrande New Notes");

b. A package of five equity-linked instruments, which are either secured over, linked to, mandatorily exchangeable into, or mandatorily convertible into (as applicable) listed shares of Evergrande, EVPS, or NEV (the "A2/C2 Package" and together with the Evergrande New Notes, the "Evergrande New Instruments"); or

c. A combination of the A2/C2 Notes and the A2/C2 Package.

33.    In particular, Evergrande will be issuing Evergrande New Instruments on the Evergrande Hong Kong Scheme's Restructuring Effective Date, or the Interim Distribution Date or the Final Distribution Date (each as defined in the Evergrande Hong Kong Scheme), as applicable, including:

i.    The A1/C1 Notes, consisting of the following:

a. Tranche A:  Notes bearing interest at 2/3% p.a. due 10 years from the earlier of (i) October 1, 2023 or (ii) the applicable Restructuring Effective Date (the "Evergrande Reference Date") with an original principal amount equal to the applicable Scheme Creditors' Entitlements (as defined in the Evergrande Explanatory Statement) multiplied by $3.0 billion, to be issued by Evergrande, guaranteed by certain subsidiaries of Evergrande (the "Evergrande New Notes Guarantors") with respect to the A1 Notes only;

b. Tranche B:  Notes bearing interest at 2.5/3.5% due 11 years from the Evergrande Reference Date with an original principal amount equal to the applicable Scheme Creditors' Entitlements multiplied by $3.0 billion, to be issued by Evergrande, guaranteed by the Evergrande New Notes Guarantors with respect to the A1 Notes only; and

c. Tranche C:  Notes bearing interest at 3/4% due 12 years from the Evergrande Reference Date with an original principal amount equal to the applicable Scheme Creditors' Entitlements, minus the sum of the principal amounts of the notes in Tranches A and B above, to be issued by Evergrande, guaranteed by the Evergrande New Notes Guarantors with respect to the A1 Notes only;

ii.    The A2/C2 Package, consisting of the following equity-linked instruments and notes:

a. EVPS MEBs:  Bonds exchangeable into ordinary shares of EVPS at an exchange rate of HK$2.30 per share, mandatorily exchangeable 24 months from

the Evergrande Reference Date with an original principal sum amount of approximately $689 million, to be issued by Evergrande;

b.   <u>NEV MEBs</u>:  Bonds exchangeable into ordinary shares of NEV at an exchange rate of HK$3.84 per share, mandatorily exchangeable 24 months from the Evergrande Reference Date with an original principal sum amount of approximately $3.125 billion, to be issued by Evergrande;

c.   <u>CEG MCBs</u>:  Bonds exchangeable into ordinary shares of Evergrande at an exchange rate of HK$0.5775 per share, mandatorily exchangeable five years from the Evergrande Reference Date with an original principal sum amount of approximately $418 million, to be issued by Evergrande;

d.   <u>A2 EVPS SLNs Tranche A</u>:  Notes bearing interest at 5/6% due five years from the Evergrande Reference Date with an original principal amount of $550 million to be issued by Evergrande, guaranteed by the Evergrande New Notes Guarantors and secured by, among other things, charge over certain ordinary shares of EVPS;

e.   <u>A2 EVPS SLNs Tranche B</u>:  Notes bearing interest at 5.5/6.5% due six years from the Evergrande Reference Date with an original principal amount of $550 million to be issued by Evergrande, guaranteed by the Evergrande New Notes Guarantors and secured by, among other things, charge over certain ordinary shares of EVPS;

f.   <u>A2 NEV SLNs Tranche A</u>:  Notes bearing interest at 5/6% due five years from the Evergrande Reference Date with an original principal amount of $600 million to be issued by Evergrande, guaranteed by the Evergrande New Notes Guarantors and supported by, among other things, securities account(s) holding certain ordinary shares of NEV subject to certain account control or custody arrangement(s);

g.   <u>A2 NEV SLNs Tranche B</u>:  Notes bearing interest at 5.5/6.5% due six years from the Evergrande Reference Date with an original principal amount of $750 million to be issued by Evergrande, guaranteed by the Evergrande New Notes Guarantors and supported by, among other things, securities account(s) holding certain ordinary shares of NEV subject to certain account control or custody arrangement(s);

h.   <u>C2 EVPS SLNs Tranche A</u>:  Notes bearing interest at 6/7% due seven years from the Evergrande Reference Date with an original principal amount of $150 million to be issued by Evergrande, secured by, among other things, charge over certain ordinary shares of EVPS;

i.   <u>C2 EVPS SLNs Tranche B</u>:  Notes bearing interest at 6.5/7.5% due eight years from the Evergrande Reference Date with an original principal amount of $150 million to be issued by Evergrande, secured by, among other things, charge over certain ordinary shares of EVPS;

j.  <u>C2 NEV SLNs Tranche A</u>:  Notes bearing interest at 6/7% due seven years from the Evergrande Reference Date with an original principal amount of $500 million to be issued by Evergrande, supported by, among other things, securities account(s) holding certain ordinary shares of NEV subject to certain account control or custody arrangement(s); and

k.  <u>C2 NEV SLNs Tranche B</u>:  Notes bearing interest at 6.5/7.5% due eight years from the Evergrande Reference Date with an original principal amount of $650 million to be issued by Evergrande, supported by, among other things, securities account(s) holding certain ordinary shares of NEV subject to certain account control or custody arrangement(s);

iii.  The Plain A2 Notes, consisting of the following:

a.  <u>Tranche A</u>:  Notes bearing interest at 5/6% due five years from the Evergrande Reference Date with an original principal amount equal to the proportion of the Total Entitlements (as defined in the Evergrande Explanatory Statement) to be distributed as the Plain A2 Notes in the A2 Notes (as defined below) multiplied by $500 million to be issued by Evergrande, guaranteed by the Evergrande New Notes Guarantors and secured by charges over ordinary shares of certain Evergrande New Notes Guarantors;

b.  <u>Tranche B</u>:  Notes bearing interest at 5.5/6.5% due six years from the Evergrande Reference Date with an original principal amount equal to the proportion of the Total Entitlements to be distributed as the Plain A2 Notes in the A2 Notes multiplied by $650 million to be issued by Evergrande, guaranteed by the Evergrande New Notes Guarantors and secured by charges over ordinary shares of certain Evergrande New Notes Guarantors;

c.  <u>Tranche C</u>:  Notes bearing interest at 6/7% due seven years from the Evergrande Reference Date with an original principal amount equal to the proportion of the Total Entitlements to be distributed as the Plain A2 Notes in the A2 Notes multiplied by $3.8 billion to be issued by Evergrande, guaranteed by the Evergrande New Notes Guarantors and secured by charges over ordinary shares of certain Evergrande New Notes Guarantors; and

