**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| China Evergrande Group, *et al.*,[1] | Case No. 23-11332 (MEW) |
| Debtors in Foreign Proceedings. | (Jointly Administered) |

### CERTIFICATE OF PUBLICATION

I, Herb Baer, declare that I am employed by Kroll Restructuring Administration LLC, the claims and noticing agent for the Debtors in the above-captioned chapter 15 cases.

This Certificate of Publication includes a sworn statement verifying that, pursuant to the *Order Pursuant to Federal Rules of Bankruptcy Procedure 2002 and 9007 Requesting Entry of an Order (I) Scheduling The Recognition Hearing, and (II) Approving Form and Manner of Service of Notice* [Docket No. 12], the *Notice of Petition for Recognition of Foreign Proceedings, Motion for an Order Granting Recognition of Foreign Proceedings, and Related Relief*, as conformed for publication, was published in the national edition of *The New York Times* on August 21, 2023, as described in the sworn statement attached hereto as **Exhibit A**.

Dated: August 23, 2023

*/s/ Herb Baer*
Herb Baer

---

[1] The Debtors in these Chapter 15 Cases are (i) China Evergrande Group, incorporated in the Cayman Islands as an exempted company with limited liability with the registration number 170388, with its principal place of business located at 15th Floor, YF Life Centre, 38 Gloucester Road, Wanchai, Hong Kong; (ii) Tianji Holding Limited, incorporated in Hong Kong as a limited liability company with the registration number 1339269, with its principal place of business located at 17th Floor, One Island East, Taikoo Place, 18 Westlands Road, Quarry Bay, Hong Kong; and (iii) Scenery Journey Limited, incorporated in the British Virgin Islands ("BVI") as a limited liability company with the company number 1970476, with its principal place of business located at 2nd Floor Water's Edge Building, Wickham's Cay II, Road Town, Tortola, BVI.

SRF 72219

**<u>Exhibit A</u>**



**The New York Times Company**

620 8th Avenue
New York, NY 10018
nytimes.com

# PROOF OF PUBLICATION

August 21, 2023

I, Larnyce Tabron, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

8/21/2023, NY & NATL, pg B3

_Larnyce Tabron_

JOHN MCGILL
Electronic Notary Public
Commonwealth of Virginia
Registration No. 8038092
My Commission Expires Dec 31, 2027

Digitally signed by John McGill
Date: 2023.08.21 15:35:06 -04'00'

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re: China Evergrande Group, et al.,[1]   Chapter 15   Case No. 23-11332 (MEW)
Debtors in Foreign Proceedings.   Joint Administration Requested

**NOTICE OF PETITION FOR RECOGNITION OF FOREIGN PROCEEDINGS, MOTION FOR AN ORDER GRANTING RECOGNITION OF FOREIGN PROCEEDINGS, AND RELATED RELIEF**