d.  <u>Tranche D</u>:  Notes bearing interest at 6.5/7.5% due eight years from the Evergrande Reference Date with an original principal amount equal to the Total Entitlements to be distributed as the Plain A2 Notes, minus the sum of the principal amounts of the notes in Tranches A, B and C above, to be issued by Evergrande, guaranteed by the Evergrande New Notes Guarantors and secured by charges over ordinary shares of certain Evergrande New Notes Guarantors; and

iv.  The Forced A2 Notes (together with the Plain A2 Notes, the "<u>A2 Notes</u>"), consisting of the following:

    a. <u>Tranche A</u>: Notes bearing interest at 5/6% due five years from the Evergrande Reference Date with an original principal amount equal to the proportion of the Total Entitlements (as defined in the Evergrande Explanatory Statement) to be distributed as the Plain A2 Notes in the A2 Notes (as defined below) multiplied by $500 million to be issued by Evergrande, guaranteed by the Evergrande New Notes Guarantors and secured by charges over ordinary shares of certain Evergrande New Notes Guarantors;

    b. <u>Tranche B</u>: Notes bearing interest at 5.5/6.5% due six years from the Evergrande Reference Date with an original principal amount equal to the proportion of the Total Entitlements to be distributed as the Plain A2 Notes in the A2 Notes multiplied by $650 million to be issued by Evergrande, guaranteed by the Evergrande New Notes Guarantors and secured by charges over ordinary shares of certain Evergrande New Notes Guarantors;

    c. <u>Tranche C</u>: Notes bearing interest at 6/7% due seven years from the Evergrande Reference Date with an original principal amount equal to the proportion of the Total Entitlements to be distributed as the Plain A2 Notes in the A2 Notes multiplied by $3.8 billion to be issued by Evergrande, guaranteed by the Evergrande New Notes Guarantors and secured by charges over ordinary shares of certain Evergrande New Notes Guarantors; and

    d. <u>Tranche D</u>: Notes bearing interest at 6.5/7.5% due eight years from the Evergrande Reference Date with an original principal amount equal to the Total Entitlements to be distributed as the Plain A2 Notes, minus the sum of the principal amounts of the notes in Tranches A, B and C above, to be issued by Evergrande, guaranteed by the Evergrande New Notes Guarantors and secured by charges over ordinary shares of certain Evergrande New Notes Guarantors; and

v. The C2 Notes, consisting of the following:

    a. <u>Tranche A</u>: Notes bearing interest at 6/7% due seven years from the Evergrande Reference Date with an original principal amount of $200 million to be issued by Evergrande;

    b. <u>Tranche B</u>: Notes bearing interest at 6.5/7.5% due eight years from the Evergrande Reference Date with an original principal amount of $2.74 billion to be issued by Evergrande; and

    c. <u>Tranche C</u>: Notes bearing interest at 7/8% due nine years from the Evergrande Reference Date with an original principal amount of $650 million to be issued by Evergrande.

34. Evergrande Scheme Creditors will receive the form of Scheme Consideration which they elect to receive in an amount equal to the value of their relevant claims or entitlement,

subject to the adjustment and reallocation process set out within the terms of the Evergrande Hong Kong Scheme.

35. I understand that in exchange for the compromises set forth in the Evergrande Hong Kong Scheme and the Scheme Consideration:

i. The Class A Debts will be fully and finally discharged and released together with any obligations related thereto of the Group, the Evergrande Subsidiary Guarantors[14] and the Evergrande Subsidiary Pledgors[15] in connection therewith;

ii. Evergrande's obligations under the Class C Debts will have been fully and finally discharged and released, however, any other obligors, guarantors, security or collateral pledgors, or other Credit Support providers of or in respect of a Class C Debt, will not be released of their obligations thereunder;

iii. The Ancillary Claims[16] with respect to the Evergrande Hong Kong Scheme will have been fully and finally released; and

---

[14]The "Evergrande Subsidiary Guarantors" are certain subsidiaries of Evergrande which have guaranteed the Evergrande Existing Notes. There are approximately 13 Evergrande Subsidiary Guarantors, each of whom is identified in Schedule 4 of the Evergrande Hong Kong Scheme.

[15]The "Evergrande Subsidiary Pledgors" are certain subsidiaries of Evergrande which have pledged, as the case may be, all the capital stock of Evergrande Subsidiary Guarantors held by Evergrande or the relevant Evergrande Subsidiary Pledgor, in order to secure the obligations under the Evergrande Existing Notes. The Evergrande Subsidiary Pledgors are: (a) ANJI (BVI) Limited (安基(BVI)有限公司); (b) Fengyu (BVI) Limited (丰域(BVI)有限公司); (c) Pyramid Wealth Holdings Limited; (d) Value Depot Holdings Limited; and (e) Yitong (BVI) Limited (亿通(BVI)有限公司).

[16]"Ancillary Claims" means (capitalized terms as defined in the Evergrande Hong Kong Scheme) any Claim by a Scheme Creditor against a Released Person under or in respect of the Existing Finance Documents arising as a result of effecting, adhering to or complying with the releases in Clauses 28.2(a)(i) and 28.2(a)(ii) of the Schemes (excluding for the avoidance of doubt any Claim in respect of any Liability (i) of any Released Person which arises as a result of a failure to comply with any of the terms of the Schemes or any Restructuring Document (including but not limited to the New Instruments Document) and (ii) arising from or in connection with any Excluded Liability or Excluded Collateral). The "Released Persons" with respect to the Evergrande Hong Kong Scheme are (capitalized terms as defined in the Evergrande Hong Kong Scheme): (i) the Company, the Existing Notes Subsidiary Pledgors, the Existing Notes Subsidiary Guarantors and the Group, (ii) the Existing Notes Trustee, the Existing Notes Collateral Agent, the Existing Notes Depositary, the Existing Notes Paying and Transfer Agent and Registrar, (iii) the New Instruments Depositary, the New Instruments Paying and Transfer Agent and Registrar, and the New Instruments Trustee, and the New Instruments Collateral Agent, (iv) the Holding Period Trustee, (v) the Exchange and Conversion Agent, (vi) the Escrow Agent, (vii) the Account Bank, (viii) the Information Agent, (ix) the Scheme Administrators; (x) the Scheme Adjudicators, (xi) the CEG AHG (including each CEG AHG member's respective managers and investment managers' and investment advisors' Affiliates and funds and in each case, including any of its respective directors, managers or officers), (xii) the Advisors and (xiii) the AHG Advisors; and, regarding each of the above, includes each of their respective predecessors, successors and assigns (where applicable) and their respective Personnel in their capacities as such, and "Released Person" shall be construed accordingly.