PLEASE TAKE NOTICE that on August 17, 2023, (i) Mr. Jimmy Fong, in his capacity as (a) the authorized foreign representative (the "Evergrande Foreign Representative") for China Evergrande Group ("Evergrande"), which is subject to a restructuring proceeding entitled In the Matter of China Evergrande Group (the "Evergrande Hong Kong Proceeding"), concerning a scheme of arrangement between Evergrande and certain Scheme Creditors (as defined herein), pursuant to sections 670, 673, and 674 of the Hong Kong Companies Ordinance (Cap. 622) (the "Hong Kong Companies Ordinance") and currently pending before the High Court of Hong Kong (the "Hong Kong Court") (Case Number HCMP 1091/2023); (b)the authorized foreign representative (the "Tianji Foreign Representative", and together with the Evergrande Foreign Representative, the "Hong Kong Foreign Representatives") for Tianji Holding Limited ("Tianji"), which is subject to a restructuring proceeding entitled In the Matter of Tianji Holding Limited (the "Tianji Hong Kong Proceeding", and together with the Evergrande Hong Kong Proceeding, the "Hong Kong Proceedings"), concerning a scheme of arrangement between Tianji and certain Scheme Creditors, pursuant to sections 670, 673, and 674 of the Hong Kong Companies Ordinance and currently pending before the Hong Kong Court (Case Number HCMP 1090/2023); and (ii) Ms. Anna Silver, in her capacity as the authorized foreign representative (the "Scenery Journey Foreign Representative", and together with the Hong Kong Foreign Representatives, the "Foreign Representatives") for Scenery Journey Limited ("Scenery Journey", and together with Evergrande and Tianji, the "Debtors"), which is subject to a restructuring proceeding entitled In the Matter of Scenery Journey Limited (the "Scenery Journey BVI Proceeding", and together with the Hong Kong Proceedings, the "Foreign Proceedings"), concerning a scheme of arrangement between Scenery Journey and certain Scheme Creditors, pursuant to section 179A of the BVI Business Companies Act, 2004 (the "BVI Companies Act", and together with the Hong Kong Companies Ordinance, the "Foreign Company Acts") and currently pending before the High Court of the Eastern Caribbean Supreme Court (the "BVI Court", and together with the Hong Kong Court, the "Foreign Courts") (Case Number BVIHCOM 2023/0076), filed voluntary petitions for relief under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") for the Debtors and the Motion for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code (ECF No. ) (the "Recognition Motion")[2] with the United States Bankruptcy Court for the Southern District of New York (the "Court").

PLEASE TAKE FURTHER NOTICE that, among other things, the Recognition Motion requests entry of an order recognizing the Foreign Proceedings as foreign main proceeding or, in the alternative, with respect to the Hong Kong Proceedings, as foreign nonmain proceedings pursuant to section 1517 of the Bankruptcy Code, granting related relief pursuant to section 1520 of the Bankruptcy Code, and granting certain additional relief pursuant to sections 1507 and 1521 of the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE that, the Court has scheduled a hearing to consider the relief requested in the Recognition Motion (the "Recognition Hearing") at **11:00 a.m. (prevailing Eastern Time) on September 20, 2023**. The Recognition Hearing will be held before the Honorable Michael E. Wiles of the United States Bankruptcy Court for the Southern District of New York. The Recognition Hearing will be an evidentiary hearing at which witnesses may testify.

PLEASE TAKE FURTHER NOTICE that, parties wishing to appear at the Recognition Hearing, whether in a "live" or "listen only" capacity, must make an electronic appearance through the "eCourtAppearances" tab on the Court's website no later than 4:00 p.m. (prevailing Eastern Time) the business day before the Recognition Hearing (the "Appearance Deadline") and not by emailing or otherwise contacting the Court. Following the Appearance Deadline, the Court will circulate by email the Recognition Hearing's Zoom link to those parties who have made an electronic appearance. Additional information regarding the Court's Zoom and hearing procedures can be found on the Court's website.

PLEASE TAKE FURTHER NOTICE that any objection to the Recognition Motion must be made in accordance with the Bankruptcy Code, the Local Rules of the United States Bankruptcy Court for the Southern District of New York, and the Federal Rules of Bankruptcy Procedure, in a writing that sets forth the basis for such objection with specificity and the nature and extent of the respondent's claims against the Debtors. Any such objection must be filed electronically with the Court on the Court's electronic case filing system in accordance with and except as provided in General Order M-399 (a copy of which may be viewed on this Court's website at www.nysb.uscourts.gov) and the Court's Procedures for the Filing, Signing and Verification of Documents by Electronic Means, and served upon the Foreign Representative's counsel, Sidley Austin LLP, 787 Seventh Avenue, New York, New York 10019 (Attn: Anthony Grossi), **so as to be received by 5:00 p.m. (prevailing Eastern Time) on September 11, 2023**, with a courtesy copy served upon the Chambers of the Honorable Michael E. Wiles, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408.

PLEASE TAKE FURTHER NOTICE that if no objection is timely filed and served as provided above, the Court may grant the relief requested in the Recognition Motion without a hearing or further notice.

PLEASE TAKE FURTHER NOTICE that any party in interest objecting to the Recognition Motion or the relief requested therein must appear at the Recognition Hearing (unless ordered otherwise by the Court).