19

iv. The Restructuring Claims[17] with respect to the Evergrande Hong Kong Scheme will have been fully and finally released.

36. In connection with the releases described in the immediately preceding paragraphs, Evergrande will, for and on behalf of the Scheme Creditors, execute applicable deeds of releases and the respective rights and the pre-scheme obligations of persons affected by the Evergrande Hong Kong Scheme will terminate (subject to the exclusion of certain liabilities and collateral as noted herein and in the Evergrande Explanatory Statement).

37. Additional information about the Evergrande Hong Kong Scheme is set forth in the explanatory statement for the Evergrande Hong Kong Scheme (as supplemented from time to time, the "Evergrande Explanatory Statement").[18]

38. I understand that if the Evergrande Hong Kong Scheme is approved by the requisite majorities of creditors and sanctioned by the Hong Kong Court and a copy of the Sanction Order (as defined herein) is filed with the Hong Kong Registrar of Companies (the "Hong Kong Registrar"), the Evergrande Hong Kong Scheme will bind all applicable Scheme Creditors, including those creditors who voted in favor of the Evergrande Hong Kong Scheme, those creditors who voted against it, and those creditors who did not vote at all.

## IV.    Commencement of the Evergrande Hong Kong Proceeding

39. On July 12, 2023, Evergrande filed a petition with the Hong Kong Court, a true and correct copy of which is attached to the Hong Kong Counsel Declaration as Exhibit A (the "Scheme Petition"), commencing the Evergrande Hong Kong Proceeding, and seeking, among other things, an order directing Evergrande to convene meetings in respect of the

---

[17] "Restructuring Claims" means, broadly, any claim against a Released Person in relation to the negotiation or implementation of the Restructuring, except for fraud, willful default or willful misconduct.

[18] A copy of the Evergrande Explanatory Statement, as made available to applicable Scheme Creditors on July 31, 2023 (following the Convening Hearing (as defined herein)) and as supplemented on August 16, 2023, is attached as Exhibit D to the Hong Kong Counsel Declaration.

Evergrande Hong Kong Scheme (the "Scheme Meetings") for the applicable Scheme Creditors, which are scheduled to occur on August 23, 2023 in Hong Kong, and requesting a convening hearing (the "Convening Hearing").

40.     On July 14, 2023, Evergrande issued a practice statement letter to the relevant Scheme Creditors informing such Scheme Creditors that the Debtor had filed the Scheme Petition and that the Convening Hearing had been scheduled for July 24, 2023 (the "Practice Statement Letter"). The Practice Statement Letter is attached to the Hong Kong Counsel Declaration as Exhibit B.

41.     Following the Convening Hearing, which occurred on July 24, 2023, the Hong Kong Court entered the order (the "Convening Order") scheduling the Scheme Meetings for August 23, 2023[19] and scheduling the hearing to sanction the Evergrande Hong Kong Scheme for September 5-6, 2023 at 10:00 a.m. (prevailing Hong Kong Time) (the "Sanction Hearing"). The Convening Order is attached to the Hong Kong Counsel Declaration as Exhibit C.

42.     On July 31, 2023, and in accordance with the Convening Order and section 671 of the Hong Kong Companies Ordinance, applicable notice of the Scheme Meetings substantially in the form set forth in the Evergrande Explanatory Statement (the "Scheme Meetings Notice"), the Evergrande Hong Kong Scheme, the Solicitation Package, and the Evergrande Explanatory Statement were provided to the applicable Scheme Creditors by Morrow Sodali Limited, in its capacity as Evergrande's notification and information agent for the Evergrande Hong Kong Scheme ("Morrow Sodali") and to Blocked Scheme Creditors (as defined in the Evergrande Hong Kong Scheme) by GLAS Trustees Limited ("GLAS"). Such documents were provided or made

---

[19] As described in the supplemented Evergrande Explanatory Statement provided to the Scheme Creditors on August 16, 2023, Evergrande announced that the Scheme Meetings are intended to be adjourned upon commencement thereof to August 28, 2023.

available: (a) on the following website maintained by Morrow Sodali: https://projects.morrowsodali.com/evergrande; (b) on Evergrande's website: https://www.evergrande.com; (c) through the Euroclear Bank SA/NV and Clearstream Banking S.A. clearing systems, as applicable; and (d) by causing Morrow Sodali to send the notices via electronic mail to each Scheme Creditor for whom Morrow Sodali has contact information or by causing GLAS to send the notice via electronic mail to each Blocked Scheme Creditor. In addition, the Scheme Creditors were notified of the Scheme Meetings through announcements on HKEX and the Singapore Exchange Securities Trading Limited (the "SGX-ST").

43.    In addition, the Hong Kong Court authorized and appointed Patrick Cowley of KPMG Advisory (Hong Kong) Limited as the Scheme Chairperson.

44.    The provisions of the Convening Order ensured that the applicable Scheme Creditors were notified properly of the Scheme Meetings.  As noted, pursuant to the terms of the Convening Order, in advance of the Scheme Meetings, Evergrande, through Morrow Sodali or GLAS, as applicable, will provide access to the Evergrande Explanatory Statement and other documents related to the Evergrande Hong Kong Scheme enumerated in the Convening Order to the applicable Scheme Creditors, in addition to notice through the applicable clearing systems, through announcement on the HKEX and SGX-ST, as applicable, and via electronic mail to each Scheme Creditor for whom Morrow Sodali has contact information.  All applicable Scheme Creditors may have the opportunity to attend, be heard, and vote at the Scheme Meetings, in person, by authorized representative (if a corporate entity), or by proxy and to ask questions regarding the proposed Evergrande Hong Kong Scheme.

45.    Further, if the Evergrande Hong Kong Scheme is approved at the Scheme Meetings, Evergrande, through Morrow Sodali or GLAS, as applicable, will provide notice to the applicable

Scheme Creditors, informing them that the Evergrande Hong Kong Scheme was approved and an upcoming Sanction Hearing is scheduled. Such Scheme Creditors will also be informed that they can attend and raise any issues or objections at the Sanction Hearing. In anticipation of the Sanction Hearing, the Scheme Chairperson will file a report on the Scheme Meetings.