PLEASE TAKE FURTHER NOTICE that the Recognition Hearing may be adjourned from time to time without further notice other than an announcement in open court or a notice of adjournment filed with the Court.

PLEASE TAKE FURTHER NOTICE that copies of the Recognition Motion and all other documents filed in this case can be accessed from the Court's website, http://ecf.nysb.uscourts.gov (a PACER login and password are required to retrieve documents) or free of charge by visiting the Debtors' noticing and information agent Kroll Restructuring Administration LLC's website at https://cases.ra.kroll.com/Evergrande.

PLEASE TAKE FURTHER NOTICE that this announcement is not an offer for sale of securities in the United States. Securities may not be offered or sold in the United States absent registration or an exemption from registration under the U.S. Securities Act of 1933, as amended.

[1] The Debtors in these Chapter 15 Cases are (i) China Evergrande Group, incorporated in the Cayman Islands as an exempted company with limited liability with the registration number 170388, with its principal place of business located at 15th Floor, YF Life Centre, 38 Gloucester Road, Wanchai, Hong Kong; (ii) Tianji Holding Limited, incorporated in Hong Kong as a limited liability company with the registration number 1339269, with its principal place of business located at 17th Floor, One Island East, Taikoo Place, 18 Westlands Road, Quarry Bay, Hong Kong; and (iii) Scenery Journey Limited, incorporated in the British Virgin Islands ("BVI") as a limited liability company with the company number 1970476, with its principal place of business located at 2nd Floor Water's Edge Building, Wickham's Cay II, Road Town, Tortola, BVI.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Recognition Motion.

# New Union Leaders Are Taking a Hard Line

**FROM FIRST BUSINESS PAGE**
reached a tentative agreement that members are voting on.)

Just after a union of more than 150,000 Hollywood actors called a strike in July, Fran Drescher, president of SAG-AFTRA, said that she was "shocked by the way the people that we have been in business with are treating us." She added: "It is disgusting. Shame on them!"

The companies, including UPS and the automakers, have indicated that they are willing to increase compensation but cannot jeopardize their long-term viability. The large Hollywood studios have offered actors pay increases but say they must be able to adapt to the decline of traditional television.

Some executives have called out the unions' more confrontational gestures. "The theatrics and personal insults will not help us reach an agreement," Mark Stewart, a top Stellantis official, said in a letter to employees after Mr. Fain literally discarded the company's proposals.

And channeling members' anger is not without risk: It can raise expectations and make it difficult for leaders to finalize contracts. Mr. O'Brien is facing a "vote no" campaign organized largely by UPS part-timers who argue that the union did not secure large enough raises.

The populist approach is not unique to labor unions. The 2008 financial crisis and the grindingly slow recovery produced a more militant style of politics that upended established institutions around the world. The crisis helped lay the groundwork for the unexpected support of Bernie Sanders and Donald Trump in the 2016 presidential race.

If anything, unions were slower to adapt to the rising anger than other institutions, largely because they were less democratic.

In 2018, UPS employees voted down a labor contract negotiated by the Teamsters leadership, which created a new category of lower-paid drivers. The union's president, James P. Hoffa Jr., who had served in the role for nearly 20 years, used a procedural rule to impose the contract anyway.

But even the change-averse labor movement could not withstand a final shock: Covid-19, and union members' anger over their perilous working conditions as corporate profits grew at one of the fastest rates in decades.

"There's a historical memory of all the concessions they made," said Ruth Milkman, a sociologist of labor at the Graduate Center of the City University of New York, referring to union members. "And they feel shafted. The C.E.O.s are sitting pretty with all this pandemic money that didn't go into their pockets."

Many nonunion workers saw their wages rise rapidly thanks to a tight job market, but contracts negotiated before the pandemic often locked union members into smaller wage increases.

Mr. O'Brien has tapped into that resentment.

A vice president and ally of Mr. Hoffa in the mid-2010s, Mr. O'Brien ran to replace him in 2021, deriding his predecessor for foisting concessionary contracts onto members. He vowed to raise pay for part-timers at UPS — an unusual concern for a would-be Teamster president, even though part-timers make up a majority of the union's members there — and secured a significant wage increase.