46.     Assuming that the Hong Kong Court deems it appropriate to enter an order sanctioning the Evergrande Hong Kong Scheme following the Sanction Hearing (the "Sanction Order"), the Sanction Order is expected, among other things, to (i) sanction and approve consummation of the Evergrande Hong Kong Scheme and (ii) authorize the Restructuring set forth in the Evergrande Hong Kong Scheme. Upon delivery of the Sanction Order to the Hong Kong Registrar, and subject to certain additional conditions (such date upon which such conditions are satisfied, the Evergrande Hong Kong Scheme's "Restructuring Effective Date"), the Evergrande Hong Kong Scheme will become effective and thereby binding on all applicable Scheme Creditors.

47.     On August 14, 2023, Evergrande's board of directors (the "Board") approved a resolution, a copy of which is attached hereto as **Exhibit A** (the "Board Resolution"), appointing me as the Foreign Representative for Evergrande and authorizing me to commence the Chapter 15 Case for Evergrande.

48.     Accordingly, the historical and expected timeline for the Evergrande Hong Kong Proceeding and these Chapter 15 Cases is summarized below.

| Key Events | Date |
|---|---|
| Convening Hearing | July 24, 2023 |
| Convening Order | July 24, 2023 |
| Chapter 15 Petition Date | August 17, 2023 |
| Scheme Meetings | August 23, 2023 and August 28, 2023 |
| Sanction Hearing | September 5 - 6, 2023 |
| Proposed Chapter 15 Recognition Hearing | September 20, 2023 |
| Anticipated Restructuring Effective Date | October 2, 2023 |

49.     As the Evergrande Hong Kong Proceeding is ongoing in parallel to these Chapter 15 Cases, with the Scheme Meetings scheduled for August 23 and August 28, 2023, and the Sanction Hearing expected to be heard on or about September 5 - 6, 2023, a supplemental declaration will be filed to update the Court on the status of the Evergrande Hong Kong Proceeding and the outcomes of the Scheme Meetings and the Sanction Hearing, as applicable, in advance of the Recognition Hearing.

### STATUS AS FOREIGN REPRESENTATIVE AND OF FOREIGN PROCEEDINGS SATISFIES BANKRUPTCY CODE PROVISIONS

**I.     Appointment as Foreign Representative and Filing of the Evergrande Chapter 15 Petition**

50.     I have been informed by Evergrande's legal advisors that a Chapter 15 proceeding is commenced by the filing of a petition for recognition (and related documents) by the "foreign representative." I was further informed that under section 1516(a) of the Bankruptcy Code, a bankruptcy court may presume that the person petitioning for Chapter 15 recognition is a foreign representative if the decision or certificate from the foreign court so indicates. I understand that "foreign representative" is defined in section 101(24) of the Bankruptcy Code to mean:

> . . . a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

51.     I have been authorized by the Board Resolution to act as Evergrande's agent (the "Foreign Representative") in seeking any relief available to a "foreign representative" under Chapter 15 of the Bankruptcy Code, including, among other things, to seek recognition of the Scheme.

52.     In light of the statutory presumption embodied in section 1516(a) of the Bankruptcy Code noted above, the Bankruptcy Code's definition of "foreign representative," and the Board Resolution, I believe that I satisfy the requirements to serve as the Foreign Representative of the Evergrande Hong Kong Proceeding.

53.     Evergrande has property in the United States in the form of a retainer with the Evergrande's U.S. counsel, Sidley Austin LLP, which funds are held in a client trust account in New York, New York.   Moreover, Evergrande has submitted to New York jurisdiction under the Evergrande Existing Notes.   Therefore, on the date hereof, in my capacity as the Foreign Representative, I caused to be filed the Evergrande Chapter 15 Petition pursuant to sections 1504 and 1515 of the Bankruptcy Code commencing this Chapter 15 Case in the Southern District of New York, seeking recognition of the Evergrande Hong Kong Proceeding as a "foreign main proceeding," as such term is defined in section 1502(4) of the Bankruptcy Code, or in the alternative as a "foreign nonmain proceeding," as such term is defined in section 1502(5) of the Bankruptcy Code, and seeking other necessary or appropriate relief in support of the Evergrande Hong Kong Proceeding.

54.    I believe that recognizing me as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code and recognition of the Evergrande Hong Kong Proceeding as a "foreign main proceeding" or in the alternative as a foreign non-main proceeding is consistent with the purpose of Chapter 15 and will allow Evergrande to restructure in the most efficient manner without jeopardizing the creditors' rights.

55.    I believe that Evergrande's Chapter 15 Case will enable Evergrande to achieve the objectives of the Evergrande Hong Kong Scheme by (i) ensuring that the parties in interest to the Restructuring, including Evergrande and the Scheme Creditors are treated in the United States consistent with the intentions of the Evergrande Hong Kong Scheme; (ii) ensuring that the Restructuring is binding, valid, and enforceable in the United States; and (iii) minimizing the risk of litigation over any potential residual claims that might exist under the Evergrande Existing Debts or ancillary documents related to the Evergrande Existing Debts.

## II.    The Evergrande Hong Kong Proceeding Is a Foreign Main Proceeding

56.    For the reasons set forth below, I believe that the Evergrande Hong Kong Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code.

57.    I am informed that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code to mean:

> [C]ollective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Debtors are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation . . . .

11 U.S.C. § 101(23).

58.    I believe that the Evergrande Hong Kong Proceeding falls within the foregoing definition.    As more fully explained in the Hong Kong Counsel Declaration filed

contemporaneously herewith, the Evergrande Hong Kong Proceeding is (i) a collective judicial proceeding, (ii) in Hong Kong, and (iii) is governed by the Hong Kong statute applicable to schemes of arrangement, the Hong Kong Companies Ordinance (Chapter 622 of the Laws of Hong Kong).  In the Evergrande Hong Kong Proceeding, the Debtor's assets and affairs are subject to the control or supervision of the Hong Kong Court.  The purpose of the Evergrande Hong Kong Scheme and Evergrande Hong Kong Proceeding is to effectuate a restructuring of the Evergrande Existing Debts.  Specifically, the Scheme Creditors will release Evergrande and the applicable Subsidiary Guarantors, among others, from their respective obligations and liabilities under or in connection with the Evergrande Existing Debts and will receive their applicable share of the Scheme Consideration.

59.    I am also informed that section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding shall be recognized as a "foreign main proceeding" if the foreign proceeding is pending in the country where the debtor has "the center of its main interests" ("COMI").  I am informed that COMI is not defined in Chapter 15, but section 1516(c) of the Bankruptcy Code provides that "[i]n the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests."