Other union leaders have followed a similar arc. In 2021, Ms. Drescher ran for president of SAG-AFTRA, the actors' union now on strike, on the union's moderate slate and narrowly won. But she came to channel her members' anxieties over the rise of streaming, which has led to longer gaps in work for many actors and more limited royalties as shows are reused less often.

"The streaming contracts negotiated back at the beginning of this, when certain individuals thought this would be a fad, set us up for failure," said Linsay Rousseau, a SAG-AFTRA member who works primarily as a voice actor. She said Ms. Drescher's outspokenness had won over even members who voted against her.

In some cases, outraged rank-and-filers have taken matters into their own hands. Edward Hall, a rail worker and local union official in Tucson, said he decided to run for the presidency of the more than 25,000-member Brotherhood of Locomotive Engineers and Trainmen in early 2022. The union's longtime president had arrived to hold a town-hall meeting about labor negotiations that had dragged on for over two years. But, Mr. Hall said, he was unable to provide frustrated members with a timetable for a deal. (Dennis Pierce, the former president, declined to comment.)

Mr. Hall was elected last fall, shortly after Congress intervened to enact a labor agreement that members of several rail unions had voted down. Many workers felt the agreement did not go far enough to rein in a system of railroad operations that sought to minimize employees.

"It was profitable for them," Mr. Hall said, referring to rail carriers. "But for lack of a better way to put it, it made life on the railroad hell for regular employees."

The combination of agitated members and more assertive leaders can sometimes pry loose concessions from employers even without a strike, especially amid a worker shortage. This year, rail carriers began voluntarily addressing one of the workers' biggest concerns: the lack of paid

*Some full-throated demands can backfire in economic terms.*

sick days.

At UPS, Mr. O'Brien spent months preparing his members for a possible strike, even holding training sessions for strike captains. The pressure appeared to yield significant gains in the recent tentative agreement between the two sides, including more than $7 an hour in raises over the five years of the contract.

In an interview last month, Mr. O'Brien said the Teamsters' actions under his leadership had made the strike threat credible. "We've been striking since I took over," said Mr. O'Brien, pointing to other companies where the union represents workers.

David Pryzbylski, a labor lawyer at Barnes & Thornburg who represents employers, said the strident rhetoric of union leaders often reflected a genuine shift in workers' attitudes. Still, he added, negotiations more often hinge on fundamentals like a company's profitability and the union's ability to disrupt operations through a strike, making it wise for employers to ignore the bluster.

"A lot of times that stuff stops: They go out and say what they wanted to say, they send up a signal flare and move on," Mr. Pryzbylski said.

The full-throated demands can also backfire in economic terms. Yellow, a trucking company with 30,000 employees, declared bankruptcy several months after talks with the Teamsters broke down. The company's chief executive said in a statement that the Teamsters' intransigence drove Yellow out of business, though analysts note that the company showed signs of mismanagement.

The risks may be even higher in industries under pressure to embrace a new business model.

The major U.S. automakers have said that they need the ability to team up with nonunion battery manufacturers to secure additional capital and expertise. But Mr. Fain, the new U.A.W. president, has said that the failure to organize more battery workers was a major failure of his predecessors, and that battery workers must receive the same pay and working conditions that union workers enjoy at the Big Three.

Many U.A.W. members say the tension between the automakers' goals and the union's indicates that a strike will be hard to avoid when their contract expires in mid-September. But they do not appear to be shrinking from that possibility.

"We have an extremely well-oiled machine," said Ms. Shaw, who also serves as a co-chair of the organizing committee of Unite All Workers for Democracy, a reform group within the union that assembled the slate of candidates Mr. Fain ran on. "We'll be ready to go if happens."



The emphatic nature of SAG-AFTRA's president, Fran Drescher, center, has won over some actors' union members.
JENNA SCHOENEFELD FOR THE NEW YORK TIMES

# 'Strays' Joins Lineup of Films Affected by the Actors' Strike

**By NICOLE SPERLING**

When selling a movie about raunchy talking dogs, it helps to have some star power to get moviegoers into seats.