60.    I believe that, while Evergrande's place of incorporation and location of its registered office is the Cayman Islands, the COMI of the Debtor is Hong Kong.  Factors supporting COMI in Hong Kong for the Debtor include:

(a)    **Limited Debtor Activity in the Cayman Islands**.  Notwithstanding that Evergrande is incorporated in the Cayman Islands, it does not conduct business in the Cayman Islands.  In fact, Evergrande is registered as an exempted company in the Cayman Islands and, pursuant to section 174 of the Cayman Companies Law, "[a]n exempted company shall not trade in the Islands with any person, firm or corporation except in furtherance of the

business of the exempted company carried on outside the Islands." Cayman Companies Law § 174.

(b) **Debtor Activities in Hong Kong**.  Evergrande is registered in Hong Kong under the now Part 16 of the Companies Ordinance and has a principal place of business in Hong Kong. It is listed, and has been listed since November 5, 2009, on the Main Board of the HKEX, and Evergrande's last shareholder meeting occurred on June 11, 2021 in Hong Kong.  Evergrande has no material operations and derives its income exclusively from dividend payments by its subsidiaries in order to service its offshore debts (including the Evergrande Class A Debts and Evergrande Class C Debts).  On a stand-alone basis, Evergrande's books and records are located in Hong Kong.  It files annual returns with the Hong Kong Companies Registry, and it has certain directors and employees based in Hong Kong, who currently focus on the restructuring of the Group's offshore debts.  The Evergrande Board authorized the retention of the Debtor's advisors, including its Hong Kong legal counsel, and was involved in the negotiation of the various documents involved in the restructuring and the Evergrande Hong Kong Scheme. Restructuring-related meetings and negotiations took place in Hong Kong or virtually with significant participations by Hong Kong parties, with six of the Evergrande Ad Hoc Group's sixteen members based in Hong Kong and the ad-hoc group's advisors Hong Kong-based or led.  Furthermore, there is an outstanding winding-up petition filed against Evergrande in Hong Kong,[20]  Scheme Meetings for the Evergrande Hong Kong Scheme will take place in Hong Kong, and the Hong Kong Court is overseeing the Evergrande Hong Kong Scheme by conducting the Convening Hearing and the Sanction Hearing.

(c) **Expectation and Support of Creditors**.  The offering memoranda of the January 2024 Notes, as an example, provided a Hong Kong address for notices and demands to Evergrande, stated that (i) Evergrande will maintain its financial statements in accordance with Hong Kong accounting principles, (ii) noted that Evergrande is listed on the HKEX and such listing shows Hong Kong as the location of Evergrande's main office and refers to the HKEX for interpretation of certain terms, (iii) noted that Evergrande's legal advisors are a Hong Kong-based law firm, (iv) noted that Evergrande is ultimately controlled by a Hong Kong permanent resident, (v) provided that copies of the applicable governing indentures will be available for inspection in Hong Kong, and (vi) informed creditors that Evergrande's auditor is a Hong Kong accounting firm.

---

[20] In addition to the winding-up petition, there are several proceedings against Evergrande in Hong Kong including (i) an arbitration filed in August 2022 against, *inter alia*, Evergrande claiming payment of HK$862.5 million by an investor of certain investments; and (ii) an arbitration filed in October 2022 against, *inter alia*, Evergrande claiming payment of RMB 127.7 million by another investor of certain investments.

Further, the Evergrande RSAs specifically disclosed the possibility of the commencement of a Hong Kong scheme of arrangement by Evergrande. Holders of approximately eighty-seven percent (87%) and forty percent (40%) of the Evergrande Class A Debts and Evergrande Class C Debts (respectively) expressly agreed to support a Hong Kong restructuring pursuant to the Evergrande RSAs. No Scheme Creditor has to date raised issues about the propriety of Hong Kong as the COMI of Evergrande or about any actions of management in proffering a Hong Kong COMI and establishment in Hong Kong.

## III.    Alternatively, the Evergrande Hong Kong Proceeding Is a Foreign Nonmain Proceeding

61.    In the event that the Court concludes that Evergrande's COMI is not Hong Kong, I believe that this Court should recognize the Evergrande Hong Kong Proceeding as a "foreign nonmain proceeding." I am informed that a foreign nonmain proceeding takes place in a jurisdiction that is not the entity's center of main interests, but where it has an "establishment," as defined as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. §§ 1502(2), (5).

62.    As set forth above, Evergrande has certain directors and employees based in Hong Kong who currently focus on the restructuring of the Group's offshore debts, and has advisors in Hong Kong who are involved in the restructuring. Evergrande's shares are listed in Hong Kong on the Main Board of the HKEX, Evergrande files annual returns with the Hong Kong Companies Registry, and, on a stand-alone basis, its books and records are located in Hong Kong.

## IV.    Statement Pursuant to Section 1515 of the Bankruptcy Code

63.    I am informed that section 1515 of the Bankruptcy Code provides, in pertinent part, as follows:

(a)    A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.

(b)    A petition for recognition shall be accompanied by—

29

        1)      a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

        2)      a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

        3)      in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

      (c)     A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the  foreign representative.

11 U.S.C. § 1515.

64.    As noted above, the Board Resolution appointing me as Foreign Representative for this Chapter 15 Case and authorizing me to commence this Chapter 15 Case is attached hereto as **Exhibit A**.[21]

65.    Pursuant to section 1515(c) of the Bankruptcy Code, I am aware of the definition of a "foreign proceeding" under section 101(23) of the Bankruptcy Code, and I believe that the Evergrande Hong Kong Proceeding is a "foreign proceeding" as defined therein.  I am aware of no other foreign proceedings with respect to Evergrande other than the Cayman Scheme.

*[Remainder of page intentionally left blank.]*

---

[21] Additionally, the Scheme Petition and the Convening Order are attached to the Hong Kong Counsel Declaration in Exhibits A and C, respectively.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 17, 2023

*/s/ Jimmy Fong*
Jimmy Fong
Foreign Representative
China Evergrande Group

**Exhibit A**

**Board Resolution**

本文中英对照，其中文译本仅供参考，如有歧义，概以英文版本为准。

<div align="center">

**CHINA EVERGRANDE GROUP**
(the "**Company**")
中国恒大集团

（简称"**本公司**"）

*(Incorporated in the Cayman Islands with limited liability)*
（于开曼群岛注册成立的有限公司）

</div>

**MINUTES OF A MEETING OF THE BOARD OF DIRECTORS OF THE COMPANY HELD AT   5:30 p.m. 14 AUGUST 2023 VIA TENCENT MEETING (THE "MEETING")**

本公司于 **2023** 年 **8** 月 **14** 日下午   **5：30**   点以腾讯视频会议的方式举行董事会会议（简称"本次会议"）之会议记录

Capitalised terms used but not otherwise defined in these minutes shall bear the respective meanings as ascribed to them in, or by reference to, the *Explanatory Statement* of the Company.