And "Strays," which opened Friday, has it — at least on the screen. Will Ferrell, Jamie Foxx, Randall Park and Isla Fisher are among those who contribute their comic voice talents. Normally, a cast like this would translate into countless promotional appearances in settings like "Saturday Night Live," late-night talk shows and on social media platforms. Not during the actors' strike, when such efforts by the actors are forbidden.

Instead, the most exciting thing to happen during the press tour for the film may have been during a rehearsal for a segment on NBC's "Today" show when Dylan Dreyer, a meteorologist, took a tumble while practicing a trick with an Australian Shepherd.

"Strays," which had a budget of $46 million, is one of four movies that opened widely across the country this weekend. It grossed an estimated $8.3 million for a fifth place showing, a poor opening and not close to the number Universal Pictures was hoping for when it greenlit the film. The studio's previous R-rated comedy that paired raunchy material with family-friendly characters, "Good Boys," opened in 2019 to $21 million. "Cocaine Bear," also from Universal, had a far more robust opening, $23 million, back in February.)

The winner of the weekend, the Warner Bros. DC film "Blue Beetle," earned $25.4 million, an average showing for a lesser-known comic book movie. The film, heavy on special effects, cost over $100 million to make and market.

"I wish 'Blue Beetle' would have been higher," said Jeff Goldstein, Warner Bros. president of domestic distribution. "I think that we clearly were disadvantaged by not being able to bring the movie to Comic Con and not being able to bring out our 'Cobra Kai' star, Xolo Mariduena, as his fans know him, to the world. So that was tough."

Both films are the latest examples of opening weekends hurt because their movie stars are unable to promote their latest work. The early summer successes of "Barbie" and "Oppenheimer" can't hide the larger reality that red carpets are lacking the pop and sizzle of the cameras and box office receipts are depressed.

"So far, 'Barbie,' 'Oppenheimer,' 'Talk to Me,' 'Ninja Turtles,' and 'The Meg 2' got by untouched," the box office analyst David A. Gross said. "But we're coming up on some titles that will be impacted."

He pointed to, among others, "Strays"; "Golda," which stars Helen Mirren as the former Israeli prime minister Golda Meir; a new "Equalizer" film featuring Denzel Washington that will open on Labor Day weekend; and the latest in the "Big Fat Greek Wedding" series.



Angel Manuel Soto, the director of "Blue Beetle," which has also felt the impact of the ongoing labor dispute in Hollywood.

The lack of celebrity promotion, Mr. Gross said, is likely to cost the films anywhere from 10 to 15 percent of their box office revenue. Studio executives have grumbled that some films could have made $5 million to $10 million more on opening weekend if their stars had been able to promote them. For original films not based on well-known intellectual property, the hit might be even more severe.

Asked on Sunday morning about the poor opening for "Strays," Jim Orr, Universal's president of domestic distribution, acknowledged, "I was hoping for more." But he said he remained optimistic that the R-rated comedy would attract more moviegoers in the weeks to come. "We will see how the rest of the summer and September treats us."

In the absence of actors, studio marketing teams are relying heavily on directors to promote the films, and they are spending more on advertising.

Angel Manuel Soto, the director of "Blue Beetle," has been an especially crucial part of the Warner Bros. marketing campaign. He traveled to England, Mexico and around the United States, including Puerto Rico, to host screenings and conduct an estimated 100 interviews with print, broadcast and radio outlets. The studio recently posted a video of Mr. Soto revealing to Mr. Mariduena that he was the choice to play the lead role. It was a moment that in normal times would have been a moving anecdote during a late-night interview but was instead boosted with advertising and aimed toward building interest in the film among Latinos.

On the eve of the actors' strike, Mr. Mariduena posted a video to his 3.3 million followers on Instagram, urging them to come out to the film. "I won't be able to promote this movie, but you can," he said. "Let's do this for the culture, let's do this for the opportunity for others."

The movie industry was dealing with major issues long before the strike. Moviegoing, even factoring in the Barbenheimer phenomenon, is down 14 percent from 2019, before the pandemic, according to analysts. Certain genres, like R-rated comedies, have been hit especially hard.