本会议记录中使用但未另行定义的术语应具有本公司《说明陈述》所赋予的相应含义。

**PRESENT** 出席者：

Mr Hui Ka Yan 許家印先生（Chairman 主席）

Mr Siu Shawn 肖恩先生（Director 董事）

Mr Shi Junping 史俊平先生（Director 董事）

Mr Liu Zhen 刘振先生（Director 董事）

Mr Qian Cheng 钱程先生（Director 董事）

Mr Liang Senlin 梁森林先生（Director 董事）

Mr Chau Shing Yim (David)周承炎先生（Director 董事）

Mr He Qi 何琦先生先生（Director 董事）

Ms Xie Hongxi 谢红希女士（Director 董事）

**IN ATTENDANCE** 列席者：

Mr Fong Kar Chun, Jimmy 方家俊先生（Company Secretary 公司秘书）

Mr Andrew Huang 黄贤贵先生（Vice president 公司副总裁）

Ms Constance Choy 蔡学雯女士(Partner, Sidley Austin 盛德合伙人)

Ms Carrie Li 李洁怡女士 (Partner, Sidley Austin 盛德合伙人)

Mr Christopher Cheng 郑钟汉先生 (Partner, Sidley Austin 盛德合伙人)

**1**     <u>CHAIRMAN OF THE MEETING</u> 本次会议主席

**IT WAS RESOLVED THAT** Mr Hui Ka Yan, who was present, be appointed chairman of the Meeting (the "**Chairman**").

现决议委任出席本次会议的许家印先生为本次会议主席（简称"**主席**"）。

**2**     <u>CONSTITUTION OF THE MEETING AND QUORUM</u> 本次会议章程与法定人数

**IT IS NOTED THAT** notice of the Meeting had been given to all the directors of the Company (each a "**Director**" and collectively the "**Directors**" or the "**Board**") and that a quorum of the Directors was present in accordance with the Company's Memorandum and Articles of Association (the "**Articles**"). Accordingly, the Chairman declared the Meeting duly constituted.

现注明本公司已向其全体董事（各自称为"**董事**"，统称为"**该等董事**"或"**董事会**"）发出本次会议通告，而且根据本公司的公司章程大纲细则（简称"**章程细则**"），出席的该等董事已达法定人数。因此，主席宣布本次会议正式召开。

**3**     <u>DECLARATIONS OF INTEREST</u> 利益申报

**IT IS NOTED THAT** each Director had confirmed that he had disclosed his interest (if any) in the Restructuring, the RSAs and/or the Restructuring Documents (as defined below), as required by the Articles or under any law applicable to the Company. None of the Directors was, as a result of such interests (if any), prohibited from being counted in the quorum and from voting in accordance with the Articles and the applicable laws.

现注明，各董事已确认其已根据章程细则或适用于本公司的任何法律的规定，披露其于该重组、该等重组支持协议及/或该等重组文件（定义见下文）中的利益（如有）。根据章程细则及适用法律，没有董事因涉及该等利益（如有）而被禁止计入法定人数或被禁止投票。

**4**     <u>PURPOSE OF THE MEETING AND BACKGROUND</u> 本次会议的目的及背景

4.1     **IT IS NOTED THAT**, at a Meeting of the Board of the Company held at 12PM 17 July 2023 (the "**July 17 Meeting**"), the Board noted, among other things, that owing to unexpected liquidity issues arising from the adverse impact of a number of factors including, principally, an adverse turn in the macroeconomic environment, the downturn in the Chinese real estate sector, and the effects of the COVID-19 pandemic, the Company and certain members of the group of companies comprising the Company and its subsidiaries (the "**Group**") are in default of certain of their obligations, and has been assessing its financial position and working with its legal and financial advisers to formulate an overall restructuring plan that takes into account the interests of its offshore and onshore creditors including consideration of the Restructuring of the Company's "Existing Debts" (as defined in the Minutes of the July 17 Meeting (the "**July 17 Minutes**")), and following such considerations, together with discussions with its principal stakeholders and assessment of the financial position of the Company and the Group, the Company intends to implement a restructuring of the Existing Debts by way of the "Schemes," which comprise

schemes of arrangement (i) pursuant to section 86 of the Cayman Islands Companies Act (2023 Revision) (the "**Cayman Scheme**"), and (ii) pursuant to section 670, 673, and 674 of the Companies Ordinance (Chapter 622 of the Laws of Hong Kong) (the "**Hong Kong Scheme**"), materially on the same terms as those set out in the Cayman Scheme and (iii) that the Hong Kong Scheme will be further subject to a recognition proceeding before a United States Bankruptcy Court (the "**U.S. Court**") pursuant to chapter 15 of the United States Bankruptcy Code (the "**Chapter 15 Recognition Proceeding**") and, (iv) if appropriate, proceedings before the High Court of the British Virgin Islands (the "**BVI Court**") for orders in aid of the Hong Kong Scheme (the "**BVI Part XIX Proceedings**") pursuant to Part XIX of the BVI Insolvency Act, 2023 (as amended (the "**BVI Insolvency Act**"), and further it was resolved, among other things, (i) that the Company's predominant activity since the commencement of restructuring negotiations has been restructuring, that those activities have been focused and conducted primarily in Hong Kong and that the Company believes that Hong Kong has become its centre of main interests, that its creditors agree, that no comparable restructuring process is available in the PRC and that if the scheme cannot be implemented the likely outcome will be insolvent liquidation, (ii) that the Restructuring and the entry into of the Restructuring Documents and the Proposed Documents (each as defined in the July 17 Minutes) and any associated transactions and documents are the commercial benefit and advantage of the Company, will promote the success of the Company and all relevant stakeholders including its creditors, and are in the best interests of the Company and the Group, and (iii) that the filing of the Petition dated 12 April 2023 which has been filed with the Cayman Court and the originating summons in respect of the Hong Kong Scheme dated 12 July 2023 filed with the Hong Kong Court were approved and ratified (capitalized terms each as defined in the July 17 Minutes).