"Moviegoing used to be a habit for people," Michael Moses, the chief marketing officer for Universal, said. "Our job as marketing was to get them to pick our movie over the others. Now our job is to get them to go to the movies and then choose our movie over the others."

# For Young Recipients of a Windfall, Emotions May Range From Relief to Unease

**FROM FIRST BUSINESS PAGE**
unable to work or need to help their mother. Ms. Roach's father died unexpectedly when they were competing on the show.

"I don't know yet what my lifestyle will be," they said.

For Alexandra Merullo Steffgen, a 25-year-old writer in Fort Collins, Colo., a $10,000 fellowship changed her life for good. She was a scholarship student during her final two years at Phillips Exeter Academy, a prestigious preparatory school, with peers who were wealthy enough to fly to Europe on a private plane for a weekend and who had campus buildings named for family members.

"A lot of time I couldn't keep up with my friends who had stipends," Ms. Merullo Steffgen said. "I had a minimum-wage job two days a week at the library."

She watched fellow seniors worry about which college they would get into and knew that wasn't the path she wanted. She instead applied for two fellowships, each of which would give her the financial freedom to take a gap year and travel. At 18, she won a Phillips Exeter Academy fellowship worth $10,000 that allowed her to do just that.

"It was so exciting," Ms. Merullo Steffgen said. "It was a sum of money I could barely fathom at that age. It felt really special." She volunteered in Naples, Italy; hiked the Camino de Compostela in Spain; spent time in Berlin, Ireland and Florence, Italy; and went on a Buddhist retreat. She spent the last of her funds on a trip to Cambodia.

"I spent the money just indulging myself, which I don't do anymore," she said. "I let myself enjoy myself more than any other time. I've always felt like an overly responsible person making sure no one suffers because of me. That was the greatest gift it gave me."

The irony to getting a windfall in your 20s or 30s? It can offer new freedom, but it can also feel disorienting, especially if your peers are still in early-stage careers, burdened by student debt and simply can't relate to the sudden challenge of managing five or six figures.

Nicholas Freda, a tech worker in Seattle, was 26 when he received a $100,000 inheritance from his grandmother. The gift brought pangs of grief because his father had already died, which

*Managing large sums of money becomes a new skill to master.*

meant the money would be passed directly to him.

"I'd heard people talk about inheritance in old-timey movies," Mr. Freda said. "It was something other people did." When he was told to expect a payment, "I thought it would not be very much at all," he said.

Mr. Freda said he was initially uncomfortable with the inheritance. He ultimately decided the money should go toward buying a house rather than unnecessary splurges and went in search of advice. He was surrounded by older and much higher-earning workers in his industry who owned multimillion-dollar homes.

"It was hard to discuss since we weren't really using the same unit of measurement," Mr. Freda said of the differences in buying power. Yet it was also an odd feeling, he said, to be able to "have a conversation with people five, 10 or 15 years further along" in their careers. Two years after receiving the money, Mr. Freda put two-thirds of his inheritance into buying a house, where he now lives with his fiancée.

Gina Knox, a 30-year-old financial coach in San Antonio, has received two windfalls at an early age: $15,000 at the age of 22 and $100,000 at 28. The first was money from her parents left in her college account after graduation, which came as a shock.

Ms. Knox took $5,000 and traveled for a month through South America, riding horses in Argentina, savoring hot springs in Chile and taking a bus ride over the Andes. "I had a blast," she said.

But she was stymied by what to do with the rest of it. "I sat on it for months not knowing what to do," she said. "I was completely petrified I would mess it up or spend it." She felt awkward and overwhelmed thinking, "this is too much money to have."

By the time Ms. Knox received a $100,000 family inheritance, she had more confidence thanks to her father, who taught her about money management. "I had already saved and invested $100,000 on my own, so this was not the first time I'd managed six figures," she said.

Ms. Knox now counsels others about managing their money. "If you don't know what to do with it, it is vitally important to do nothing," she said. "Ask a family member or financial adviser when you have large sums of money you are strategically or emotionally not prepared to deal with. Spend some time imagining what you want your life to be."