现注明，在 2023 年 7 月 17 日中午 12 时的本公司董事会会议上（"**7 月 17 日会议**"），董事会注意到，出于意料之外的现金流问题（源于多项不利影响因素，主要包括宏观经济环境转差、中国房地产行业不景气及新冠肺炎大流行等），本公司及该集团若干成员公司（"**集团**"）未能履行其若干债务责任；董事会持续评估其财务状况，并与其法律及财务顾问合作制订整体重组计划，以考虑其境外及境内债权人的利益，包括对本公司的该等现有债务（如 7 月 17 日会议的会议纪要（"**7 月 17 日会议纪要**"）的定义）进行拟议重组的考虑；经考虑上述因素，连同与其主要利益相关者的讨论及对本公司及该集团财务状况的评估，本公司拟以"协议安排"的方式重组该等现有债务，其中包括 (i) 根据《开曼群岛公司法（2023 年修订版）》第 86 条进行的协议安排（简称"**开曼协议安排**"）； (ii) 根据香港法例第 622 章《公司条例》第 670 条、第 673 条及第 674 条进行的协议安排 （简称"**香港协议安排**"）， 香港协议安排的条款大致上与开曼协议安排的条款相同； (iii) 香港协议安排将进一步寻求美国破产法院（简称"**美国法院**"）根据《美国破产法》第 15 章进行的认可程序（简称"**第 15 章认可程序**"）；及 (iv)如适用，根据《2003 年英属维尔京群岛破产法（经修订）》（简称"**《BVI 破产法》**"）第 XIX 部在英属维尔京群岛高等法院（简称"**BVI 法院**"）寻求协助香港协议安排的法院命令（简称"**BVI 第 XIX 部法律程序**"）；以及，进一步决议包括(i)自重组协商开始以来，本公司的主要活动是重组。这些活动主要集中在香港并主要在香港进行。本公司认为香港已成为其主要利益中心，其债权人同意，在中国内地没有类似的重组程序，如果该协议安排无法实施，可能的结果将是破产清算；(ii)该重组及签订该等重组文件和该等拟议文件（请见 7 月 17 日会议纪要中的定义）以及任何关联交易和文件，都符合本公司的商业利益和优势，将促进本公司和包括其债权人在内的所有相关利益相关者的成功，并符合本公司和该集团的最佳利益；以及(iii)特此批准及追认向开曼法院提交日期为 2023 年 4 月 12 日的呈请书的递交，以及已向香港法院提交日期为 2023 年 7 月 10 日有关香港协议安排的原诉传票（大写的定义与 7 月 17 日会议纪要中的含义相同）。

4.2    **IT IS NOTED THAT** the Hong Kong Scheme (clause 44) and the Cayman Scheme (clause 44) note that a person appointed by resolution of the Directors of the Company shall be authorised or ratified to act as the representative of the Company on and in connection with any application for recognition and assistance in relation to the Hong Kong Scheme and the Cayman Scheme in any jurisdiction and under whatever law, including (without limitation) Chapter 15 of the US Bankruptcy Code and any other law derived from or similar to the UNCITRAL Model Law on Cross-Border Insolvency Proceedings.

现注明，根据香港协议安排（第 44 条）和开曼协议安排（第 44 条），本公司董事通过决议任命的人士应被授权或追认在任何司法辖区内、根据任何法律（包括（但不限于）《美国破产法》第 15 章以及源自或类似于联合国《贸易法委员会跨境破产程序示范法》的任何其他法律），申请承认和协助香港协议安排和开曼协议安排中担任本公司的代表。

## 5    THE RESOLUTIONS 决议

5.1    After due and careful consideration, **IT WAS UNANIMOUSLY RESOLVED** that:

经过适当和仔细的考虑，**一致决议**以下事项：

(a)    Mr Fong Kar Chun, Jimmy, the Company Secretary, is appointed as the attorney-in-fact for and on behalf of the Company by way of power of attorney under the seal and is authorised in the name and for the account of the Company to:

本公司秘书，方家俊先生，经加盖本公司印鉴的授权委托书被授权为事实律师以代为或代表本公司，并且被授权以本公司的名义：

(i)    act as the Company's "foreign representative" (as defined in section 101 of the United States Bankruptcy Code) in respect of the Chapter 15 Recognition Proceeding (the "**Chapter 15 Foreign Representative**");

就第 15 章认可程序担任本公司的"外国代表"（定义见《美国破产法》第 101 条）（简称"**第 15 章外国代表**"）；

(ii)    seek any relief available to a foreign representative pursuant to the United States Bankruptcy Code in the Chapter 15 Recognition Proceeding;

根据《美国破产法》第 15 章认可程序，寻求外国代表可获得的任何救济；

(iii)    execute and verify or certify a petition under Chapter 15 of the United States Bankruptcy Code, and to cause the same to be filed in the U.S. Court in such form or forms as the Chapter 15 Foreign Representative may approve; and

根据《美国破产法》第 15 章执行、核实或证明呈请书，并促使他人将该呈请书以第 15 章外国代表批准的一种或多种形式提交予美国法院；及

(iv)    execute and file any and all petitions, schedules, motions, lists, applications, pleadings, declarations and other papers, and to take any and all further actions

which the Chapter 15 Foreign Representative or the Company's legal counsel may deem necessary or appropriate to seek the voluntary relief available under Chapter 15 of the United States Bankruptcy Code (the "**Chapter 15 Documents**"), and to take any further acts and deeds which any of them deem necessary, proper, or desirable in connection with the Chapter 15 Recognition Proceeding;

签订及提交任何和所有呈请书、附表、动议、清单、申请、诉状、声明和其他文件；并采取第 15 章外国代表或本公司法律顾问认为必要或适当的任何和所有进一步行动，以寻求根据《美国破产法》第 15 章提供的自愿救济（简称"**第 15 章文件**"），并就第 15 章认可程序采取其任何一位认为必要、适当或适宜的任何进一步行为和行动；

(b)     Each Director and any director of the Company appointed following the passing of this resolution (insofar as they remain a director of the Company) or any person appointed by resolution of the Directors (by way of power of attorney under the seal or otherwise) be, and is hereby authorised in the name and for the account of the Company to:

每一位董事和任何本公司在本决议做出之后聘用的董事（只要其仍担任本公司董事一职），或者任何经本公司董事会决议（经加盖本公司印鉴或其他方式的授权委托书）授权的人，被特此授权以公司名义和为了本公司的目的：

(i)     act as the Company's "foreign representative" (as defined in section 466(1) of the BVI Insolvency Act) (the "**Part XIX Foreign Representative**") in respect of the BVI Part XIX Proceedings;