Her splurge is driving a Mercedes station wagon, a purchase that gives her daily pleasure.

Those from lower-income families are even less equipped to smoothly integrate a windfall into their lives because managing large sums of money is a new skill they need to master. Steven M. Hughes, 36, a financial therapist based in Atlanta, is a first-generation American and knows the welter of emotions a sudden influx of cash can evoke. Fear, shame and guilt are three common ones he encounters with his clients.

"There are a lot of emotions tied into money, and there's a rush of endorphins with an inheritance, but you may also feel a survivor's remorse having more money than your family or your neighborhood ever had," he said.

A windfall can also attract new pleas for aid. "You may now feel like a faucet for your family," Mr. Hughes said.

Your first phone call should be to "the person you admire most in how they manage their money," he said. "Ask who's their accountant." Your second phone call should be to a fee-based financial planner. "Once you have those people on your team, you can get some ideas from them," he said.

If family or friends come asking for money, Mr. Hughes suggests giving yourself some guardrails. "Sometimes our heart and our eyes are bigger than our wallets," he said. Lower-income recipients and people of color are often already financially supporting both younger and older relatives at the same time and can be seen as the savior, or the financial anchor of the family.

"Establish yourself financially first," Mr. Hughes said.

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

In re: Lordstown Motors Corp., et al., Debtors.
Chapter 11
Case No. 23-10831 (MFW)
(Jointly Administered)

**NOTICE OF MOTION OF HON HAI PRECISION INDUSTRY CO., LTD. (A/K/A HON HAI TECHNOLOGY GROUP), FOXCONN EV TECHNOLOGY, INC., AND FOXCONN EV SYSTEM LLC TO DISMISS, OR, IN THE ALTERNATIVE, CONVERT THE BANKRUPTCY CASES**

PLEASE TAKE NOTICE that on July 20, 2023, Hon Hai Precision Industry Co., Ltd. (a/k/a Hon Hai Technology Group), Foxconn EV Technology, Inc., and Foxconn EV System LLC (collectively, the "Movants" or "Foxconn") filed the Motion of Hon Hai Precision Industry Co., Ltd. (a/k/a Hon Hai Technology Group), Foxconn EV Technology, Inc., and Foxconn EV System LLC to Dismiss, or, in the Alternative, Convert the Bankruptcy Cases (D.I. 131) (the "Motion"). A copy of the Motion can be accessed free of charge at the Debtors' claims agent's website through the following link: https://www.kccllc.net/lordstown/document/2310831230720000000000009.

PLEASE TAKE FURTHER NOTICE that a hearing on the Motion will take place on **August 28, 2023, at 10:30 a.m. (prevailing Eastern Time)** before the Honorable Mary F. Walrath, United States Bankruptcy Judge (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must (a) be in writing; (b) be filed with the Clerk of the Bankruptcy Court, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, on or before **August 21, 2023, at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline"); and (c) be served so as to be received on the following by the Objection Deadline: (i) Morris, Nichols, Arsht, & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE 19899-1347 (Attn: Robert J. Dehney (rdehney@morrisnichols.com)) and (ii) Paul Hastings LLP, 71 South Wacker Drive, Suite 4500, Chicago, IL 60606 (Attn: Matthew M. Murphy (mattmurphy@paulhastings.com) and Matthew B. Harvey (mharvey@morrisnichols.com); and (iii) Paul Hastings LLP, 71 South Wacker Drive, Suite 4500, Chicago, IL 60606 (Attn: Matthew M. Murphy (mattmurphy@paulhastings.com) and Matthew Micheli (mattmicheli@paulhastings.com) and Michael C. Whalen (michaelwhalen@paulhastings.com).

**UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK**

In re: China Evergrande Group, et al., Debtors in Foreign Proceedings.
Chapter 15
Case No. 23-11332 (MEW)
Joint Administration Requested

**NOTICE OF PETITION FOR RECOGNITION OF FOREIGN PROCEEDINGS, MOTION FOR AN ORDER GRANTING RECOGNITION OF FOREIGN PROCEEDINGS, AND RELATED RELIEF**

PLEASE TAKE NOTICE that on August 17, 2023, (i) Mr. Jimmy Fong, in his capacity as (a) the authorized foreign representative (the "Evergrande Foreign Representative") for China Evergrande Group ("Evergrande"), which is subject to a restructuring proceeding entitled In the Matter of China Evergrande Group (the "Evergrande Hong Kong Proceeding"), concerning a scheme of arrangement between Evergrande and certain Scheme Creditors (as defined herein), pursuant to sections 670, 673, and 674 of the Hong Kong Companies Ordinance (Cap. 622) (the "Hong Kong Companies Ordinance") and currently pending before the High Court of Hong Kong (the "Hong Kong Court") (Case Number HCMP 1091/2023); (b) the authorized foreign representative (the "Tianji Foreign Representative", and together with the Evergrande Foreign Representative, the "Hong Kong Foreign Representatives") for Tianji Holding Limited ("Tianji"), which is subject to a restructuring proceeding entitled In the Matter of Tianji Holding Limited (the "Tianji Hong Kong Proceeding", and together with the Evergrande Hong Kong Proceeding, the "Hong Kong Proceedings"), concerning a scheme of arrangement between Tianji and certain Scheme Creditors, pursuant to sections 670, 673, and 674 of the Hong Kong Companies Ordinance and currently pending before the High Court of Hong Kong ("BVI Court") (Case Number BVIHCOM 2023/0076); filed voluntary petitions for relief under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") for the Debtors and the Motion for (i) Recognition of Foreign Main Proceedings, (ii) Recognition of Foreign Representatives, and (iii) Related Relief Under Chapter 15 of the Bankruptcy Code (ECF No.) (the "Recognition Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

PLEASE TAKE FURTHER NOTICE that, among other things, the Recognition Motion requests entry of an order recognizing the Foreign Proceedings as foreign main proceedings or, in the alternative, with respect to the Hong Kong Proceeding, as foreign nonmain proceedings pursuant to section 1520 of the Bankruptcy Code, and granting certain additional relief pursuant to sections 1507 and 1521 of the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE that, the Court has scheduled a hearing to consider the relief requested in the Recognition Motion (the "Recognition Hearing") at **11:00 a.m. (prevailing Eastern Time) on September 20, 2023**. The Recognition Hearing will be held before the Honorable Michael E. Wiles of the United States Bankruptcy Court for the Southern District of New York. The Recognition Hearing will be an evidentiary hearing at which witnesses may testify.

PLEASE TAKE FURTHER NOTICE, that parties wishing to appear at the Recognition Hearing, whether in a "live" or "listen only" capacity, must make an electronic appearance through the "eCourtAppearances" tab on the Court's website no later than 4:00 p.m. (prevailing Eastern Time) the business day before the Recognition Hearing (the "Appearance Deadline") and by email or otherwise contacting the Court. Following the Appearance Deadline, the Court will circulate by email the Recognition Hearing's Zoom link to those parties who have made an electronic appearance. Additional information regarding the Court's Zoom and hearing procedures can be found on the Court's website.

PLEASE TAKE FURTHER NOTICE that this announcement is not an offer for sale of securities in the United States. Securities may not be offered or sold in the United States absent registration or an exemption from registration under the U.S. Securities Act of 1933, as amended.

The Debtors in these Chapter 15 Cases are (i) China Evergrande Group, incorporated in the Cayman Islands as an exempted company with limited liability with the registration number 170388, with its principal place of business located at 15th Floor, YF Life Centre, 38 Gloucester Road, Wanchai, Hong Kong; (ii) Tianji Holding Limited, incorporated in Hong Kong as a limited liability company with the registration number 1339269, with its principal place of business located at 17th Floor, One Island East, Taikoo Place, 18 Westlands Road, Quarry Bay, Hong Kong; and (iii) Scenery Journey Limited, incorporated in the British Virgin Islands ("BVI") as a limited liability company with the company number 1970476, with its principal place of business located at 2nd Floor Water's Edge Building, Wickham's Cay II, Road Town, Tortola, BVI.

Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Recognition Motion.