就 BVI 第 XIX 部法律程序担任本公司的"外国代表"（定义见《BVI 破产法》第 466(1)条）（简称"**第 XIX 部外国代表**"）；

(ii)    seek any relief available to a foreign representative pursuant to the BVI Insolvency Act in the Part XIX Proceedings;

根据《BVI 破产法》第 XIX 部法律程序，寻求外国代表可获得的任何救济；

(iii)   execute and verify or certify an application or claim under Part XIX of the BVI Insolvency Act, and to cause the same to be filed in the BVI Court in such form or forms as the Part XIX Foreign Representative may approve; and

根据《BVI 破产法》第 XIX 部执行、核实或证明申请或索赔，并促使他人将该呈请书以第 XIX 部外国代表批准的一种或多种形式提交予 BVI 法院；及

(iv)    execute and file any and all applications, claims, pleadings and other papers, and to take any and all further actions which the Part XIX Foreign Representative or the Company's legal counsel may deem necessary or appropriate to seek the relief available under Part XIX of the BVI Insolvency Act (the "**Part XIX Documents**"), and to take any further acts and deeds which any of them deem necessary, proper, or desirable in connection with the BVI Part XIX Proceedings;

签订及提交任何和所有申请、索赔、诉状和其他文件；并采取第 XIX 部外国代表或本公司法律顾问认为必要或适当的任何和所有进一步行动，以寻求根据《BVI 破产法》

第 XIX 部提供的救济（简称"**第 XIX 部文件**"）；并就 BVI 第 XIX 部法律程序采取其任何一位认为必要、适当或适宜的任何进一步行为和行动；

(c)     Each Director and any director of the Company appointed following the passing of this resolution (insofar as they remain a director of the Company) or any person appointed by resolution of the Directors (by way of power of attorney under the seal or otherwise) be, and is hereby authorised in the name and for the account of the Company to act as the Company's "foreign representative" (as defined in any other law derived from or similar to the UNCITRAL Model Law on Cross-Border Insolvency Proceedings) (together with the Chapter 15 Foreign Representative and the Part XIX Foreign Representative, such person with respect to such proceeding, the "**Foreign Representative**") on and in connection with any application for recognition and assistance in relation to the Hong Kong Scheme and the Cayman Scheme in any jurisdiction and under whatever law;

每一位董事和任何本公司在本决议做出之后聘用的董事（只要其仍担任本公司董事一职），或者任何经本公司董事会决议（经加盖本公司印鉴或其他方式的授权委托书）授权的人，被特此授权以公司名义和为了本公司的目的在任何司法辖区内、根据任何法律，申请承认和协助香港协议安排和开曼协议安排中担任本公司的"外国代表"（定义源自或类似于联合国《贸易法委员会跨国界破产程序示范法》的任何其他法律）（在该等程序中的该人士，连同第 15 章外国代表及第 XIX 部外国代表统称为"**外国代表**"）；

(d)     a *Power of Attorney* in the form as annexed to the minutes in favour of the said attorney-in-fact referred to in the foregoing resolutions and evidencing such appointment be and is hereby approved and the *Power of Attorney* be executed under seal by any two Directors or one Director and the Company Secretary;

本会议记录所附形式的授权委托书，以上述决议中提到的事实律师为受益人，并证明该等委任命的事宜，已获批准；授权委托书须加盖本公司印鉴并由任何两名董事或一名董事及本公司秘书进行签署；

(e)     in connection with, or to carry out the actions contemplated by the resolutions herein, the Foreign Representative and any Director be, and hereby is, authorised in the name and on behalf of the Company to do such further acts and things as the Foreign Representative or such Director shall deem necessary or appropriate, including, without limitation, do and perform (or cause to be done and performed), in the name and on behalf of the Company all such acts and to sign, make, execute, deliver, post, publish, announce, issue or file (or cause to be signed, made, executed, delivered, issued or filed) with any person including any court, governmental authority or agency, all such agreements, documents, instruments, affidavits, affirmations, certificates (including those required in connection with any legal opinion to be given in relation to the issuance of the New Instruments and/or the payment-in-kind notes comprising the Consent Fee and all necessary actions to perfect any security created or to be created, under the Restructuring Documents and the Proposed Documents) and power of attorney under seal, filing any court documents relating to the Chapter 15 Recognition Proceeding, consents or waivers and all amendments to any such agreements, documents, instruments, certificates, consents or waivers and to pay, or cause to be paid, all such payments, as any of them may deem necessary or advisable in order to carry out the intent of the foregoing resolutions, the authority for the doing of any such acts and things

and the signing, making, execution, delivery, issue and filing of such of the foregoing to be conclusively evidenced thereby; and

就本决议所拟采取的行动或为采取本决议所拟采取的行动，授权外国代表和任何董事以本公司的名义并代表本公司进一步采取该外国代表或董事认为必要或适当的行动和事项，包括但不限于以本公司的名义及代表本公司采取和履行（或促使他人采取和履行）所有该等行动；并与包括任何法院、政府机关或机构在内的任何人士签署、订立、签订、交付、邮寄、发布、宣布、发出或备案（或促使他人签署、订立、签订、交付、发出或备案）所有协议、文件、文书、宣誓书、誓词、证明书（包括根据该等重组文件和该等拟议文件与发行该等新票据及/或包括同意费在内的实物支付票据相关的任何法律意见书以及为完善已设立或将设立的任何抵押品所需的一切必要行动相关的上述文件）和授权委托书、提交任何与第 15 章认可程序相关的任何法院文件、同意书或豁免，以及对任何此类协议、文件、文书、证明书、同意书或豁免的所有修订；支付或促使他人支付任何一位外国代表和董事认为对执行上述决议的意向属必要或合适的所有有关款项，而采取任何有关行动和事项及签署、订立、签订、交付、发出和备案上述事项，是对有关权力不可推翻的最终凭证；以及

(f)     any and all actions of the Company, or of any Director or any other officer, or of the Foreign Representative, taken in connection with the actions contemplated by the resolutions herein prior to the execution hereof be and hereby are ratified, confirmed, approved and adopted in all respects as fully as such action(s) had been presented to for approval, and approved by the Company or such Director, prior to such action being taken.

在各方面追认、确认、批准及采纳本公司或其任何董事或任何其他高级管理人员、或外国代表在本会议记录签订前就本会议记录内的决议所拟进行的行动所采取的任何和所有行动，与采取该行动前已提交本公司或该董事批准和已经其批准的行动完全相同。

**6**    <u>**CLOSE OF MEETING** 会议结束</u>

There being no further business, the Chairman declared the Meeting closed.

由于没有其他事务，主席宣布会议结束。

_____

Chairman 主席